

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
DEC – 7 2021
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Syracuse

| | |
|---|---|
| Publius Publicola,<br><br>      Plaintiff,<br><br>v.<br><br>John Lomenzo, Town of Penfield, Joseph Valentino, Douglas Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, Leah Mervine, County of Monroe, William Hooks, Cara Brousseau, New York State Law Reporting Bureau, Shawn Kerby, and Nancy Barry,<br><br>      Defendants. | Case No. 1:21-CV–1303(DNH/CFH)<br><br>[42 U.S.C. § 1983] |

## COMPLAINT

Plaintiff Publius Publicola brings this action against defendants John Lomenzo, the Town of Penfield, Joseph Valentino, Douglas Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, Leah Mervine, the County of Monroe, William Hooks, Cara Brousseau, the New York State Law Reporting Bureau, Shawn Kerby, and Nancy Barry, collectively "Defendants," for, *inter alia*, declaratory relief and to enjoin and recover monetary damages from Defendants for their deprivation of plaintiff Publius Publicola's rights, privileges, and immunities secured by the United States Constitution and laws of the United States.

## I.    INTRODUCTION

1.    In anticipation of filing an application for a professional license, of which required applicants to be candid about all matters, including citations for traffic infractions and and other minor violations, plaintiff Publius Publicola properly requested his court records from

the Penfield Town Court on July 15, 2015 concerning matters from when he was a child, which included a traffic infraction and other violations.

2.      Unfortunately, Defendants' blatant corruption and despotism since making said request, which undoubtedly shocks the conscience and leaves a chilling effect, violated plaintiff Publius Publicola's most basic rights, privileges, and immunities secured by the United States Constitution and laws of the United States.

## II.     JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

4.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred therein.

## III.    PARTIES

5.      Plaintiff Publius Publicola is a natural born citizen of the United States of America.

6.      Defendant John Lomenzo ("defendant Lomenzo") is an individual residing at 1439 Liberty Row Drive, Tega Cay, South Carolina 29708. While no longer a judge with the Penfield Town Court or any other court, at all relevant times herein, defendant Lomenzo was a judge with the Penfield Town Court. Relief is sought against defendant Lomenzo in his individual and official capacities.

7.      Defendant Town of Penfield ("defendant Penfield") is a municipal corporation authorized under the laws of the State of New York. Its principal address is 3100 Atlantic Avenue, Penfield, New York 14526.

8.      Defendant Joseph Valentino ("defendant Valentino") is an individual residing at 160 Harvington Drive, Rochester, New York 14617. At all relevant times herein, defendant Valentino was a clerk with the Monroe County Court. Relief is sought against defendant Valentino in his individual and official capacities.

9.      Defendant Douglas Randall ("defendant Randall") is an individual residing at 255 San Gabriel Drive, Rochester, New York 14610. At all relevant times herein, defendant Randall was a judge with the Monroe County Court. Relief is sought against defendant Randall in his individual and official capacities.

10.     Defendant Destini Bowman ("defendant Bowman") is an individual residing at 110 Firestone Drive, Rochester, New York 14624. At all relevant times herein, defendant Bowman was a clerk with the Monroe County Court. Relief is sought against defendant Bowman in her individual and official capacities.

11.     Defendant Karen Bailey Turner ("defendant Turner") is an individual residing at 1985 Culver Road, Rochester, New York 14609. At all relevant times herein, defendant Turner was a judge with the Monroe County Court. Relief is sought against defendant Turner in her individual and official capacities.

12.     Defendant Leah Mervine ("defendant Mervine") is an individual residing at 84 Holloway Road, Rochester, New York 14610. At all relevant times herein, defendant Mervine was an Assistant District Attorney with the Monroe County District Attorney's Office. Relief is sought against defendant Mervine in her individual and official capacities.

13.     Defendant Craig Doran ("defendant Doran") is an individual residing at 210 Pickering Street, Canandaigua, New York 14424. At all relevant times herein, defendant Doran

was the administrative judge with the Monroe County Court. In July 2021, defendant Doran was

removed from his role as administrative judge by New York Chief Judge Janet DiFiore and Chief

Administrative Judge Lawrence Marks after his racist conduct was exposed. Relief is sought

against defendant Doran in his individual and official capacities.

14.    Defendant County of Monroe ("defendant Monroe") is a municipal corporation

authorized under the laws of the State of New York. Its principal address is 39 West Main Street,

Rochester, New York 14614.

15.    Defendant William Hooks ("defendant Hooks") is an individual residing at 7

Hunters Run Boulevard, Cohoes, New York 12047. At all relevant times herein, defendant Hooks

was the state reporter for defendant New York State Law Reporting Bureau. In April 2019,

defendant Hooks resigned from his employment as state reporter. Relief is sought against

defendant Hooks in his individual and official capacities.

16.    Defendant Cara Brousseau ("defendant Brousseau") is an individual residing at 38

Font Grove Road, Slingerlands, New York 12159. At all relevant times herein, defendant

Brousseau was the state reporter for defendant New York State Law Reporting Bureau. Relief is

sought against defendant Brousseau in her individual and official capacities.

17.    Defendant New York State Law Reporting Bureau ("defendant Law Reporting

Bureau") was created after the New York State legislature enacted NY JUD § 430 and is

responsible for publishing the decisions of the New York State courts in the New York Official

Reports. Its principal address is 17 Lodge Street, Albany, New York 12207.

18.    Defendant Shawn Kerby ("defendant Kerby") is an individual residing at 5

Cottage Street, Apartment 2, South Orange, New Jersey 07079. At all relevant times herein,

defendant Kerby was a records access officer with the New York State Office of Court Administration. Relief is sought against defendant Kerby in her individual and official capacities.

19. Defendant Nancy Barry ("defendant Barry") is an individual residing at 58 Gedney Parkway Drive, White Plains, New York 10605. At all relevant times herein, defendant Barry was a FOIL appeals officer with the New York State Office of Court Administration. Relief is sought against defendant Barry in her individual and official capacities.

## IV. FACTS

### A. *The Records Request*

#### 1. The Law

20. The First Amendment to the United States Constitution mandates that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

21. Section 1 of the Fourteenth Amendment to the United States Constitution mandates:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

22. The United States Supreme Court has long recognized that freedom of speech is "protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or

unrest." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949); see also *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "True threats" are recognized as such a danger, which thus can be banned without violating the First Amendment. *Virginia v. Black*, 538 U.S. 343, 359 (2003). Such threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.*, at 359–60.

23.     In *Bridges v. California*, 314 U.S. 252, 270-271, 289 (1941), the United States Supreme Court held:

> The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench would probably engender resentment, suspicion, and contempt much more than it would enhance respect. ... Judges as persons, or courts, as institutions, are entitled to no greater immunity from criticism that other persons or institutions.

24.     In *Hagar v. Reclamation District*, 111 U.S. 701, 708 (1884), the United States Supreme Court held:

> It is sufficient to observe here that by "due process" is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained, and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. The clause in question means, therefore, that there can be no proceeding against life, liberty, or property which may result in the deprivation of either without the observance of those general rules established in our system of jurisprudence for the security of private rights. *Hurtado v. California*, 110 U. S. 516, 110 U. S. 536.

25.     The Supreme Court has recognized a qualified right "to inspect and copy judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978). "In

addition to the common law right of access, it is well established that the public and the press

have a "qualified First Amendment right to ... access certain judicial documents." *Hartford*

*Courant Co. v. Pellegrino,* 380 F.3d 83, 91 (2d Cir. 2004)." *Lugosch v. Pyramid Co. of*

*Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).

26.    NY JUD § 255 mandates:

A clerk of a court **must**, upon request, and upon payment of, or offer to pay, the fees allowed by law, or, if no fees are expressly allowed by law, fees at the rate allowed to a county clerk for a similar service, diligently search the files, papers, records, and dockets in his office; and either make one or more transcripts or certificates of change therefrom, and certify to the correctness thereof, and to the search, or certify that a document or paper, of which the custody legally belongs to him, can not be found. (Emphasis added.)

27.    Likewise, New York Uniform Justice Court Act § 2019-a mandates:

The records and dockets of the court ... shall be at reasonable times open for inspection to the public. ... Any [] justice who shall willfully fail to make and enter in such records and docket forthwith, the entries by this section required to be made or to exhibit such records and docket when reasonably required, ... shall be guilty of a misdemeanor and shall, upon conviction, in addition to the punishment provided by law for a misdemeanor, forfeit his office.

28.    Pursuant to New York Uniform Justice Court Act § 2019(a), "[t]he records and

dockets of the court ... shall be and remain the property of the village or town of the residence of

such justice."

29.    New York Town Law § 69 mandates that "[e]ach town board shall provide for

each justice of the peace such statutes, manuals, books, forms and supplies as may be necessary

for the proper administration of his office."

### 2.    The Facts

30.    On July 15, 2015, pursuant to NY JUD § 255, plaintiff Publius Publicola properly

submitted a court records request for his own court records with the Penfield Town Court.

Exhibit 1. In doing so, plaintiff Publius Publicola requested any and all court records related to

himself, including Certificates of Disposition and transcripts.

31.     On August 03, 2015, plaintiff Publius Publicola contacted the Penfield Town

Court to inquire into the cost of producing the court records requested and to offer to pay said

cost in advance. In response, Elyse Voigt, the clerk for defendant Lomenzo, demanded that

plaintiff Publius Publicola pay $███████ for a purported judgment outstanding from 2006

*before* the requested court records would be mailed to him and, without offering a solution,

stated that she didn't know if plaintiff Publius Publicola was who he stated he was and therefore,

could not mail the requested court records to him. Plaintiff Publius Publicola offered to send

another request for his court records with a notarized signature, but Elyse Voigt refused said

request. Instead, she stated that plaintiff Publius Publicola needed to "go before" defendant

Lomenzo to request the court records. In response to his conversation with Elyse Voigt, plaintiff

Publius Publicola sent her a facsimile on August 03, 2015 to address the matter. Exhibit 2.

32.     Plaintiff Publius Publicola received a letter from defendant Lomenzo dated

August 04, 2015. Exhibit 3. The letter stated, in part, **"Before I will consider your application,**

**you need to appear before a notary public."** (Emphasis added.) Pursuant to NY JUD § 255, (1) a

court records request is not "considered" (the court records are either available or not) and (2) a

court records request is not an "application" before a judge. Additionally, the Penfield Town

Court was required to have proper procedures for how to identify a person requesting his or her

own court records if said person did not visit the court in person.

33.     On August 10, 2015, plaintiff Publius Publicola's signature was notarized on a

new court records request and said request was mailed to the Penfield Town Court. Exhibit 4.

34.     On August 18, 2015, plaintiff Publius Publicola received two telephone calls from defendant Lomenzo. On said telephone calls, defendant Lomenzo demanded that plaintiff Publius Publicola send payment of $████ and that "in return" plaintiff Publius Publicola would receive the court records that he requested. While defendant Lomenzo's conduct was obviously inappropriate and violative of plaintiff Publius Publicola's right to access his court records without restriction, plaintiff Publius Publicola sent a $████ money order to the Penfield Town Court on ████████ 2015, see Exhibit 5, as a sole result of his desire to satisfy any outstanding judgments that could harm his reputation, not because plaintiff Publius Publicola believed that he owed the $████, of which he recalled paying.

35.     On September 10, 2015, plaintiff Publius Publicola received two "case history reports," which were only for two cases. The "case history reports" were screen shots and not signed or certified. Further, they did not state how the cases were disposed of. In light of plaintiff Publius Publicola's right to the court records he requested on July 15, 2015 and August 10, 2015 pursuant to NY JUD § 255, plaintiff Publius Publicola contacted the Penfield Town Court via telephone to explain that he did not receive any of the requested court records. In doing so, plaintiff Publius Publicola reiterated his request.

36.     For the next two months, plaintiff Publius Publicola contacted the Penfield Town Court via telephone once a week to inquire into the status of his court records request. In response, plaintiff Publius Publicola was provided with irrelevant and inappropriate excuses such a "we have trial this week" and "you are not a priority" and consistently informed by Elyse Voigt that she would "get to it by next week," but that never occurred.

37.     On October 26, 2015, plaintiff Publius Publicola was informed by the Penfield Town Court via telephone, for the first time since making his initial request on July 15, 2015, that he needed to contact a transcriber for the transcripts and was provided with contact information for a specific transcriber, who plaintiff Publius Publicola immediately contacted. Oddly, plaintiff Publius Publicola was informed by the Penfield Town Court that he could only have two cases transcribed at a time, so plaintiff Publius Publicola chose the first two cases in chronological order. Plaintiff Publius Publicola was further informed that he needed to send another notarized court records request before he would be provided with his requested court records.

38.     On October 28, 2015, plaintiff Publius Publicola sent another notarized court records request to the Penfield Town Court. Exhibit 6.

39.     On November 12, 2015, plaintiff Publius Publicola contacted Elyse Voigt via telephone and she stated that she would mail the court records requested on November 13, 2015 and provide the transcriber with the tapes to be transcribed by the end of that day, November 12, 2015.

40.     On November 13, 2015, plaintiff Publius Publicola contacted the transcriber via telephone and she stated that she was "just at the court" and that Elyse Voigt told her that she would provide her with the tapes for transcription no later than November 16, 2015.

41.     On November 18, 2015, plaintiff Publius Publicola contacted Elyse Voigt via telephone to inquire into (1) if the requested court records were mailed on November 13, 2015 as promised and (2) if the tapes had been provided to the transcriber as promised. Neither had occurred. Instead, Elyse Voigt stated that she would mail the requested court records and provide

the transcriber with the tapes that day, November 18, 2015.

42.    On November 19, 2015, plaintiff Publius Publicola contacted Elyse Voigt via telephone to ensure that (1) the requested court records were mailed and (2) the tapes had been provided to the transcriber as promised. Neither had occurred. Instead, Elyse Voigt stated that plaintiff Publius Publicola "needed to go before the judge" to say "why" he needs the court records. Thereafter, Elyse Voigt disconnected the telephone call.

43.    Plaintiff Publius Publicola immediately contacted the Penfield Town Court again, this time speaking to Kerry Egerton. The recorded and retained telephone call was as follows:



Kerry Egerton: Penfield Town Court
████████ : How are you doing, is this Elyse?
Kerry Egerton: Nope, this is Kerry. Can I help you?
████████ : Yes, Kerry, I'd like to speak to Elyse please.
Kerry Egerton: Um, may I ask who's calling?
████████ : Sure, my name is ████████.
Kerry Egerton: Ok, ████████ she already let you know that Judge
                Lomenzo will...
████████ : No, ma'am, she just hung up on me.
Kerry Egerton: I know.
████████ : No, you don't hang up on people.
Kerry Egerton: ████████ you are being really rude.
████████ : I'm being rude by asking for documents?
Kerry Egerton: If you continue to call us we will...
████████ : What are you going to do?
Kerry Egerton: We are going to make other arrangements.
████████ : I would like to know exactly when I am going to receive my
                documents that I requested.
Kerry Egerton: Judge Lomenzo will let you know. Do not call us back. He will
                call you. Is there an understanding?
████████ : No, I have a right to call you and follow up. Okay, I have
                recorded conversations from all of these calls and now you are
                threatening me and you have no legal authority to threaten me.
Kerry Egerton: What you are doing is being rude to us and we don't have to put
                up with it.
████████ : No. I am not. I am calling to follow up.
Kerry Egerton: Do not call us back. Judge Lomzeno will call you.

███████ : I am the only one here that is having their rights violated (Kerry Egerton disconnected the telephone call while plaintiff Publius Publicola was mid-sentence.

44.     On November 19, 2015, plaintiff Publius Publicola received a voicemail from defendant Lomenzo, of which was recorded and retained. The voicemail, which is full of anger and rage and clearly designed to oppress, threaten, and intimidate plaintiff Publius Publicola, stated "[b]oth of my court clerks indicate that you have been nasty on the phone. I'm telling you right now, do not call the court clerk's office for anything. ... Under no circumstance are you to call my court clerks again."

45.     On November 19, 2015, plaintiff Publius Publicola contacted the New York State Office of Court Administration, which referred him to the Rochester, New York office. Unfortunately, in the end, this did nothing to resolve the matter amicably.

46.     On November 19, 2015, plaintiff Publius Publicola wrote a letter to defendant Lomenzo, which was not only warranted, but obviously protected by the First Amendment to the United States Constitution. Exhibit 7.

47.     In response to plaintiff Publius Publicola rightly criticizing defendant Lomenzo's disturbing conduct, defendant Lomenzo again demonstrated his inability to ascertain that he is not a dictator and sent plaintiff Publius Publicola a letter dated November 21, 2015 in an attempt to oppress, threaten, and intimidate plaintiff Publius Publicola. Exhibit 8. The letter reads:

> Due to the insulting, abusive and contemptuous nature of your letter of November 19, 2015, I will not consider any request from you until I receive your written and unqualified letter of apology directed to my court clerks and myself. I have instructed my court clerks to have no communication with you until I receive such letter.
>
> Had you uttered the same words in your letter in open court before me I would

have had the power to and I would have, after demanding an apology and an appropriate warning about the consequences of your refusal to do so, held you in contempt of court and imposed either a fine or incarcerated you.

48.     The demands of defendant Lomenzo and the court clerks were undoubtedly violative of, *inter alia*, 18 U.S.C. §§ 241 and 242 and 42 U.S.C. § 1983. Plaintiff Publius Publicola possesses the inherent freedom to exercise his rights, privileges, and immunities secured and protected by the United States Constitution and laws of the State of New York, including his First Amendment right to express his dissatisfaction with public officials, and it is entirely obvious that the bounds of protected speech expand far beyond the speech that plaintiff Publius Publicola was engaged in, which was civil discourse to gain access to his own court records. In response, defendant Lomenzo possessed no power to retaliate against plaintiff Publius Publicola.

49.     On December 08, 2015, plaintiff Publius Publicola contacted the transcriber via telephone to inquire if the Penfield Town Court had provided her with the tapes to transcribe. Instead, plaintiff Publius Publicola was shockingly informed that the Penfield Town Court told her that the tapes do no exist.

50.     In January 2016, nearly *seven* months after initially submitting his first court records request with the Penfield Town Court, plaintiff Publius Publicola commenced an action in federal court for relief in law and equity.

51.     After defendants were served, plaintiff Publius Publicola was immediately contacted by counsel for defendants, who desired to settle the matter. Plaintiff Publius Publicola explained that more important than money damages was obtaining all of the court records requested and an apology letter due to the oppressive, threatening, and intimidating conduct that

he had been subjected to. Shortly thereafter, plaintiff Publius Publicola and defendants agreed to settle the action. Exhibit 9. Specifically, plaintiff Publius Publicola agreed to dismiss the action in exchange for (1) all court records requested, (2) an apology letter from defendant Lomenzo, see Exhibit 10, and (3) a monetary payment.

### B.    *Motions to Seal*

#### 1.    The Law

52.    Petitioning one's government for redress of a grievance without fear of retribution or punishment is a fundamental right that has been integral to the democratic process for centuries, beginning in 1215 with the Magna Carta of Great Britain. In 1689, when the English Bill of Rights were established, it was declared "that it is the right of the subjects to petition the king, and all commitments and prosecutions for such petitioning are illegal." The Bill of Rights (1689), I Will & Mary, session 2, c. 2.

53.    On July 4, 1776, a day when bravery and courage prevailed over tyranny, independence was declared by the founding thirteen states of the United States of America, which included the great State of New York. Not only was it declared that "we hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness," it was also declared that "in every stage of these Oppressions We have Petitioned for Redress in the most humble terms: Our repeated Petitions have been answered only by repeated injury. A Prince, whose character is thus marked by every act which may define a Tyrant, is unfit to be the

ruler of a free people." The Declaration of Independence, U.S. 1776.

54.    To prevent such injuries from being inflicted upon the citizenry when petitioning

the government, the First Congress of the United States of America sought to ensure that if the

citizenry had a grievance with their government, they could petition it without the fear of being

punished in return. To achieve this, on December 15, 1791, the Bill of Rights were ratified and,

among other rights essential to freedom, the First Amendment was born, which protects "the

right of the people ... to petition the Government for a redress of grievances." U.S. Const., Amdt.

1.

55.    "We have recognized this right to petition as one of "the most precious of the

liberties safeguarded by the Bill of Rights," *Mine Workers* v. *Illinois Bar Assn.*, 389 U. S. 217,

222 (1967), and have explained that the right is implied by "[t]he very idea of a government,

republican in form," *United States* v. *Cruikshank,* 92 U. S. 542, 552 (1876)." *BE&K Constr. Co.*

*v. NLRB*, 536 U.S. 516, 525 (2002). "In *California Motor Transport Co.* v. *Trucking Unlimited,*

404 U. S. 508, 510 (1972), we recognized that the right of access to the courts is an aspect of the

First Amendment right to petition the Government for redress of grievances." *Bill Johnson's*

*Restaurants, Inc. v. NLRB*, 461 U. S. 731, 741 (1983).

56.    In *Thomas v. Collins*, 323 U.S. 516, 530 (1945), the United States Supreme Court

held:

> For these reasons any attempt to restrict those liberties must be justified by clear
> public interest, threatened not doubtfully or remotely, but by clear and present
> danger. The rational connection between the remedy provided and the evil to be
> curbed, which in other contexts might support legislation against attack on due
> process grounds, will not suffice. These rights rest on firmer foundation.
> Accordingly, whatever occasion would restrain orderly discussion and persuasion,
> at appropriate time and place, must have clear support in public danger, actual or

impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. It is therefore in our tradition to allow the widest room for discussion, the narrowest range for its restriction, particularly when this right is exercised in conjunction with peaceable assembly. It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, cf. De Jonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 259, 81 L.Ed. 278, and therefore are united in the First Article's assurance. Cf. 1 Annals of Congress 759—760.

This conjunction of liberties is not peculiar to religious activity and institutions alone. The First Amendment gives freedom of mind the same security as freedom of conscience. Cf. Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446; Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438. Great secular causes, with small ones, are guarded. The grievances for redress of which the right of petition was insured, and with it the right of assembly, are not solely religious or political ones. And the rights of free speech and a free press are not confined to any field of human interest.

57. Similarly, in *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 381 (2011), the

United States Supreme Court held:

Both speech and petition are integral to the democratic process, although not necessarily in the same way. The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs. Beyond the political sphere, both speech and petition advance personal expression, although the right to petition is generally concerned with expression directed to the government seeking redress of a grievance.

58. In *Hurtado v. California*, 110 U.S. 516, 537 (1884), the United States Supreme

Court held that "[a]ny legal proceeding enforced by public authority, whether sanctioned by age

and custom, or newly devised in the discretion of the legislative power, in furtherance of the

general public good, which regards and preserves these principles of liberty and justice, must be

held to be due process of law."

59.     In both civil and criminal cases, "an impartial decisionmaker is essential. *Cf. In re Murchison*, 349 U. S. 133 (1955); *Wong Yang Sung v. McGrath*, 339 U. S. 33, 339 U. S. 45-46 (1950)." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process. *See Carey v. Piphus,* 435 U. S. 247, 435 U. S. 259-262, 435 U. S. 266-267 (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. *See Mathews v. Eldridge,* 424 U. S. 319, 424 U. S. 344 (1976). At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," *Joint Anti-Fascist Committee v. McGrath,* 341 U. S. 123, 341 U. S. 172 (1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. The requirement of neutrality has been jealously guarded by this Court. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

60.     NY CPL § 160.50 mandates:

> Upon the termination of a criminal action or proceeding against a person in favor of such person ... the record of such action or proceeding shall be sealed and the clerk of the court wherein such criminal action or proceeding was terminated shall immediately notify the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies that the action has been terminated in favor of the accused ... that the record of such action or proceeding shall be sealed. Upon receipt of notification of such termination and sealing ... all official records and papers, including judgments and orders of a court ... relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency.

61.     NY CPL § 160.55 mandates:

> Regardless of the class of offense for which a person is initially charged, upon the termination of a criminal action or proceeding against a person by the conviction

of such person of a traffic infraction or a violation ... the clerk of the court wherein such criminal action or proceeding was terminated shall immediately notify the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies that the action has been terminated by such conviction. Upon receipt of notification of such termination ... all official records and papers relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency.

62.     NY CPL § 160.60 mandates:

Upon the termination of a criminal action or proceeding against a person in favor of such person, as defined in subdivision two of section 160.50 of this chapter, the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status he occupied before the arrest and prosecution.   The arrest or prosecution shall not operate as a disqualification of any person so accused to pursue or engage in any lawful activity, occupation, profession, or calling.   Except where specifically required or permitted by statute or upon specific authorization of a superior court, no such person shall be required to divulge information pertaining to the arrest or prosecution.

63.     In *People v. Anonymous*, 34 NY3d 631, 637 [2020], the New York Court of

Appeals articulated the legislative intent behind NY CPL § 160.50. Specifically, the Court held:

[T]he Legislature's objective in enacting CPL 160.50 . . . was to ensure that the protections provided be consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law'" (Patterson, 78 NY2d at 716, citing Governor's Approval Mem, 1976 McKinney's Session Laws of NY, at 2451). In other words, "[t]he sealing requirement was designed to lessen the adverse consequences of unsuccessful criminal prosecutions by limiting access to official records and papers in criminal proceedings which terminate in favor of the accused" (Katherine B., 5 NY3d at 202 [citation omitted]). The "articulated rationale for the enactment of the sealing statutes—the presumption of innocence' . . . [—]directed usually at pending charges can surely have been viewed by the Legislature as even more germane in relation to favorably terminated matters" (Matter of Alonzo M. v New York City Department of Probation, 72 NY2d 662, 668-669 [1988]). At its core, "[t]he statute serves the laudable goal of [e]nsuring that one who is charged but not convicted of an offense suffers no stigma as a result of [the accused] having once been the object of an unsustained accusation" (Hynes v. Karassik, 47 NY2d 659,

662 [1979]).

64.     The interplay between NY CPL §§ 160.50 and 160.60 was likewise articled by the

New York Court of Appeals in *Anonymous*, 34 NY3d 631, at 637-638. Specifically, the Court

held:

> The sealing mandate of CPL 160.50(1), in combination with CPL 160.60—which
> provides that "the arrest and prosecution shall be deemed a nullity and the accused
> shall be restored, in contemplation of law, to the status [the accused] occupied
> before the arrest and prosecution"—requires more than a court's acknowledgment
> that the arrest and prosecution ended favorably. The law clearly intends that the
> criminal action and proceedings be treated as if they never occurred—as if they
> are not part of defendant's past.
>
> As the Court summarized in *Matter of Alonzo M.,* "when an action is favorably
> disposed of in an adult proceeding the records are sealed under CPL 160.50, the
> arrest and prosecution are deemed a nullity, the accused is restored to the status
> occupied before arrest, and unless specifically required by statute, or directed by a
> superior court, the accused is not required to divulge information regarding the
> favorably terminated action. This statutory safety net protecting adults ensures
> that records and materials generated from an arrest and a favorably terminated
> proceeding are eliminated as facets of the accused's criminal pedigree" (72 NY2d
> at 667-668 [citations omitted]).

65.     The nycourts.gov website page titled "Correcting a Mistake (CPL §§ 160.50 and

160.55)" states:

> If the court file shows that the case is not sealed, ask the Court Clerk how to get
> the case sealed. Different courts have different procedures. The Court Clerk may
> be able to do this for you, or you may have to write a letter, or you may have to
> make a motion. See Lowering Criminal Barriers for a sample of what to say in a
> letter. If the Court Clerk says to make a motion, ask the Clerk for the procedure.
> Visit a Law Library or speak to an attorney. https://www.nycourts.gov/courthelp/
> criminal/recordsMistakes.shtml.

66.     In *Hynes*, 47 NY2d 659 at 661, the New York Court of Appeals held that a motion

to seal a violation or criminal matter is a civil matter for "although it relates to a [violation or]

criminal matter, it does not affect the [] judgment itself, but only a collateral aspect of it —

namely, the sealing of the court record (see *People v Public Serv. Mut. Ins. Co.,* 37 N.Y.2d 606, 610-611)."

67.     A motion is an application for an order. NY CPLR § 2211.

68.     NY CPLR § 2219 mandates that "[a]n order determining a motion relating to a provisional remedy shall be made within twenty days, and an order determining any other motion shall be made within sixty days, after the motion is submitted for decision. The order shall be in writing and shall be the same in form whether made by a court or a judge out of court."

69.     NY PEN § 10.00(1) defines an "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same."

70.     NY PEN § 10.00(3) defines a "violation" as "an offense, other than a "traffic infraction," for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed."

71.      In defining a "traffic infraction," NY VAT § 155 states that a traffic infraction "is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment and shall not affect or impair the credibility as a witness or otherwise of any person convicted thereof."

72.     NY ABC § 65-c(3) states:

Any person who unlawfully possesses an alcoholic beverage with intent to consume may be summoned before and examined by a court having jurisdiction of that charge; provided, however, that nothing contained herein shall authorize,

or be construed to authorize, a peace officer as defined in subdivision thirty-three of section 1.20 of the criminal procedure law or a police officer as defined in subdivision thirty-four of section 1.20 of such law to arrest a person who unlawfully possesses an alcoholic beverage with intent to consume. If a determination is made sustaining such charge the court may impose a fine not exceeding fifty dollars and/or completion of an alcohol awareness program established pursuant to section 19.25 of the mental hygiene law and/or an appropriate amount of community service not to exceed thirty hours.

73.    NY ABC § 65-c(4) states:

No such determination shall operate as a disqualification of any such person subsequently to hold public office, public employment, or as a forfeiture of any right or privilege or to receive any license granted by public authority; and no such person shall be denominated a criminal by reason of such determination, nor shall such determination be deemed a conviction.

## 2.    The Facts

74.    Plaintiff Publius Publicola lived in the Town of Penfield as a child and had a total of six cases with the Penfield Town Court as a child, which constitutes the entirety of all cases plaintiff Publius Publicola has ever had. Of the six cases, two were dismissed in Plaintiff Publius Publicola's favor, one was a traffic infraction, one was pursuant to the NY ABC statutory scheme, and the remaining two were other violations.

75.    Plaintiff Publius Publicola cares deeply about his reputation and hasn't been cited for violating any law or regulation since being a child. This said, after plaintiff Publius Publicola became aware that some of the cases were not properly sealed pursuant to NY CPL §§ 160.50 and 160.55, he was concerned.

76.    In light of plaintiff Publius Publicola's previous experiences with the Penfield Town Court, of which left a chilling effect, he believed that filing motions would the best method to resolve the issues, especially in light of defendant Lomenzo's apology letter. Exhibit 9.

77.     The sealing status of all six cases was not conclusive and thus, in light of one case remaining unsealed being one case too many, on November 08, 2017, plaintiff Publius Publicola properly filed six independent motions to seal with the Penfield Tow Court, each motion corresponding to its respective case and relevant sealing statute. See, *e.g.*, Exhibit 11. The plaintiff did not reply to the motions and plaintiff Publius Publicola received no response from the Penfield Town Court for over a month.

78.     On December 18, 2017, plaintiff Publius Publicola contacted the Penfield Town Court via telephone to inquire into when the motions were scheduled to be decided. Said telephone call was recorded and retained. Upon contacting the Penfield Town Court, plaintiff Publius Publicola was informed by Elyse Voigt that, while the motions had not been scheduled to be decided, the cases have since been properly sealed and she could send plaintiff Publius Publicola new Certificates of Disposition indicating that the cases were now properly sealed, which plaintiff Publius Publicola requested.

79.     In a letter from Elyse Voigt dated December 20, 2018, see Exhibit 12, without explanation, she stated that two of the cases could not be sealed pursuant to NY CPL § 160.55. This was false and precisely why plaintiff Publius Publicola thought filing motions with the Penfield Town Court was the best solution to resolve the sealing issues, as it only solidifies that had plaintiff Publius Publicola not filed motions and contacted Elyse Voigt instead, she would have indicated that certain cases could not be sealed, resulting in another dispute.

80.     On January 12, 2018, after receiving Elyse Voigt's letter dated December 20, 2018, plaintiff Publius Publicola contacted the Penfield Town Court via telephone to inquire into when the motions were scheduled to be decided as errors clearly remained. Plaintiff Publius

Publicola was transferred to Judge Mulley. Considering NY CPLR § 2219 was already violated,

Plaintiff Publius Publicola respectfully requested that the motions be docketed and orders be

mailed. Judge Mulley stated he would contact plaintiff Publius Publicola via telephone at a later

date. Said telephone call was recorded and retained.

81.     On January 23, 2018, Judge Mully contacted plaintiff Publius Publicola via

telephone and stated that the he didn't believe NY CPL § 160.55 applied to the remaining

unsealed cases, but that plaintiff Publius Publicola's motions had "essentially" been granted.

Plaintiff Publius Publicola explained that he disagreed regarding the applicability of NY CPL §

160.55 to the unsealed cases and that, while he stated the motions were "essentially" granted, the

motions were in fact not granted, which was evident by Judge Mully's own statement, the

December 20, 2017 letter from Elyse Voigt, and there being no order to the contrary. This said,

plaintiff Publius Publicola again respectfully requested that if it was the position of the Penfield

Town Court that plaintiff Publius Publicola's motions should be denied, that plaintiff Publius

Publicola be sent orders stating such. Said telephone call was recorded and retained.

82.     After his telephone call with Judge Mully on January 23, 2018, plaintiff Publius

Publicola sent a facsimile to him further explaining why he was entitled to the relief sought.

83.     On February 01, 2018, nearly ninety days after filing his motions to seal, plaintiff

Publius Publicola sent a facsimile to the Penfield Town Court stating that, in light of the

continued violation of NY CPLR § 2219, if he did not receive orders on or before February 15,

2018, the Penfield Town Court "will leave [him] with no choice but to immediately commence

(1) an Article 78 proceeding to compel the justices of [the Penfield Town Court] to issue orders

on the motions and/or (2) a federal action to permanently enjoin the justices and court clerks of

[the Penfield Town Court] from the continued denial of [plaintiff Publius Publicola's] most basic and fundamental due process and equal protection rights." Exhibit 13.

84.     Plaintiff Publius Publicola received a telephone call from defendant Lomenzo on February 06, 2018, which was recorded and retained. Defendant Lomenzo stated, multiple times, that he was "flabbergasted" that Elyse Voigt didn't bring the motions to his attention until "now," which is likely false considering his obvious desire to control everything that occurred in the Penfield Town Court, and that he "chastised her," which is entirely inappropriate. Defendant Lomenzo then stated that plaintiff Publius Publicola would receive orders to his motions by February 09, 2017, but this didn't happen.

85.     On February 12, 2018 at approximately 8:30 p.m., plaintiff Publius Publicola received a telephone call from defendant Lomenzo, which was recorded and retained, indicating that he would be mailing the orders on February 13, 2018. On February 13, 2018, plaintiff Publius Publicola received another telephone call from defendant Lomenzo, which was recorded and retained, indicating that he was going to deny the motions and that, oddly, plaintiff Publius Publicola should write a letter seeking to reargue the motions instead of appealing the orders.

86.     Plaintiff Publius Publicola received defendant Lomenzo's order dated February 13, 2018 approximately two weeks after said date. Sealed Exhibit 2. Defendant Lomenzo responded to all six independently filed motions, which were filed pursuant to two separate sealing statutes, in one six page order.

87.     Defendant Lomenzo's order dated February 13, 2018 is inconsistent with the law, contradicts itself, ignores the truth, and is littered with disparagement. More specifically:

a.     Defendant Lomenzo denied plaintiff Publius Publicola's motions "in their

entirety," which contradicts Elyse Voigt December 20, 2017 letter clearly establishing that, as of the date of the letter, it was the Penfield Town Court's position that two of the cases could not be sealed and defendant Lomenzo's acknowledgement *in the order* that "[u]nder CPL 160.55(1) and (1)(c), the court's records were not sealed" for one of the said two cases. Astonishingly, for the other case that Elyse Voigt claimed could not be sealed in her December 20, 2017 letter, defendant Lomenzo, while admitting that the case should be sealed, stated "it would seem to be pointless at this late juncture to notify that the prosecution terminated in a conviction." To be clear, plaintiff Publius Publicola's rights are not "pointless." Not only does the New York State Legislature believe that plaintiff Publius Publicola's rights have a point, hence the lawful enactment of NY CPL § 160.55, but the New York Court of Appeals has consistently and unambiguously required all courts in the State of New York to abide by the sealing requirements of NY CPL § 160.55. Further, had the Penfield Town Court fulfilled its legal duties pursuant to NY CPL § 160.55 and "**immediately**" seal the records upon disposition *over 15 years ago*, plaintiff Publius Publicola wouldn't have ever needed to spend his valuable time to correct these mistakes. Plaintiff Publius Publicola certainly didn't file his motions to seal for defendant Lomenzo to trample on his most basic and fundamental rights in defendant Lomenzo's pursuit to fulfill his obsession with being a dictator. (Emphasis added.)

b.      Regarding the NY ABC § 65-c matter, defendant Lomenzo corruptly falsified the indisputable truth. Specifically, defendant Lomenzo wrote "[i]n order for ... relief under CPL 160.55, two elements must be present: the matter must have involved a criminal action and it must have terminated in a conviction" and "[t]he charge was prosecuted in a criminal action and terminated in a conviction of a violation under the Penal Law as well as the ABC Law." Yet, the

truth is that NY CPL § 160.55 begins with "**[r]egardless of the class of offense for which a person is initially charged**." (Emphasis added.) Thus, the only requirement is that an offense is involved, which, pursuant to NY PEN § 10.00(1), is "conduct for which a sentence to a term of imprisonment or **to a fine** is provided by **any** law of this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same." (Emphasis added.) In addition to this, and in direct contradiction to defendant Lomenzo's continued ramblings designed to disparage and harm plaintiff Publius Publicola's reputation, NY ABC § 65-c(4) unambiguously mandates that "no such person shall be denominated a criminal by reason of such determination, nor shall such determination be deemed a conviction," while "nothing contained [in NY ABC § 65-c] shall authorize, or be construed to authorize, a peace officer as defined in subdivision thirty-three of section 1.20 of the criminal procedure law or a police officer as defined in subdivision thirty-four of section 1.20 of such law to arrest a person who unlawfully possesses an alcoholic beverage with intent to consume." NY ABC § 65-c(3). Ultimately, because "a sentence to a term of imprisonment in excess of fifteen days cannot be imposed" for a violation of NY ABC § 65-c, pursuant to NY PEN § 10.00(3) and NY ABC § 65-c(4), NY ABC § 65-c is always disposed of as a violation if a fine is paid and could never be a crime.

  c.  Defendant Lomenzo repeatedly refers to plaintiff Publius Publicola's "rap sheet," yet plaintiff has never been convicted of a crime.

  d.  Defendant Lomenzo falsely stated that plaintiff Publius Publicola received Certificates of Disposition on February 09, 2016 indicating "Seal Type: 160.55." The first time plaintiff Publius Publicola received Certificates of Disposition that stated the seal type for any

case was when Elyse Voigt sent them with her December 20, 2017 letter, and plaintiff Publius Publicola can prove this with the Certificates of Disposition that he actually received on February 09, 2016.

      e.      Defendant Lomenzo corruptly wrote narratives regarding each incident that are demonstrably false and disturbingly inconsistent with the police reports for the incidents and subsequent litigation. For example, defendant Lomenzo failed to state that, per the police report from the incident on July 2005, "[a]t the time of contact with the defendant, the fireworks display was being discharged overhead and the crowd noise level was high." Nor did defendant Lomenzo state that the police report makes clear that the officer never identified himself before "attempting to remove [plaintiff Publius Publicola] from the altercation" and that once plaintiff Publius Publicola realized that it was a police officer who had grabbed him, he immediately complied with the requests of the officer. As stated in the police report, plaintiff Publius Publicola "believed he was being attacked from behind and was unaware that [the officer] was a uniformed police officer." Nor does defendant Lomenzo state that a photograph was taken of an injury on plaintiff Publius Publicola's face by the officer, which was the result of "a large fight with an unknown group of males" per the police report. Nor does defendant Lomenzo state that, per the police report, the officer was stopped by two different females while walking with plaintiff Publius Publicola because said females were upset with how the officer attacked plaintiff Publius Publicola without stating that he was a police officer while fireworks were going off over plaintiff Publius Publicola's head and while he was in the middle of being attacked by a group of unidentified males. To be clear, these females were not plaintiff Publius Publicola's age, nor did plaintiff Publius Publicola know either. Per the police report, one of the females

"demanded [the officer's] badge number" and "followed [him] to [his] car" while the other, who

is identified in the police report as being born in February 1958, stated that the officer was a

"hard headed marine." In addition, defendant Lomenzo failed to recognize that, regarding the

December 2005 incident, of which resulted in a violation against plaintiff and the arrest of an

entire family after the police violently and unlawfully broke down the door of said family's home

in response to a gathering and violently attacked people, a federal action against, among others,

defendant Monroe and the police officer who wrote the police report concerning plaintiff Publius

Publicola and his involvement in the incident, resulted in a $90,000.00 settlement for said family

as a result of the Monroe County Sheriff's Department's "use of force and/or arrest of plaintiffs."

Exhibit 14.[1]

88.     While the purpose of this action is clearly not to relitigate the past, which plaintiff

Publius Publicola never sought to do, he did not commit his life to building his reputation for it

to be tampered with by defendant Lomenzo in his pursuit to retaliate against plaintiff Publius

Publicola. Plaintiff Publius Publicola reasonably expected one sentence orders for each motion

stating either "SO ORDERED the clerk of the court shall seal case number ███████████ in

accordance with the commands of NY CPL § 160.50" or "SO ORDERED the motion to seal case

number ███████ in denied as a result of it already being sealed in accordance with the

commands of NY CPL § 160.50." Yet, instead, defendant Lomenzo orchestrated an attack on

plaintiff Publius Publicola's reputation concerning matters that occurred when he was a *child* and

*without counsel* present to represent him. This said, defendant Lomenzo should be utterly
ashamed of

---

[1] Plaintiff Publius Publicola was not a plaintiff in said litigation.

himself.

89.     As the facts demonstrate, anytime plaintiff Publius Publicola seeks to exercise any right in the Penfield Town Court, defendant Lomenzo is unable to control his desire to abuse his power and wield the enormous power of the judiciary to corruptly attack him. This said, in light of the continued harm, chilling effect, and lack of desire to further subject himself to further retaliation, instead of seeking to reargue the motions and/or appealing the order, plaintiff Publius Publicola obtained new Certificates of Disposition from the Penfield Town Court for the two cases identified in Elyse Voigt's December 20, 2017 letter as being unable to be sealed indicating that the cases were in fact sealed and thereafter contacted the various agencies himself. In doing so, plaintiff Publius Publicola discovered that the cases remained unsealed. After the various agencies confirmed that the cases were sealed, plaintiff Publius Publicola moved forward with his life.

C.     ***The Publication***

1.     **The Law**

90.     The right to privacy is "founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action." *Roe v. Wade*, 410 US 113, 153 (1973).

91.     In *Doe v. Bolton*, 410 US 179, 213 (1973), the United Staes Supreme Court held "[t]his right of privacy was called by Mr. Justice Brandeis the right "to be let alone." *Olmstead* v. *United States,* 277 U. S. 438, 478 (dissenting opinion). That right includes the privilege of an individual to plan his own affairs, for, " 'outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what he pleases, go where he pleases.' " *Kent* v. *Dulles,* 357 U. S. 116, 126 (1958).

92.     In *Roe v. Ingraham*, 480 F.2d 102, 107 (2d Cir. 1973), the United States Court of

Appeals for the Second Circuit held:

> Although, as we recently indicated in Rosenberg v. Martin, 478 F.2d 520, at 524
> (2 Cir. 1973), the right to privacy which thus far has been granted constitutional
> protection relates only to "the most intimate phases of personal life," having to do
> with sexual intercourse and its possible consequences, it is not "obvious" that the
> right will be thus confined. Indeed, the Court's recognition in Roe v. Wade, *supra,*
> 410 U.S. at 153, 93 S.Ct. at 727, that the right to privacy is "founded in the
> Fourteenth Amendment's concept of personal liberty and restrictions upon state
> action" itself suggests that the right may not be so closely cabined. See, for an
> adverse criticism, Ely, The Wages of Crying Wolf: A Comment on Roe v. Wade,
> 82 Yale L.J. 920 (1973). As Mr. Justice Stewart stated in his concurrence in *Roe,*
> 410 U.S. at 169, 93 S.Ct. at 735, quoting Mr. Justice Harlan's dissenting opinion
> in Poe v. Ullman, 367 U.S. 497, 543, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), the
> liberty guaranteed by the due process clause "is a rational continuum which,
> broadly speaking, includes a freedom from all substantial arbitrary impositions
> and purposeless restraints, . . . and which also recognizes, what a reasonable and
> sensitive judgment must, that certain interests require particularly careful scrutiny
> of the state needs asserted to justify their abridgement."

> If there is anything "obvious" about the constitutional right to privacy at the
> present time, it is that its limits remain to be worked out in future cases.

93.     In holding that "Judge White was not entitled to absolute immunity" for his

administrative act, the United States Supreme Court in *Forrester v. White*, 484 U.S. 219, 228

(1988) reasoned:

> Administrative decisions, even though they may be essential to the very
> functioning of the courts, have not similarly been regarded as judicial acts. In *Ex
> parte Virginia,* 100 U.S. 339 (1880), for example, this Court declined to extend
> immunity to a county judge who had been charged in a criminal indictment with
> discriminating on the basis of race in selecting trial jurors for the county's courts.
> The Court reasoned:

> "Whether the act done by him was judicial or not is to be determined by its
> character, and not by the character of the agent. Whether he was a county judge or
> not is of no importance. The duty of selecting jurors might as well have been
> committed to a private person as to one holding the office of a judge. . . . That the
> jurors are selected for a court makes no difference. So are court criers, tipstaves,

sheriffs, &c. Is their election or their appointment a judicial act?" *Id.* at 100 U.S. 348.

Although this case involved a criminal charge against a judge, the reach of the Court's analysis was not in any obvious way confined by that circumstance.

94.     As discussed, *supra*, CPL § 160.50(c) mandates that "all official records and

papers ... relating to the arrest or prosecution ... on file with ... any court ... shall be sealed and

not made available to any person or public ... agency."

95.     A court does not have inherent authority to unseal records.

The [New York Court of Appeals] long ago rejected the view that a court's inherent authority over its proceedings grants power to unseal because that "would subvert the plain intendment of the statutory scheme—to establish, in unequivocal mandatory language, a general proscription against releasing sealed records and materials, subject only to a few narrow exceptions" (Matter of Joseph M. [New York City Bd. of Educ.], 82 NY2d 128, 134 [1993] [emphasis in original]; see also Matter of Alonzo M., 72 NY2d at 668 [expressing concern that courts' inherent authority over their own records would be "dubious authority (upon which) to override so clear a legislative policy" set forth in a sealing statute]). In accordance with our settled rules of statutory interpretation, we have eschewed efforts to rewrite the statute to achieve what a court or advocate perceives to be a better outcome, because "if there is to be an exception to the general rule proscribing the release of sealed records . . . it should be created by the [l]egislature, not by the courts" (Matter of Joseph M., 82 NY2d at 134). *Anonymous*, 34 NY3d 631, at 642.

96.     Instead, when NY CPL § 160.50 was enacted, the legislature identified a restricted

list of seven exceptions to the sealing mandate's prohibition on access. Said exceptions include

when records are released to:

i.      The person accused or to such person's designated agent; or

ii.     A prosecutor in any proceeding in which the accused has moved for an order

pursuant to section 170.56 or 210.46 of this chapter; or

iii.    A law enforcement agency upon ex parte motion in any superior court, or in any

district court, city court or the criminal court of the city of New York provided that such court sealed the record, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it; or

  iv. Any state or local officer or agency with responsibility for the issuance of licenses to possess guns, when the accused has made application for such a license; or

  v. The New York state department of corrections and community supervision when the accused is on parole supervision as a result of conditional release or a parole release granted by the New York state board of parole, and the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision; or

  vi. Any prospective employer of a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of this chapter, in relation to an application for employment as a police officer or peace officer; provided, however, that every person who is an applicant for the position of police officer or peace officer shall be furnished with a copy of all records obtained under this paragraph and afforded an opportunity to make an explanation thereto; or

  vii. The probation department responsible for supervision of the accused when the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision.

> These [seven] statutory exceptions are precisely drawn. This underscores the Legislature's commitment to prohibiting disclosure of sealed records—once initial sealing has not been forestalled by the court in the interest of justice—except where the statute explicitly provides otherwise" (Katherine B., 5 NY3d at 203). In Katherine B. this Court rejected an expansive reading of the exception relied upon by the People here and held that a superior court is not authorized under CPL 160.50 (1) (d) (ii) "to make sealed records available to a prosecutor for purposes

of making sentencing recommendations" (id. at 199). Contrary to the position advocated by the People and adopted by the dissent (dissent op at 10), there is no analytically meaningful distinction between the respective prosecutors' intended use of the sealed records in Katherine B. and in defendant's case, and the holding and logic of Katherine B. applies with equal force to the instant appeal. In holding that the records should not have been unsealed, this Court explained that "consistent with th[e] design and the plain intendment of the statutory scheme,' the general proscription against releasing sealed records and materials [is] subject only to a few narrow exceptions'" (id. at 202-203 [emphasis and citation omitted]). *Anonymous*, 34 NY3d 631, at 638-639.

97.     The New York State legislature enacted NY JUD §§ 430-438 to establish the Law Reporting Bureau and laws to be followed when publishing opinions. Of significance to this matter, NY JUD § 431 states:

> The law reporting bureau shall report every cause determined in the court of appeals and every cause determined in the appellate divisions of the supreme court, unless otherwise directed by the court deciding the cause; and, in addition, *any cause determined in any other court which the state reporter, with the approval of the court of appeals, considers worthy of being reported because of its usefulness as a precedent or its importance as a matter of public interest.* (Emphasis added.)

98.     In addition to the forgoing, 22 NY Comp Codes Rules and Regs § 7300.1-7 was enacted to establish "rules concerning publication of opinions in the miscellaneous reports." Of significance to this matter, 22 NY Comp Codes Rules and Regs § 7300.1 mandates that "[n]o opinion shall be made available for publication in any official or unofficial reports, except the New York Law Journal, without the approval of the State Reporter or the Committee on Opinions" and 22 NY Comp Codes Rules and Regs § 7300.6 states that "opinions dealing with matters which are essentially of interest only to the attorneys and parties involved **should not** be presented for publication; and opinions covering legal matters which are of relatively incidental interest or which involve primarily factual or discretionary matters or dicta **should not** be

submitted for publication. (Emphasis added.)

99.     Anyone can engage in the non-judicial act of submitting an order for publication

with the New York State Law Reporting Bureau. The New York State Law Reporting Bureau's

website page titled "Selection of Opinions for Publication" states:

> Judges and others transmit as many as 7,500 opinions each year to the Law
> Reporting Bureau for possible publication in the Miscellaneous Reports.
> Attorneys and other third parties often submit trial court opinions for publication,
> and we will solicit from the authoring Judge interesting opinions which we read in
> the New York Law Journal; on court websites, such as the Court of Claims; and
> other legal publications.
>
> We publish approximately 500 Appellate Term and trial court opinions in full text
> in the Miscellaneous Reports each year. Generally, this constitutes less than seven
> percent of the opinions submitted for publication. https://nycourts.gov/reporter/
> selection.shtml.

100.    In summation, of the approximately 7,500 opinions transmitted for publication

each year, only approximately 500 are published in the Miscellaneous Reports, which

"constitutes less than seven percent of the opinions submitted for publication." See *ibid.*

101.    The New York State Law Reporting Bureau's website page titled "Selection of

Opinions for Publication" continues to state:

> We take the selection process seriously, recognizing the unique importance of the
> Miscellaneous Reports to our jurisprudence. The Miscellaneous Reports are at the
> cutting edge of the judicial decision-making process where the law concerning
> new issues entering the court system for the first time is developed, exceptions to
> the broad rules established by the appellate courts are devised, interstices in the
> common law are filled and practice issues unique to the trial courts are decided.
>
> The Rules Concerning Publication of Opinions in the Miscellaneous Reports,
> which are published at 22 NYCRR part 7300, elaborate on the statutory criteria—
> precedential usefulness and public importance—for selection of opinions for the
> Miscellaneous Reports. These are:
>
> *Precedential significance*. We select all true "landmark" opinions that make a

significant contribution to the law, and any which hold a statute unconstitutional or invalidate administrative regulations. We measure precedential significance by the holdings and matters necessarily decided—discussions constituting dicta do not meet our criteria. Some weight is given to the level of court in applying this criterion.

*Novelty*. This includes opinions that deal with issues of first impression that are likely to be recurrent; that discuss developing areas of the law on which little has been written; that create exceptions to broad rules established at the appellate level; or that extend or clarify appellate case law.

*Public importance*. We seek to select opinions of broad interest to the bar or to the public at large. These may include cases deciding issues specific to the attorney-client relationship, as well as general interest cases, such as decisions involving school funding, elections and powers of state and local governments.

*Practical significance*. This includes opinions that address issues unique to trial court practice—discovery, evidence, procedure, etc. As a further example, we might select a high percentage of cases on an emerging issue in order to build a more significant body of published case law for the guidance of trial courts and to assist potential appellate review on that important issue. https://nycourts.gov/reporter/selection.shtml.

102.    The New York State Law Reporting Bureau's website page titled "Privacy Guidelines" states:

The Law Reporting Bureau has developed these privacy guidelines to ensure that privacy interests of individuals are protected when New York State court decisions are published on the Internet. *These guidelines are based on policy guidance from the Unified Court System and the Office of the Chief Administrative Judge.*

The LRB publishes in print and online all decisions of the Court of Appeals and the Appellate Division, as well as selected opinions of the trial courts. After decisions are submitted to the LRB and processed, they are posted to the LRB's website---usually within several hours---and transmitted to the LRB's commercial publisher (currently Thomson Reuters Westlaw). *Third-party websites often link to decisions on the LRB's website or republish them.*

Given the immediacy of public access to opinions on the LRB's website, decisions should be reviewed for privacy concerns **before** they are submitted to the LRB for publication. This review should focus on mandatory redactions, such

as those that are required by statute and rules, as well as discretionary redactions, which focus on concerns which may only arise after publication on the Internet. https://www.nycourts.gov/Reporter/privacy-guidelines.shtml (Emphasis added.)

103.    The New York State Law Reporting Bureau's privacy guidelines are codified in the New York Law Reports Style Manual. Of specific importance to this matter, New York Law Reports Style Manual § 12.4(a)(1) mandates that "[t]he name of any person younger than 18 years old should not appear in any published opinion."

### 2.    The Facts

104.    Prior to April 20, 2018, defendant Lomenzo had never submitted an order to defendant Law Reporting Bureau for publication.

105.    In violation of, *inter alia*, NY CPL § 160.50, 22 NY Comp Codes Rules and Regs § 7300.6, and the New York Law Reports Style Manual, defendant Lomenzo engaged in a non-judicial act to deprive plaintiff Publius Publicola of his rights, privileges, and immunities secured by the United States Constitution. Specifically, on April 20, 2018, defendant Lomenzo, from his personal email address jlomenzo@outlook.com, transmitted an email to defendant Law Reporting Bureau. Said email contained the subject line "People v ███████████"[2] and included an attachment containing the February 13, 2018 order, which, again, was in response to plaintiff Publius Publicola's *motions to seal*. The body of said email and attachment thereof containing the February 13, 2018 order likewise included plaintiff Publius Publicola's full. The purpose of said email was to have the order published.

106.    In violation of, *inter alia*, NY CPL § 160.50, NY JUD § 431, 22 NY Comp Codes Rules and Regs §§ 7300.1 and 7300.6, and the New York Law Reports Style Manual, defendant

---

[2] The ███████████ signifies plaintiff Publius Publicola's full name.

Hooks responded to defendant Lomenzo's email on April 20, 2018 stating the order "has been accepted for publication in the Miscellaneous Reports."[3] Thereafter, the February 13, 2018 order was immediately published to the world with plaintiff Publius Publicola's full name.

107.    Again, per defendant Law Reporting Bureau's website, of the approximately 7,500 opinions transmitted for publication each year, only approximately 500 are published in the Miscellaneous Reports, which "constitutes less than seven percent of the opinions submitted for publication." https://nycourts.gov/reporter/selection.shtml.

108.    After defendant Law Reporting Bureau published the order with plaintiff Publius Publicola's full name on April 20, 2018, of which was transmitted to Thomson Reuters Westlaw and third-parties for republication "within several hours" of the initial publication by defendant Law Reporting Bureau, on April 22, 2018, defendant Lomenzo transmitted an email to defendant Hooks stating "[i]t occurred to me that [plaintiff Publius Publicola's] actual name should be anonymous for publication purposes, as the disposition of some of the cases resulted in sealing." Said email was nothing but a corrupt attempt by defendant Lomenzo to cover his tracks after depriving plaintiff Publius Publicola of his rights, privileges, and immunities secured by the United States Constitution, as defendant Lomenzo was fully aware of the harm he had caused and that said harm was completed upon publication. As the facts clearly establish, defendant Lomenzo knew plaintiff Publius Publicola was a child, and, per his own statements in the February 13, 2018 order, that plaintiff Publius Publicola's records were sealed pursuant to NY CPL § 160.50. In addition to this, had defendant Hooks read the February 13, 2018 order as he was required to do by law, he would've likewise known that the matters were sealed pursuant to

---

[3] Defendant Hooks, not the New York Court of Appeals, approved the publication.

NY CPL § 160.50 and therefore could not be published.

109.    On April 23, 2018, defendant Hooks updated the caption of the action on defendant Law Reporting Bureau's website to redact plaintiff Publius Publicola's full name, but, again, the harm was already done and this change did nothing to redact the publications on the countless third-party websites that were publishing defendant Lomenzo's February 13, 2018 order with plaintiff Publius Publicola's full name, let alone the countless print publications of said order with plaintiff Publius Publicola's full name. In addition to this, the published order contained all six case numbers. This said, while NY CPL § 160.55 mandates that "all official records and papers relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency," unlike NY CPL § 160.50, *court records* are available to the public. As a result, someone could read the published order and access the court records with the Penfield Town Court for the cases that are sealed pursuant to NY CPL § 160.55, which would, at a minimum, expose plaintiff Publius Publicola's full name, rendering NY CPL § 160.50 meaningless.

110.    On April 23, 2018, defendant Lomenzo creepily wrote an email to defendant Hooks with plaintiff Publius Publicola's full name in the subject line stating that plaintiff Publius Publicola had "become a member of the bar in New Jersey at some point after the events addressed in my decision." To be clear, while this is false, it only demonstrates defendant Lomenzo's intent to cause harm to plaintiff Publius Publicola's reputation, which is disturbing and will not be tolerated.

111.    Plaintiff Publius Publicola is a professional with various business ventures. This

said, he routinely searches his name on search engines for repetitional purposes. On May 05,

2018, plaintiff Publius Publicola searched his name on Google and, to his shock, multiple results

on the first page appeared stating "People v. ███████." In addition, plaintiff Publius

Publicola's full name appeared in the snippets under the headings of the results and, upon

clicking on the results, plaintiff Publius Publicola's full name appeared multiple time on the

webpages that appeared, including in the published order on said webpages. This demonstrates

that the harm was done when the publication occurred on April 20, 2018 with plaintiff Publius

Publicola's full name, and defendant Lomenzo knew this. While this should be unthinkable in our

society, after discovering the publication, it became obvious that defendant Lomenzo wrote the

six page false and disparaging order dated February 13, 2018 with the intent to corruptly publish

it to harm plaintiff Publius Publicola's reputation.

    112.   On May 05, 2018, plaintiff Publius Publicola wrote a letter to defendant Hooks

stating, in part:

> The Penfield Town Court has been entirely weaponized against me. Judge
> Lomenzo does not have the discretion to act in violation of my constitutional and
> statutory rights, yet he has clearly exceeded the power vested in him. I now have a
> new problem, which is much worse than the issue I initially contacted the court to
> fix. After trying to receive relief that I am statutorily entitled to in an effort to
> eliminate stigmatization from records that were not sealed properly, I now have
> far more stigmatization than ever contemplated and in direct contradiction of the
> legislative intent when enacting NY CPL §§ 160.50 and 160.55.

> There is an immediate need for this gross violation of my rights to be remedied, as
> the reporting and publication of the [order] can and will have substantial negative
> consequences on my life. The [order] is in no way useful as a precedent, nor is it
> important as a matter of public interest, and it only contains sealed information. I
> should not be subjected to harm for trying to correct the [Penfield Town Court's]
> errors from over 12 years ago.

113.    Instead of immediately rectifying the obvious and substantial harm caused by Defendants' deprivation of plaintiff Publius Publicola's rights, privileges, and immunities secured by the United States Constitution, defendant Hooks sent plaintiff Publius Publicola a letter dated May 10, 2018 that failed to recognize his unlawful conduct and did nothing to remedy the unlawful publication. Exhibit 15. Instead, it stated that plaintiff Publius Publicola should "make [his] request [to remove the publication] to the judge who rendered [it]" and his "office will comply with any direction that it receives from the court."

114.    Plaintiff Publius Publicola consumed an enormous amount of time and endured substantial embarrassment contacting third-party publishers to ask that they conform what they are publishing to the updated publication on defendant Law Reporting Bureau's website. Yet, it is common practice among said third-parties to require a court order to redact the name and/or remove the publication and as a result, the published order continues to be published by third-party publishers with plaintiff Publius Publicola's full name.

115.    On May 10, 2018, the same day defendant Hooks sent a letter to plaintiff Publius Publicola, defendant Hooks corruptly colluded with defendant Lomenzo concerning the unlawful publication through multiple email communications, of which contained plaintiff Publius Publicola's full name in the subject line and were disparaging to plaintiff Publius Publicola and entirely inappropriate.

116.    Thus, in exchange for properly petitioning his government for redress, wherein he attempted to correct errors *made by the Penfield Town Court* regarding the **sealing** of his records that were statutorily required to be sealed by the Penfield Town Court at adjudication *over 15*

*years ago*, defendant Lomenzo and defendant Hooks perpetrated an injury upon plaintiff Publius Publicola that was far greater than the initial injury he ever sought to remedy. It shocks the conscience that defendant Lomenzo first refused to release plaintiff Publius Publicola's court records to him in violation of his constitutional and statutory rights, which resulted in litigation, an apology letter from defendant Lomenzo, and a monetary settlement, and then, again, violated plaintiff Publius Publicola's constitutional and statutory rights when he retaliated against plaintiff Publius Publicola and unlawfully submitted the February 13, 2018 falsely and corruptly written order with plaintiff Publius Publicola's full name to defendant Law Reporting Bureau for publication to the world. The conduct of defendant Lomenzo and defendant Hooks undoubtedly has a chilling effect on the administration of justice and so clearly cuts against everything our democracy was founded upon and stands for today. Defendant Lomenzo retaliated against plaintiff Publius Publicola for exercising his most fundament rights protected by the United States Constitution, wherein he attempted to silence plaintiff Publius Publicola for being critical of his unlawful conduct.

### D.    *Motion to Seal and Unpublished*

### 1.    The Facts

117.    While the chilling effect from defendant Lomenzo's conduct was certainly an impediment to plaintiff Publius Publicola's access to the Penfield Town Court and he didn't expect defendant Lomenzo to grant his motion, plaintiff Publius Publicola knew he could appeal defendant Lomenzo's order and thus, on May 18, 2018, plaintiff Publius Publicola filed a motion with the Penfield Town Court to (1) seal court records pursuant to NY CPL § 160.50 and (2) order the New York State court reporter to unpublish the February 13, 2018 order.

118. On May 29, 2018, defendant Lomenzo recklessly and illogically denied said motion. Exhibit 16. For example:

a. As the irrefutable evidence makes clear, defendant Lomenzo **did not** submit the February 13, 2018 order to defendant Law Reporting Bureau for publication with the required redactions to protect the name of plaintiff Publius Publicola, *a child*, and to protect the confidentiality of plaintiff Publius Publicola's court records, of which is statutorily mandated pursuant to NY CPL § 160.50. Further, defendant Lomenzo cannot "suggest" that plaintiff Publius Publicola's rights pursuant to NY CPL § 160.50 be upheld. Defendant Lomenzo clearly lacked all authority to access and/or unseal plaintiff Publius Publicola's records sealed pursuant to NY CPL § 160.50, especially to publish them to the world. Defendant Lomenzo must adhere to the law just as any other member of our democratic society is required to do. While defendant Lomenzo has an obvious lust for dictatorial power that he will never possess in the United States of America, there is no exception for his corrupt conduct.

b. It is conclusive that the relief sought in plaintiff Publius Publicola's motion dated May 18, 2018 is in no way the same relief sough in plaintiff Publius Publicola's motions filed on November 08, 2017. Thus, contrary to defendant Lomenzo's May 29, 2018 order, as a result of the subject matter of plaintiff Publius Publicola's November 08, 2017 motions filed with the Penfield Town Court not including the current relief sought, plaintiff Publius Publicola could not have brought an appeal to request the relief sought in plaintiff Publius Publicola's May 18, 2018 motion. After all, defendant Lomenzo did not submit the February 13, 2018 order for publication until April 20, 2018, which was clearly well beyond plaintiff Publius Publicola's statutory time to file an appeal and thus, plaintiff Publius Publicola couldn't have previously appealed the

publication of the February 13, 2018 order.

119.    After plaintiff Publius Publicola filed his motion on May 18, 2018, defendant

Lomenzo panicked and published two additional orders with defendant Law Reporting Bureau,

one from *before* February 13, 2018 and one from *after* February 13, 2018, in an attempt to make

it appear as if the February 13, 2018 order was not the first and only order that he had submitted

to defendant Law Reporting Bureau for publication. What defendant Lomenzo didn't understand,

like all criminals attempting to cover their tracks, is that the *date of publication* is likewise

published, which demonstrates that defendant Lomenzo submitted said orders for publication on

May 30, 2018 and May 31, 2018. Exhibit 17.

### E.    *The Appeal*

#### 1.    The Law

120.    In *Lindsey v. Normet*, 405 U.S. 56, 77 (1972), the United States Supreme Court

held that "[w]hen an appeal is afforded ... it cannot be granted to some litigants and capriciously

or arbitrarily denied to others without violating the Equal Protection Clause. *Griffin v. Illinois,*

*supra; Smith v. Bennett,* 365 U. S. 708 (1961); *Lane v. Brown,* 372 U. S. 477 (1963); *Long v.*

*District Court of Iowa,* 385 U. S. 192 (1966); *Gardner v. California,* 393 U. S. 367 (1969). *Cf.*

*Coppedge v. United States,* 369 U. S. 438 (1962); *Ellis v. United States,* 356 U. S. 674 (1958).

121.    In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950),

the United States Supreme Court held:

> Against this interest of the State we must balance the individual interest sought to
> be protected by the Fourteenth Amendment. This is defined by our holding that
> "The fundamental requisite of due process of law is the opportunity to be heard."
> *Grannis* v. *Ordean,* 234 U. S. 385, 394. This right to be heard has little reality or
> worth unless one is informed that the matter is pending and can choose for

himself whether to appear or default, acquiesce or contest. ... An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken* v. *Meyer,* 311 U. S. 457; *Grannis* v. *Ordean,* 234 U. S. 385; *Priest* v. *Las Vegas,* 232 U. S. 604; *Roller* v. *Holly,* 176 U. S. 398. The notice must be of such nature as reasonably to convey the required information, *Grannis* v. *Ordean, supra,* and it must afford a reasonable time for those interested to make their appearance, *Roller* v. *Holly, supra,* and *cf. Goodrich* v. *Ferris,* 214 U. S. 71. ...

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare *Hess* v. *Pawloski,* 274 U. S. 352, with *Wuchter* v. *Pizzutti,* 276 U. S. 13, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

122.     Pursuant to NY CPLR § 5513(a), "[a]n appeal as of right must be taken within thirty days after service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry."

123.     An "order" is "[a] spoken or written command or direction from a judge." https://nycourts.gov/courthelp/GoingToCourt/glossary.shtml.

124.     NY UJC § 1702 states that "[a]ppeals in civil causes [originating in a town court] shall be taken to the county court[]." A county court is primarily a trial court.

125.     NY CPLR § 5703(b) mandates that "[a]n appeal may be taken to the appellate division as of right from an order of a county court or a special term of the supreme court which determines an appeal from a judgment of a lower court."

126.     While an appeal to the New York Court of Appeals may be taken by permission

pursuant to NY CPLR § 5602, an appeal as of right is permissible pursuant to NY CPLR § 5601(b) in the following situations:

> (a) Dissent. An appeal may be taken to the court of appeals as of right in an action originating in the supreme court, a county court, a surrogate's court, the family court, the court of claims or an administrative agency, from an order of the appellate division which finally determines the action, where there is a dissent by at least two justices on a question of law in favor of the party taking such appeal.

> (b) Constitutional grounds. An appeal may be taken to the court of appeals as of right:

> 1. from an order of the appellate division which finally determines an action where there is directly involved the construction of the constitution of the state or of the United States; and

> 2. from a judgment of a court of record of original instance which finally determines an action where the only question involved on the appeal is the validity of a statutory provision of the state or of the United States under the constitution of the state or of the United States.

> (c) From order granting new trial or hearing, upon stipulation for judgment absolute. An appeal may be taken to the court of appeals as of right in an action originating in the supreme court, a county court, a surrogate's court, the family court, the court of claims or an administrative agency, from an order of the appellate division granting or affirming the granting of a new trial or hearing where the appellant stipulates that, upon affirmance, judgment absolute shall be entered against him.

> (d) Based upon nonfinal determination of appellate division. An appeal may be taken to the court of appeals as of right from a final judgment entered in a court of original instance, from a final determination of an administrative agency or from a final arbitration award, or from an order of the appellate division which finally determines an appeal from such a judgment or determination, where the appellate division has made an order on a prior appeal in the action which necessarily affects the judgment, determination or award and which satisfies the requirements of subdivision (a) or of paragraph one of subdivision (b) except that of finality.

127.    NY CPLR § 5530 mandates that "[t]he respondent shall file and serve a like number of copies of his brief within fifteen days after service of the appellant's brief. The

appellant may file and serve a like number of copies of a reply brief within ten days after service of the respondent's brief."

128.    Section 602.1.3(a) of the Mailing Standards of the United States Postal Service Domestic Mail Manual mandates that "[a]ll mail ... must bear a delivery address that contains ... [the] [i]ntended recipient's name or other identification."

129.    "Mail addressed to a PO Box is delivered *only* to recipients previously identified on PS Form 1093." https://faq.usps.com/s/article/Refuse-unwanted-mail-and-remove-name-from-mailing-lists.

130.    In defining UAA mail, and the types thereof, the United States Postal Service stated:

> UAA mail, also commonly referred to as Return to Sender (RTS) mail ... is defined as "mail that can not be delivered as addressed". There are two types of UAA mail:
>
> 1. Change-of-address (COA)–related mail is UAA either because the customer has moved and filed a change of address request with USPS, or the delivery employee filed a "Moved, Left No Address" or "Box Closed, No Order" COA request.
>
> 2. Nixie-related mail is UAA for reasons other than a COA on file, such as "No Such Number", "Attempted Not Known", or "Refused". https://about.usps.com/postal-bulletin/2010/pb22277/html/info_005.htm.

### 2.    The Facts

131.    On June 12, 2018, plaintiff Publius Publicola properly filed a Notice of Appeal with the Penfield Town Court to appeal defendant Lomenzo's May 29, 2018 order.

132.    On October 26, 2018, plaintiff Publius Publicola received a letter from Sally Frey, the appeals clerk at the Monroe County Court. Exhibit 18.

133.    On December 18, 2018, plaintiff Publius Publicola properly perfected his appeal. The respondent did not file a brief.

134.    Between January 2019 and July 2020, plaintiff Publius Publicola contacted Sally Frey via telephone approximately once a month to inquire into the status of the appeal. Each time plaintiff Publius Publicola contacted Sally Frey, she stated that the appeal was not yet assigned to a judge.

135.    In late August 2020, plaintiff Publius Publicola received a letter *in the mail* from defendant Mervine, counsel for the respondent, which was dated August 18, 2020, addressed to defendant Turner, and began with "[t]he People are in receipt of Ms. Bowman's letter dated August 14, 2020, [sic] regarding the above captioned matter." Exhibit 19. Plaintiff Publius Publicola did not receive defendant Bowman's August 14, 2020 letter. In direct violation of NY CPL § 160.50, defendant Mervine sent a copy of her August 18, 2020 "brief," which is a court record, to Richard Horowitz, a third-party with no association to the matter whatsoever.

136.    For obvious reasons, plaintiff Publius Publicola was deeply concerned that he received respondent's letter dated August 18, 2020, which was sent *in response to* defendant Bowman's August 14, 2020 letter that granted the respondent the right to file a brief over twenty months after said brief was due to be filed pursuant to NY CPLR § 5530, especially when the respondent did not request to file a late brief and, as discovered, *infra*, plaintiff Publius Publicola was not afforded the opportunity to file a reply brief pursuant to NY CPLR § 5530.

137.    On September 01, 2020, plaintiff Publius Publicola contacted Sally Frey to inquire into what was occurring with the appeal as he had received a letter from defendant Mervine, which was dated August 18, 2020, but not the August 14, 2020 letter purportedly sent

from defendant Bowman. Sally Frey informed plaintiff Publius Publicola that she has "nothing to do with the appeal once it is assigned to a judge" and that only defendant Bowman could assist him with the matter since it had been assigned to defendant Turner. Thus, plaintiff Publius Publicola contacted defendant Bowman via telephone on September 01, 2020 to inquire into the matter. Defendant Bowman stated that the August 14, 2020 letter purportedly sent to plaintiff Publius Publicola was returned to her as undeliverable and that she would "immediately" mail another copy. In addition, plaintiff Publius Publicola confirmed with defendant Bowman that the envelope would be addressed to him using his full name, of which defendant Bowman acknowledged.

138.    On September 01, 2020, plaintiff Publius Publicola sent a letter to defendant Turner to address defendant Mervine's letter dated August 18, 2020. Exhibit 20. In doing so, plaintiff Publius Publicola rightly expressed his concern that the respondent was provided with an opportunity to file a brief "nearly two years after its deadline to file a brief" while disregarding plaintiff Publius Publicola's right to file a reply brief pursuant to NY CPLR § 5530, which he would have done had the respondent filed a timely brief. Specifically, plaintiff Publius Publicola wrote:

> [B]ad lawyering does not provide a rationale for why this Court should babysit Ms. Mervine and disregard established rules. Any reasonable person, let alone an attorney, would respond to any matter filed against him or her, regardless if he or she believes it lacks merit. This said, while there is no valid argument to defend the indefensible, which is the decision and order on appeal, Ms. Mervine had the opportunity to file a brief nearly two years ago, of which I would have responded to with a reply brief, but she failed to act. Thus, she should not be treated any differently than any other litigant would be treated when a filing deadline is missed, let alone by nearly two years.

139.    In addition, plaintiff Publius Publicola demonstrated that defendant Mervine's

letter was utterly frivolous. Specifically, in *Matter of Katherine B.*, 5 NY3d 196 (2005), the New

York Court of Appeals heard an appeal regarding the sealing of court records pursuant to NY

CPL § 160.50, of which was filed as an Article 78 petition instead of a civil appeal. Pursuant to

NY CPLR § 103(c), the New York Court of Appeals converted the Article 78 petition to a civil

appeal and maintained jurisdiction over it. The Court held:

> CPLR article 78 is not the proper procedural vehicle for the relief sought here
> because petitioners do not challenge a public official's ministerial acts or actions
> taken in excess of authority (see *Matter of Crain Communications v Hughes*, 74
> NY2d 626 [1989]). As the People acknowledge, petitioners could have properly
> sought judicial review of the unsealing of petitioners' records [pursuant to NY
> CPL § 160.50] by timely civil appeal (see *Matter of Hynes v Karassik*, 47 NY2d
> 659, 661 n 1 [1979]; see also *People v McLoughlin*, 65 NY2d 687 [1985]). ...
> Petitioners filed their CPLR article 78 petition nine days after Supreme Court
> issued its decision and order denying their motion to vacate and reseal. Moreover,
> petitioners served the petition on the same individuals who would have been
> parties on appeal and included the same materials in the petition as would have
> comprised the appellate record. In light of these particular circumstances, we have
> converted this CPLR article 78 proceeding into the proper form, which is a civil
> appeal (see CPLR 103 [c]). *Id.*, at 201.

140.    On September 22, 2020, plaintiff Publius Publicola contacted defendant Bowman

via telephone as a result of never receiving the second August 14, 2020 letter purportedly sent to

him. On said telephone call, defendant Bowman stated that she mailed plaintiff Publius Publicola

the second letter "weeks ago." In light of not receiving the letter, plaintiff Publius Publicola

stated that he would like to resolve the issue by sending defendant Bowman a prepaid, self-

addressed USPS Priority Mail envelope for the letter, of which would be sent to defendant

Bowman via USPS Priority Mail so he can track its delivery to her. In response, defendant

Bowman became hostile. In fact, after plaintiff Publius Publicola simply asked defendant

Bowman for her first name as he didn't know it and needed it to properly address the USPS

Priority Mail envelop, she disconnected the telephone call. Plaintiff Publius Publicola

immediately contacted defendant Bowman again and, while she did not answer the telephone

call, her voicemail recording stated her full name, whereby there was no need to speak to her.

141.    On September 22, 2020, plaintiff Publius Publicola mailed defendant Bowman a

prepaid, self-addressed USPS Priority Mail envelope. Exhibit 21. Said prepaid, self-addressed

USPS Priority Mail envelope was mailed to defendant Bowman via USPS Priority Mail, see

Exhibit 22, and delivered to defendant Bowman on September 25, 2020. Exhibit 23.

142.    On September 23, 2020, plaintiff Publius Publicola contacted defendant Bowman

to inform her that he had mailed the prepaid, self-addressed USPS Priority Mail envelope and

asked that it be used to mail her August 14, 2020 letter to him.

143.    On September 30, 2020, in light of the USPS tracking information for the prepaid,

self-addressed USPS Priority Mail envelope mailed to defendant Bowman displaying no tracking

activity, he contacted her via telephone. Defendant Bowman did not answer and thus, plaintiff

Publius Publicola left her a voicemail. On said voicemail, of which was recorded and retained,

plaintiff Publius Publicola, stated, in part "Ms. Bowman, this is ▮▮▮▮▮▮▮▮. I am calling to

follow up on our conversation last week in regards to mailing you the prepaid envelope. ... [T]he

purpose of the call is to ask you to please mail the documents requested, of which we already

discussed, and please do it today."

144.    On October 01, 2020, over one and one half months after defendant Bowman

wrote her August 14, 2020 letter to respondent granting it the right to file a brief over twenty

months after said brief was due to be filed pursuant to NY CPLR § 5530 without allowing

plaintiff Publius Publicola to file a reply brief pursuant to NY CPLR § 5530 and one week since

the USPS Priority Mail envelope was delivered to defendant Bowman containing the self-addressed USPS Priority Mail envelope, said self-addressed USPS Priority Mail envelope continued to display no tracking activity. Thus, he rightly contacted defendant Bowman via telephone. On said telephone call, of which was recorded and retained, the following interaction occurred:

Purported "Sheriff": Hello, Sheriff's Office. Can I help you?

███████: I did not call the Sheriff's Office. Can I help you?

Purported "Sheriff": Can I help you with something, Sir?

███████: I am looking for the Court.

Purported "Sheriff": This is the courthouse.

███████: Okay, great. So why am I connected to you?

Purported "Sheriff": Can I help you with something?

███████: Yes, I am looking for the court clerk, which isn't you.

Purported "Sheriff": Okay; which court clerk are you trying to reach.

███████: Sir, I don't know why you answered the phone. I thought that this line went directly to the court clerk?

Purported "Sheriff": I'm trying to help you, Sir. Is there a particular clerk that you are trying to reach?

███████: I'll call back. Obviously there is a mix up. What's your phone number?

Purported "Sheriff": Umm I don't have that before me. Is there someone you are trying to reach?

███████: You don't have your own phone number before you?

Purported "Sheriff": No, I'm sorry I don't. I don't see it in front of me here.

145. In light of the bizarre interaction, plaintiff Publius Publicola disconnected the telephone call as he thought he possibly misdialed defendant Bowman's telephone number, especially in light of it being a telephone number assigned to her by the Monroe County Court

with a voicemail recording created by her.[4] Exhibit 24.[5] After all, why would a Sheriff be in the office of defendant Bowman, which could potentially expose court records sealed pursuant to various sealing statutes, and feel compelled to answer the telephone for defendant Bowman stating "Sheriff's Office" instead of allowing the telephone call to go to her voicemail recording. Even if an individual was so compelled to answer the telephone of another, said individual would answer the telephone on behalf of the individual it is assigned to and, in the worse case scenario, as "Monroe County Court," but never "Sheriff's Office." Plaintiff Publius Publicola confirmed that the telephone number was accurate and as a result, he immediately initiated another telephone call to defendant Bowman. On said telephone call, of which was recorded and retained, the following interaction occurred:

Purported "Sheriff": Hello, Sheriff's Office.
███████: Sir, I am trying to reach the court clerk. I don't understand why...
Purported "Sheriff": I understand and I'm trying to direct you to where you are trying to go. Do you know who you are trying to reach?
███████: Yes, her name is Ms. Bowman.
Purported "Sheriff": Okay, umm she's not available right now but can I take a message and have her get back to you.
███████: No, I've never heard of the Sheriff's Department answering the telephone for the Court.
Purported "Sheriff": Yeah, I understand, but I'm trying to assist you. She's not available to answer the phone, but if I can take your name and number I can have her call you back.
███████: Okay, what's the spelling of your name, Sir?

---

[4] The voicemail message for defendant Bowman's telephone number is "[h]ello, my name is Destini Bowman, principal law clerk to Monroe County Court Judge Karen Bailey Turner. Please leave a message. Thank you."

[5] While this publication is from 2016 and therefore reflects that the telephone number was assigned to a previous clerk, said publication demonstrates (1) the telephone number is a public telephone number *published* by the Monroe County Court and assigned solely to a specific clerk and that (2) regardless of who occupies the public office, the telephone number continues to exist, whereby no single person will ever own the telephone number and/or dictate its use by the public.

Purported "Sheriff": This is James Epstein.

███████: Okay, is this a new policy where the Sheriff's Department answers the phone on behalf of the court clerks?

Purported "Sheriff": No it is not, but I'm just trying to be helpful at this point.

███████: And I appreciate that, but I am just confused. It is kind of bizarre. Okay, James. No that's okay, I'll try to call back. That's why I repeated the call. The Court's open today, correct? It's not a holiday or anything?

Purported "Sheriff": The Court is open today. Ms. Bowman's not available right now. I'm just trying to help her so that's why I was just trying to take a message.

███████: Right, okay. I gotcha. Alright, James. I'll try calling back. Thank you very much.

146.    No employee of the Monroe County Sheriff's Office by the name of James Epstein exists, or has ever existed. Instead, based on a telephonic interaction with defendant Valentino, it is apparent that the purported "Sheriff" was defendant Valentino. Thus, defendant Valentino's corrupt version of being "helpful" to defendant Bowman included impersonating a Sheriff in an orchestrated attempt to oppress, threaten, and intimidate plaintiff Publius Publicola from engaging in the free exercise and enjoyment of rights and privileges secured to him by the United States Constitution.

147.    Approximately one hour later, plaintiff Publius Publicola contacted defendant Bowman again via telephone. Said telephone call was recorded and retained. On said telephone call, the unlawful and corrupt intentions of defendant Bowman and defendant Valentino became more apparent. For example:

a.      Defendant Bowman made statements to plaintiff including:

    i.      "There is no reason to call me."

    ii.     "If you want to know if a decision has been issued, it will be mailed out to you. There is no reason to keep calling and asking if a decision has been rendered."

    iii.    "Do not call again. Any decision will be issued in writing."

    iv.    "The only way you are going to hear about a decision being made is that it will be sent to you in writing."

    b.    Defendant Bowman stated that plaintiff Publius Publicola needed to contact the appeals clerk, who is Sally Frey, but it was Sally Frey who informed plaintiff Publius Publicola that she has "nothing to do with the appeal once it is assigned to a judge" and that only defendant Bowman could assist him with the matter since it had been assigned to defendant Turner.

    c.    In response to defendant Bowman stating that the second letter was returned to her as undeliverable, the following interaction occurred:

    ████████: Well Ms. Bowman, if I may, you never told me not to call and I think that is inappropriate to tell somebody that. Second of all, you had told me that calling your number is appropriate to ask about the status of the case. We discussed that about a week ago.

Defendant Bowman: I did not. I never gave you my number. You received everything from the court clerk.

    ████████: Right, but when we spoke I am saying. And third of all, you just stated that the second letter was sent back and I understand that a decision is mailed, but if there is an issue with the mail, I would hope that you would see why I would call in. This is once a week. I called in last week and now it has been about a week and I'm just calling to ask what the status of the matter is. It's a simple question.

    In direct contradiction to defendant Bowman's lie, the truth is that, on September 23, 2020, defendant Bowman stated to plaintiff Publius Publicola on a recorded and retained telephone call, "[y]ou know, people call all the time about the decision ... and so answering that question is very simple. And, you know, so that's not an issue."

    d.    Plaintiff Publius Publicola stated to defendant Bowman, "[t]omorrow is a new day and if I want to call back and ask [for the status of the case], I can. Additionally, where is the envelop that I mailed?" In response, defendant Bowman interrupted and stated, "[n]o, you do not, I am asking you not to keep calling here and asking me if a decision has been made." In response

to defendant Bowman, plaintiff Publius Publicola stated, "Ma'am, I understand you are a former

prosecutor, but this is a public institution. This is not a grand jury proceeding in secrecy. If I want

to call and ask what the status is of this matter is, I can call and ask that question."

  e.  Defendant Bowman acknowledged receipt of the self-addressed USPS Priority

Mail envelope, but at the same time stated "[w]e have tried everything to ensure that you have

received [the August 14, 2020 letter]."

  f.  After plaintiff Publius Publicola asked when he can expect to receive the self-

addressed USPS Priority Mail envelope, defendant Bowman stated "[e]arly, no later than early

next week I assume." Monday of the following week was October 05, 2020.

  148.  On October 07, 2020, nearly months after defendant Bowman's wrote her August

14, 2020 letter to respondent granting it the right to file a brief over twenty months after said

brief was due to be filed pursuant to NY CPLR § 5530 without allowing plaintiff Publius

Publicola to file a reply brief pursuant to NY CPLR § 5530 and two week since the USPS

Priority Mail envelope was delivered to defendant Bowman containing the self-addressed USPS

Priority Mail envelope, said self-addressed USPS Priority Mail envelope continued to display no

tracking activity. Thus, on October 07, 2020, plaintiff Publius Publicola contacted defendant

Bowman via telephone. Defendant Bowman did not answer and thus, plaintiff Publius Publicola

left her a voicemail. In doing so, plaintiff Publius Publicola expressed that "there is no reason for

any of this to happen" and it is "[a]bsolutely a shame that this is where we are." He again

requested that the self-addressed USPS Priority Mail envelope be sent with her August 14, 2020

letter therein. Further, plaintiff Publius Publicola made it clear that if he didn't receive the

document soon, while not the desired path, he was prepared to commence an action in federal

court for equitable relief.

149.    On or about October 12, 2020, plaintiff Publius Publicola received a letter dated

October 05, 2020 *in the mail* from Sally Frey. Exhibit 25. Said letter informed plaintiff Publius

Publicola that the appeal was "reassigned" and to "contact [the new judge's] chambers directly,"

which demonstrates that plaintiff Publius Publicola was initially informed by Sally Frey to

contact defendant Bowman on September 01, 2020.

150.    After receiving Sally Frey's October 05, 2020 letter, plaintiff Publius Publicola

contacted Sally Frey via telephone concerning said letter. In doing so, plaintiff Publius Publicola

was informed that defendant Turner "recused herself." After plaintiff Publius Publicola asked

Sally Frey for the reason defendant Turner recused herself, Sally Frey stated that "no reason was

provided," which, as of December 2020, is violative of NY JUD § 9.

151.    On October 15, 2020, plaintiff Publius Publicola received defendant Bowman's

August 14, 2020 letter, see Exhibit 26, of which was sent using the self-addressed USPS Priority

Mail envelope.

152.    After his experience with defendant Bowman, which left an obvious chilling

effect, plaintiff Publius Publicola was hopeful that he would just receive the decision in the mail

and not need to contact anyone at the Monroe County Court while at the same time

acknowledging that he needed to ensure he is made aware if a decision is rendered so he can

appeal it if he so chooses to do so. This said, on December 22, 2020, plaintiff Publius Publicola

contacted defendant Valentino as informed to do by Sally Frey in her October 05, 2020 letter.[6]

---

[6] Plaintiff Publius Publicola immediately recognized defendant Valentino's voice as that of the
purported "Sheriff" from his October 01, 2020 telephone calls to defendant Bowman.

Defendant Valentino stated that he attempted to mail a letter to plaintiff Publius Publicola, but it was returned as undeliverable. Defendant Valentino stated there were two addresses on file for plaintiff Publius Publicola and while plaintiff Publius Publicola received mail at both addresses,[7] he confirmed that the most recent address provided to the Monroe County Court was the preferred address to be used. Additionally, plaintiff Publius Publicola stated to defendant Valentino that the envelope must be addressed to plaintiff Publius Publicola's full name, of which defendant Valentino agreed to do.

153.    Plaintiff Publius Publicola contacted the United States Postal Inspection Service to inquire into how it is possible that mail is purportedly being sent to him from two specific people, but being returned as undeliverable when in reality plaintiff Publius Publicola receives all other mail sent to him and can prove this through his subscription to Informed Delivery, which captures images of all mail addressed to the recipient and sends emails to said recipient when the mail arrives at his or her address. The United States Postal Inspection Service stated that it is not possible unless the sender failed to include an important piece of information (e.g., the recipients name). Plaintiff Publius Publicola was informed that, while the full name of the recipient is required pursuant to United States Postal Service regulations, mail will generally be delivered to a PO Box if the last name of a person previously identified on PS Form 1093 is included with the recipient's address.

154.    Plaintiff Publius Publicola did not receive the second copy of the letter purportedly mailed by defendant Valentino after plaintiff Publius Publicola contacted him via

---

[7] Defendant Mervine's August 18, 2020 letter was mailed to one of the addresses while Sally Frey's October 05, 2020 letter was mailed to the other, both of which were received by plaintiff Publius Publicola.

telephone on December 22, 2020. Thus, to resolve the purported mail issue that was only

affecting defendant Bowman and defendant Valentino, plaintiff Publius Publicola created an

email address to communicate with defendant Valentino for the appeal and sent defendant

Valentino an email to jjvalent@nycourts.gov on January 05, 2021, see Exhibit 27, which read:

> I wanted to follow-up on our telephone conversation before the holidays regarding the letter that you had mailed to me in the above-referenced matter. Unfortunately, I have not yet received your letter at either of my addresses, and my USPS Informed Delivery has likewise not captured any images of it. In light of there being an issue with my ability to receive mail originating from the Court, I wanted to create a line of communication for us via email. Moving forward, I kindly ask that any communications in the above-referenced matter, including the decision, be emailed to this email address.
>
> Regarding the substance of your letter, as I understand it from our previous telephone conversation, you had set a date whereby you requested that the parties communicate to you if they desired oral argument. While the Respondent has indicated that it will not participate in the appeal per (a) its failure to respond to my brief in accordance with the Rules of the Court and (b) Ms. Mevine's August 18, 2020 letter, just as it did not participate in the underlying matter that gave rise to the appeal, I request oral argument in the matter. In addition, while I addressed Ms. Mevine's August 18, 2020 letter in my September 01, 2020 letter to Judge Turner, I believe it is important that I address her letter and answer any questions that the Court may have regarding it during oral argument.
>
> If oral argument is granted, my direct telephone number is ██████████.

155.   Plaintiff Publius Publicola did not receive a response. Thus, on January 07, 2021,

plaintiff Publius Publicola sent an email to defendant Valentino at the email address

jjvalent@nycourts.gov, which read, "I wanted to touch base regarding my January 05, 2021

email to you. Can you please email me a copy of the letter that you sent regarding oral argument

and confirm that future communications in the above-referenced matter will be emailed to me at

this email address?" Exhibit 28.

156.   Plaintiff Publius Publicola did not receive a response. Thus, on January 11, 2021,

plaintiff Publius Publicola sent an email to defendant Valentino at the email address

jjvalent@nycourts.gov, which read, "I am following up on my January 05, 2021 and January 07,

2021 emails to you. Can you please email me a copy of the letter that you sent regarding oral

argument and confirm that future communications in the above-referenced matter will be

emailed to me at this email address?" Exhibit 29.

157.    Plaintiff Publius Publicola did not receive a response. Thus, on January 13, 2021,

plaintiff Publius Publicola sent an email to defendant Valentino at the email address

jjvalent@nycourts.gov and defendant Doran at the email address cdoran@nycourts.gov, see

Exhibit 30, which read, in part:

> On January 05, 2021, I sent you an email to follow-up on our telephone
> conversation before the holidays regarding the letter that you had purportedly
> mailed to me in the above-referenced matter. As stated in my email to you, I have
> not yet received your letter, and my USPS Informed Delivery has likewise not
> captured any images of it. In light of there being an issue with my ability to
> receive mail originating from you, I kindly requested that any communications in
> the above-referenced matter, including the decision, be emailed to this email
> address. Further, in response to the substance of your letter as described to me
> during our telephone conversation, I requested oral argument in the above-
> referenced matter. You did not respond.
>
> On January 07, 2021 and January 11, 2021, I sent you emails to follow-up on my
> January 05, 2021 email. Specifically, my emails stated "[c]an you please email me
> a copy of the letter that you sent regarding oral argument and confirm that future
> communications in the above-referenced matter will be emailed to me at this
> email address?" You did not respond to either email. ...
>
> Reasonable minds would agree that responses to my simple, yet important,
> questions are required in light of fundamental due process and equal protection
> mandates and basic ethical considerations. In fact, the simplicity, yet importance
> of my questions, makes it clear that I am only asking the Court to engage with me
> fairly and in good faith and perform its most basic function as an impartial arbiter.
> This said, I again kindly ask that you please email me a copy of the letter that you
> sent regarding oral argument and confirm that future communications in the
> above-referenced matter will be emailed to me at this email address.

158. Plaintiff Publius Publicola did not receive a response. Thus, on January 20, 2021, plaintiff Publius Publicola sent an email to defendant Valentino at the email address jjvalent@nycourts.gov and defendant Doran at the email address cdoran@nycourts.gov, see Exhibit 31, which read:

1. Pursuant to the Rules of the Court, on January 05, 2021, I requested oral argument in the above-referenced matter. Has oral argument been granted? If it has, when is it scheduled for? If it has not, what is the legal basis for why it has been denied?

2. Pursuant to the First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution, I hereby request a response to the following question: has a decision been rendered in the above-referenced matter?

3. Pursuant to the First Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, and JUD § 255, I hereby request that a copy of any and all communications sent to the parties in the above-referenced matter from anyone in Judge Randall's Chambers be emailed to me at this email address, including, but not limited to, your communication related to oral argument. Upon request, I will promptly pay any fees allowed by law.

159. Plaintiff Publius Publicola did not receive a response. Thus, on January 27, 2021, plaintiff Publius Publicola sent an email to defendant Valentino at the email address jjvalent@nycourts.gov and defendant Doran at the email address cdoran@nycourts.gov, see Exhibit 32, which read:

1. Pursuant to the Rules of the Court, on January 05, 2021, I requested oral argument in the above-referenced matter. Has oral argument been granted? If it has, when is it scheduled for? If it has not, what is the legal basis for why it has been denied?

2. Pursuant to the First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution, I hereby request a response to the following question: has a decision been rendered in the above-

referenced matter?

3. Pursuant to the First Amendment to the United States Constitution, the
Fourteenth Amendment to the United States Constitution, and JUD § 255, I
hereby request that a copy of any and all communications sent to the parties in the
above-referenced matter from anyone in Judge Randall's Chambers be emailed to
me at this email address, including, but not limited to, your communication
related to oral argument. Upon request, I will promptly pay any fees allowed by
law.

160.    On January 27, 2021, defendant Valentino wrote an email to plaintiff Publius

Publicola, see Exhibit 33, which read:



Judge Randall has reviewed all submissions to the court and is prepared to issue a
decision. The only communication to the parties from Judge Randall's chambers
has been two letters sent from me to the parties on behalf of Judge Randall. Those
letters are attached to this email. The first letter is a November 5, 2020 letter
to ▬▬▬▬▬ at his ▬▬▬▬▬ address. In that letter Judge Randall
scheduled oral argument without either party requesting oral argument. That letter
to ▬▬▬▬▬ was returned as undeliverable to the court and oral argument
obviously did not occur. I found a second address for ▬▬▬▬▬ in our
appeal file which is a ▬▬▬▬▬ address. I wrote a second letter to the
parties on November 20, 2020. That letter instructed the parties that, if they are
requesting oral argument, they must send an email or letter to the court to request
oral argument. The second letter to ▬▬▬▬▬ was also returned to the court
as undeliverable. The return envelopes are also attached to this email.

The court had no way to contact ▬▬▬▬▬ as both addresses we have had
been returned as undeliverable. Thankfully ▬▬▬▬▬ did contact the court
by phone which was forwarded to me. I spoke to ▬▬▬▬▬ on the phone
and explained to ▬▬▬▬▬ the issues that court had with respect to having
everything sent to ▬▬▬▬▬ returned as undeliverable. I also explained
to ▬▬▬▬▬ that Judge Randall just wanted to know whether or not he
wanted oral argument. ▬▬▬▬▬ stated to me that he just wanted a decision
and that he did not need oral argument. This communication from ▬▬▬▬▬
to me was explained to Judge Randall. Judge Randall then began preparing a
decision in this matter.

▬▬▬▬▬ states in his email to the court that he requested oral argument on
January 5, 2021. The court has not received any communication at all, oral or
written, from either party requesting oral argument in this matter. However, the
court can schedule an oral argument in this matter. The argument must be held

virtually because of the pandemic. Judge Randall can hold a virtual oral argument on February 8, 2021 at 3:00 p.m. The parties will receive an email from Sue Hartwig that will have the link to the virtual proceeding. Please let me know if that date and time works for you.

Also, ▓▓▓▓▓▓▓▓, we will need a valid address for you so that Judge Randall's decision can be sent to you after it is issued. Please send me your correct address so that I can update our appeal file. If we do not receive a valid address I am afraid the court clerk's only option is to send the decision to the addresses we have on file.

161.    As the irrefutable facts demonstrate, defendant Valentino engaged in blatant lies and corruption. For example:

a       Defendant Valentino stated, "[t]he court had no way to contact ▓▓▓▓▓▓▓▓ as both addresses we have had been returned as undeliverable." Yet, as of January 05, 2021, not only did defendant Valentino have valid addresses for plaintiff Publius Publicola, but he also had his email address and telephone number.

b.      Defendant Valentino recklessly stated "▓▓▓▓▓▓▓ states in his email to the court that he requested oral argument on January 5, 2021. The court has not received any communication at all, oral or written, from either party requesting oral argument in this matter." As the facts demonstrate, Plaintiff sent **six** emails to defendant Valentino at the email address jjvalent@nycourts.gov, which is the exact email address he requested to be used for filings in his November 20, 2020 letter, see Exhibit 35, between January 05, 2021 and January 27, 2021 requesting oral argument, copies of any communications mailed, and confirmation that any future communications in the appeal will be emailed to him.

c.      Per defendant Valentino's own attachment of a copy of the envelope purportedly used to mail the November 05, 2020 letter, see Exhibit 34, on November 06, 2020 and a copy of

the envelope purportedly used to mail both the November 05, 2020 letter and the November 20, 2020 letter,[8] see Exhibit 35, on December 23, 2020, which was in response to plaintiff Publius Publicola's telephone call to defendant Valentino on December 22, 2020, wherein defendant Valentino assured plaintiff Publius Publicola that the envelope would be addressed to his full name, defendant Valentino addressed both said envelopes to plaintiff Publius Publicola using only his initials.

      d.     On the face of the November 06, 2020 envelope, see Exhibit 36, the United States Postal Service informed defendant Valentino that the return reason was NIXIE related, which indicates that the envelope is returned to the sender for reasons other than a change of address request, and "NOT DELIVERABLE AS ADDRESSED." This said, a reasonable reading of these statements by the United States Postal Service makes it clear that there was an issue was how the letter was addressed, not with the addressee at the address. Additionally, the envelope was never received by the local post office for delivery as it was returned using United States Postal Service automated equipment. Thus, plaintiff Publius Publicola didn't have the opportunity to intercept the envelope at the local post office. Yet, in light of these facts, coupled with plaintiff Publius Publicola's telephone conversation with defendant Valentino on December 22, 2020, wherein defendant Valentino assured plaintiff Publius Publicola that the envelope would be addressed to his full name, defendant Valentino continued to mail letters to plaintiff Publius Publicola in envelopes using only his initials.

      e.     Defendant Valentino's letters were orders. The November 05, 2020 letter

---

[8] While defendant Valentino stated in his January 27, 2021 email to plaintiff Publius Publicola that the November 20, 2020 letter was "returned as undeliverable," no envelope was provided indicating this, whereby it isn't clear if it was actually mailed.

scheduled oral argument for a specific time and date and the November 20, 2020 letter

established when and how oral argument could be requested. What is astonishing is that

defendant Valentino requested future communications to occur via email in his November 20,

2020 letter. Thus, defendant Valentino not only requested that filings be made via email,[9] which

established a practice, but he attached two orders to his January 27, 2021 email. Yet, he refused

to email a copy of the order adjudicating the appeal, which demonstrates his corrupt intent.

162.    On January 27, 2021, plaintiff Publius Publicola responded to defendant

Valentino's email dated January 27, 2021, whereby plaintiff Publius Publicola sent an email to

defendant Valentino at the email address jjvalent@nycourts.gov and defendant Doran at the

email address cdoran@nycourts.gov, see Exhibit 37, which read:

> Thank you for your email, although I need to clarify a few matters.
>
> 1. I dispute your characterization of our telephone conversation last year. Specifically, you stated that you would mail the letter again, and I patiently awaited it so that I could respond.
>
> 2. I clearly requested oral argument in writing on January 05, 2021, of which I will forward to you and all others after this email is sent. In fact, not only did I send you an email requesting oral argument on January 05, 2021, but I sent six follow-up emails thereafter, of which went unanswered until today.
>
> 3. Both addresses are accurate, and I have recently received communications at both addresses from the Appeals Clerk and the Respondent. As previously explained, any communications need to be addressed to me using my full name, of which the Court is in possession of.
>
> 4. I dispute that the decision cannot be emailed to me.

163.    Oral argument occurred on February 08, 2021.

164.    On February 23, 2021, plaintiff Publius Publicola sent an email to defendant

---

[9] Any request regarding oral argument would certainly constitute a filing.

Valentino at the email address jjvalent@nycourts.gov, see Exhibit 38, which read, "[h]as a decision been rendered in the above-referenced matter? If so, when?"

165.    Plaintiff Publius Publicola did not receive a response. Thus, on February 25, 2021, plaintiff Publius Publicola sent an email to defendant Valentino at the email address jjvalent@nycourts.gov and defendant Doran at the email address cdoran@nycourts.gov, see Exhibit 39, which read:

> I sent you the below email on February 23, 2021, but you failed to respond.
>
> Pursuant to the First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution, I hereby request a response to the following question: has a decision been rendered in the above-referenced matter? If so, when?

166.    On February 25, 2021, defendant Valentino wrote an email to plaintiff Publius Publicola, see Exhibit 40, which read:

> The February 23 email you sent to me was delivered to my junk email. I did not realize you sent it until I received your email today. I apologize for that, but I do not check my junk email daily. Judge Randall issued a decision on February 9, 2021. The decision was sent by mail to your ▇▇▇▇▇▇ address on February 10, 2021. I learned on Tuesday[10] from Judge Randall's secretary that the decision was returned to our court clerk's office as "return to sender, not deliverable as addressed, unable to forward." The returned letter was recently delivered to Judge Randall's chambers.
>
> I can resend the decision. The only address we have for you is:

[11]

_____

[10] Defendant Valentino's email dated February 25, 2021, which was sent in response to plaintiff Publius Publicola's emails dated February 23, 2021 and February 25, 2021, was sent on Thursday of that week.

[11] This represents where defendant Valentino wrote plaintiff Publius Publicola's initials.

167.     Thus, instead of acting in good faith and contacting plaintiff Publius Publicola, who was vigorously litigating the appeal, obviously passionate about it, and expressed substantial concern about the fabricated mail issue (especially how it relates to the final adjudication of the appeal), via email or telephone to inform him that the purported February 09, 2021 order was rendered or that the purported February 09, 2021 order was mailed to plaintiff Publius Publicola on February 10, 2021, but returned as undeliverable, or to simply provide a copy of the purported February 09, 2021 order via email to ensure plaintiff Publius Publicola was provided proper notice, defendant Valentino did none of these. Instead, he again failed to address the February 10, 2020 envelope that purportedly contained the February 09, 2021 order to plaintiff Publius Publicola's name.

168.     On February 26, 2021, plaintiff Publius Publicola responded to defendant Valentino's email dated February 25, 2021, whereby plaintiff Publius Publicola sent an email to defendant Valentino at the email address jjvalent@nycourts.gov and defendant Doran at the email address cdoran@nycourts.gov, see Exhibit 41, which read:

> Thank you for your email.
>
> As stated in my January 27, 2021 email to you, my "addresses are accurate, and I have recently received communications at both addresses from the Appeals Clerk and the Respondent. As previously explained, any communications need to be addressed to me using my full name, of which the Court is in possession of."
>
> This said, it must be sent using my full name, of which is required by USPS regulations.

169.     Defendant Valentino did not respond to plaintiff Publius Publicola's February 26, 2021 email.

170.    On March 30, 2020, after receiving no communication(s) from defendant

Valentino, ether via USPS mail, email, or telephonically, plaintiff Publius Publicola sent a final

email to defendant Valentino at the email address jjvalent@nycourts.gov and defendant Doran at

the email address cdoran@nycourts.gov demanding that the purported February 09, 2021 order

be immediately mailed to him in an envelope addressed to his full name. Thereafter, plaintiff

Publius Publicola immediately and permanently closed the email address that he established to

communicate with defendant Valentino as it was obviously not serving any purpose except for

defendant Valentino to engage in sheer lies and corruption.

171.    Between April 2020 and October 2020, plaintiff Publius Publicola mailed a total

of six letters to defendant Valentino requesting the purported February 09, 2021 order. See, *e.g.*,

Exhibit 42. Plaintiff Publius Publicola did not receive a response.

172.    As previously stated, plaintiff Publius Publicola uses Informed Delivery, which

captures images of all mail addressed to the recipient and sends emails to said recipient when the

mail arrives at his or her address. This said, plaintiff Publius Publicola can prove that he was

receiving mail at his address, see, *e.g.*, Exhibit 43,[12] which is the same address that defendant

Bowman and defendant Valentino purportedly mailed the above documents. In fact, on June 14,

2020, plaintiff Publius Publicola received a letter at said address from the United States of

America. Exhibit 39.

173.    As the facts make clear, defendant Bowman and defendant Valentino fabricated

mail issues and thereafter defendant Valentino refused to email the purported February 09, 2021

---

[12] Plaintiff Publius Publicola is willing to unseal the addressee information on said letters under seal.

order, which was reasonably certain to inform plaintiff Publius Publicola that it had been rendered and of its contents, in an orchestrated attempt to deprive plaintiff Publius Publicola of his rights, privileges, and immunities secured by the United States Constitution, including his right to appeal the purported February 09, 2021 order. Defendants attempt to oppress, threaten, and intimidate plaintiff Publius Publicola from gaining justice is predicated on the belief that plaintiff Publius Publicola will surrender to Defendants' unlawful conduct and no longer pursue justice, but this is furthest from the truth.

174.    Defendant Lomenzo's February 13, 2018 order continues to be published by defendant Law Reporting Bureau and thus, it is obvious that the purported February 09, 2021 order did not grant the relief sought.

175.    This isn't Judge Randall's first time violating the due process rights of a litigant, especially regarding the ability of a litigant to access documentation. In *Curts v. Randall*, 110 A.D.3d 1452 (N.Y. App. Div. 2013), the Appellate Division, Fourth Department held:

> We agree with petitioner that the determination is arbitrary and capricious, and constitutes an abuse of discretion inasmuch as the record from the hearing is devoid of any evidence upon which respondent could have based his determination (*see Matter of Papaioannou v. Kelly,* 14 A.D.3d 459, 460, 788 N.Y.S.2d 378; *see generally Matter of Jennings v. New York State Off. of Mental Health,* 90 N.Y.2d 227, 240, 660 N.Y.S.2d 352, 682 N.E.2d 953). We further agree with petitioner that his due process rights were violated inasmuch as the record from the hearing does not demonstrate that he was afforded the opportunity to review the alleged documentation upon which respondent based his determination (*see LaGrange v. Bruhn,* 276 A.D.2d 974, 975, 714 N.Y.S.2d 392). We therefore annul the determination.

**F.    *The Anonymous FOIL Request***

      **1.    The Law**

176.    NY PBO §§ 87(2)(a) and (b) exempts from release "records or portions thereof

that (a) are specifically exempted from disclosure by state or federal statute [and] (b) if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article."

177.    NY PBO §§ 89(1)(a) and (b) provides, in part, that "[t]he committee on open government ... shall (i) furnish to any agency advisory guidelines, opinions or other appropriate information regarding this article[,] (ii) furnish to any person any person advisory opinions or other appropriate information regarding this article[, and] (iii) promulgate rules and regulations."

### 2.    The Facts

178.    On October 16, 2020, plaintiff Publius Publicola submitted a Freedom of Information Law request pursuant to NY PBO §§ 84-90 to defendant Brousseau and defendant Law Reporting Bureau.

179.    In response to said request and in violation of NY CPL § 160.50, NY PBO §§ 87(2)(a) and (b), and advisory guidelines and opinions from the Committee on Open Government, see, *e.g.*, Exhibit 44, defendant Brousseau, defendant Kerby, and defendant Barry released copies of defendant Lomenzo's order dated February 13, 2018 containing plaintiff Publius Publicola's full name, along with other information related to said order containing plaintiff Publius Publicola's full name, email address, and address.

## V.    CLAIMS FOR RELIEF

### A.    Count 1
### Violation of 42 U.S.C. § 1983 | Freedom of speech pursuant to the First Amendment to the United States Constitution

180.    Plaintiff incorporates the allegations contained in paragraphs 1 through 179 above.

181.   Defendants were, at all relevant times, acting under color of state law.

182.   While acting under color of state law, Defendants deprived Plaintiff of his right to speech pursuant to the First Amendment to the United States Constitution.

183.   The policies and customs of defendant Penfield, defendant Monroe, and defendant Law Reporting Bureau deprived Plaintiff of his right to speech pursuant to the First Amendment to the United States Constitution.

184.   The failure of defendant Penfield, defendant Monroe, and defendant Law Reporting Bureau to adequately train defendant Lomenzo, defendant Valentino, defendant Randall, defendant Bowman, defendant Turner, defendant Doran, defendant Mervine, defendant Hooks, and defendant Brousseau deprived Plaintiff of his right to speech pursuant to the First Amendment to the United States Constitution.

185.   Defendant Doran knew Plaintiff was being deprived of his right to speech pursuant to the First Amendment to the United States Constitution, but failed to act to prevent said deprivation.

186.   As a result of Defendants' deprivation of Plaintiff's right to speech pursuant to the First Amendment to the United States Constitution, Plaintiff is entitled to, and seeks, equitable relief.

187.   Defendants' deprivation of Plaintiff's right to speech pursuant to the First Amendment to the United States Constitution has caused Plaintiff suffering, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, and other compensatory damages in an amount to be assessed by this Court.

**B.     Count 2**

**Violation of 42 U.S.C. § 1983 | Right to petition pursuant to the First Amendment to the United States Constitution**

188.    Plaintiff incorporates the allegations contained in paragraphs 1 through 179 above.

189.    Defendants were, at all relevant times, acting under color of state law.

190.    While acting under color of state law, Defendants deprived Plaintiff of his right to petition pursuant to the First Amendment to the United States Constitution.

191.    The policies and customs of defendant Penfield, defendant Monroe, and defendant Law Reporting Bureau deprived Plaintiff of his right to petition pursuant to the First Amendment to the United States Constitution.

192.    The failure of defendant Penfield, defendant Monroe, and defendant Law Reporting Bureau to adequately train defendant Lomenzo, defendant Valentino, defendant Randall, defendant Bowman, defendant Turner, defendant Doran, defendant Mervine, defendant Hooks, and defendant Brousseau deprived Plaintiff of his right to petition pursuant to the First Amendment to the United States Constitution.

193.    Defendant Doran knew Plaintiff was being deprived of his right to petition pursuant to the First Amendment to the United States Constitution, but failed to act to prevent said deprivation.

194.    As a result of Defendants' deprivation of Plaintiff's right to petition pursuant to the First Amendment to the United States Constitution, Plaintiff is entitled to, and seeks, equitable relief.

195.    Defendants' deprivation of Plaintiff's right to petition pursuant to the First

Amendment to the United States Constitution has caused Plaintiff suffering, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, and other compensatory damages in an amount to be assessed by this Court.

### C.    Count 3
### Violation of 42 U.S.C. § 1983 | Due Process Clause of the Fourteenth Amendment to the United States Constitution

196.    Plaintiff incorporates the allegations contained in paragraphs 1 through 179 above.

197.    Defendants were, at all relevant times, acting under color of state law.

198.    While acting under color of state law, Defendants deprived Plaintiff of his right to due process pursuant to the Fourteenth Amendment to the United States Constitution.

199.    The policies and customs of defendant Penfield, defendant Monroe, and defendant Law Reporting Bureau deprived Plaintiff of his right to due process pursuant to the Fourteenth Amendment to the United States Constitution.

200.    The failure of defendant Penfield, defendant Monroe, and defendant Law Reporting Bureau to adequately train defendant Lomenzo, defendant Valentino, defendant Randall, defendant Bowman, defendant Turner, defendant Doran, defendant Mervine, defendant Hooks, and defendant Brousseau deprived Plaintiff of his right to due process pursuant to the Fourteenth Amendment to the United States Constitution.

201.    Defendant Doran knew Plaintiff was being deprived of his right to due process pursuant to the Fourteenth Amendment to the United States Constitution, but failed to act to prevent said deprivation.

202.    As a result of Defendants' deprivation of Plaintiff's right to due process pursuant

to the Fourteenth Amendment to the United States Constitution, Plaintiff is entitled to, and seeks, equitable relief.

203.    Defendants' deprivation of Plaintiff's right to due process pursuant to the Fourteenth Amendment to the United States Constitution has caused Plaintiff suffering, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, and other compensatory damages in an amount to be assessed by this Court.

**D.    Count 4**
**Violation of 42 U.S.C. § 1983 | Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

204.    Plaintiff incorporates the allegations contained in paragraphs 1 through 179 above.

205.    Defendants were, at all relevant times, acting under color of state law.

206.    While acting under color of state law, Defendants deprived Plaintiff of his right to equal protection pursuant to the Fourteenth Amendment to the United States Constitution.

207.    The policies and customs of defendant Penfield, defendant Monroe, and defendant Law Reporting Bureau deprived Plaintiff of his right to equal protection pursuant to the Fourteenth Amendment to the United States Constitution.

208.    The failure of defendant Penfield, defendant Monroe, and defendant Law Reporting Bureau to adequately train defendant Lomenzo, defendant Valentino, defendant Randall, defendant Bowman, defendant Turner, defendant Doran, defendant Mervine, defendant Hooks, and defendant Brousseau deprived Plaintiff of his right to equal protection pursuant to the Fourteenth Amendment to the United States Constitution.

209.    Defendant Doran knew Plaintiff was being deprived of his right to equal

protection pursuant to the Fourteenth Amendment to the United States Constitution, but failed to

act to prevent said deprivation.

210.    As a result of Defendants' deprivation of Plaintiff's right to equal protection

pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiff is entitled to,

and seeks, equitable relief.

211.    Defendants' deprivation of Plaintiff's right to equal protection pursuant to the

Fourteenth Amendment to the United States Constitution has caused Plaintiff suffering, loss of

reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress,

and other compensatory damages in an amount to be assessed by this Court.

**E.     Count 5**
        **Violation of 42 U.S.C. § 1983 | Conspiracy to deprive Plaintiff of rights,**
                **privileges, and immunities secured by the**
                **United States Constitution**

212.    Plaintiff incorporates the allegations contained in paragraphs 1 through 179

above.

213.    Defendants were, at all relevant times, acting under color of state law.

214.    Defendants conspired with each other to deprive Plaintiff of rights, privileges, and

immunities secured by the United States Constitution.

215.    While acting under color of state law and in furtherance of said conspiracy,

Defendants deprived Plaintiff of rights, privileges, and immunities secured by the United States

Constitution.

216.    As a result of Defendants' conspiracy to deprive Plaintiff of his rights, privileges,

and immunities secured by the United States Constitution, Plaintiff is entitled to, and seeks,

equitable relief.

217.    Defendants' conspiracy to deprive Plaintiff of his rights, privileges, and immunities secured by the United States Constitution has caused Plaintiff suffering, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, and other compensatory damages in an amount to be assessed by this Court.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare that Defendants violated plaintiff Publius Publicola's freedom of speech pursuant to the First Amendment of the United States Constitution.

B.    Declare that Defendants violated plaintiff Publius Publicola's right to petition pursuant to the First Amendment of the United States Constitution.

C.    Declare that Defendants violated plaintiff Publius Publicola's right to due process pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

D.    Declare that Defendants violated plaintiff Publius Publicola's right to equal protection pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

E.    Declare that defendant Lomenzo's February 13, 2018 order was unlawfully published.

F.    Declare any publication of defendant Lomenzo's February 13, 2018 order unlawful.

G.     Declare that the purported February 09, 2021 order was not served upon plaintiff

Publius Publicola pursuant to NY CPLR § 5513.

H.      Permanently enjoin defendant Law Reporting Bureau from publishing defendant Lomenzo's order dated February 13, 2018 through any medium, including, but not limited to, the New York Official Reports.

I.      Permanently enjoin defendant Law Reporting Bureau from publishing any other order produced by Defendants through any medium, including, but not limited to, the New York Official Reports.

J.      Permanently enjoin defendant Kerby and defendant Barry, from possessing, in any form, defendant Lomenzo's order dated February 13, 2018 and any and all other information that is in any way related to plaintiff Publius Publicola, including, but not limited to, information that in any way can be used to identify him.

K.      Permanently enjoin defendant Law Reporting Bureau and its employees, including defendant Hooks and defendant Brousseau, from possessing, in any form, defendant Lomenzo's order dated February 13, 2018 and any and all other information that is in any way related to plaintiff Publius Publicola, including, but not limited to, information that in any way can be used to identify him.

L.      Permanently enjoin defendant Lomenzo from possessing, in any form, defendant Lomenzo's order dated February 13, 2018 and any and all other information that is in any way related to plaintiff Publius Publicola, including, but not limited to, information that in any way can be used to identify him.

M.      Permanently enjoin Defendants from violating plaintiff Publius Publicola's freedom of speech pursuant to the First Amendment to the United States Constitution.

N.      Permanently enjoin Defendants from violating plaintiff Publius Publicola's right to petition pursuant to the First Amendment to the United States Constitution.

O.      Permanently enjoin Defendants from violating plaintiff Publius Publicola's right to due process pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

P.      Permanently enjoin Defendants from violating plaintiff Publius Publicola's right to equal protection pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Q.      Order defendant Valentino to send the purported February 09, 2021 order to plaintiff Publius Publicola via (1) USPS Certified Mail and (2) email to an email address provided to defendant Valentino under seal.

R.      Order defendant Kerby and defendant Barry to immediately and irrevocable destroy any and all information that is in any way related to defendant Lomenzo's order dated February 13, 2018, including, but not limited to, defendant Lomenzo's order dated February 13, 2018 and any and all other information that can be used in any way to identify plaintiff Publius Publicola.

S.      Order defendant Law Reporting Bureau and its employees, including defendant Hooks and defendant Brousseau, to immediately and irrevocable destroy any and all information that is in any way related to defendant Lomenzo's order dated February 13, 2018, including, but not limited to, defendant Lomenzo's order dated February 13, 2018 and any and all other information that can be used in any way to identify plaintiff Publius Publicola.

T.      Order defendant Lomenzo to immediately and irrevocable destroy any and all

information that is in any way related to defendant Lomenzo's order dated February 13, 2018, including, but not limited to, defendant Lomenzo's order dated February 13, 2018 and any and all other information that can be used in any way to identify plaintiff Publius Publicola.

U.      Order defendant Law Reporting Bureau to inform any and all third-parties who republished defendant Lomenzo's February 13, 2018 order that said order is permanently sealed and must be permanently removed from publication and destroyed.

V.      Award monetary damages against Defendants for violating plaintiff Publius Publicola's freedom of speech pursuant to the First Amendment to the United States Constitution.

W.      Award monetary damages against Defendants for violating plaintiff Publius Publicola's right to petition pursuant to the First Amendment to the United States Constitution.

X.      Award monetary damages against Defendants for violating plaintiff Publius Publicola's right to due process pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Y.      Award monetary damages against Defendants for violating plaintiff Publius Publicola's right to equal protection pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Z.      Award plaintiff Publius Publicola the costs of this action and any other such further relief as this Court deems just and proper.

Dated: December 01, 2021                    Respectfully Submitted,

                                            By: /s/ Publius Publicola            .
                                                 PO Box 13226
                                                 Jersey City, New Jersey 07303