



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Publius Publicola,<br><br>    Plaintiff,<br><br>  v.<br><br>John Lomenzo, Town of Penfield, Joseph<br>Valentino, Douglas Randall, Destini Bowman,<br>Karen Bailey Turner, Craig Doran, Leah<br>Mervine, County of Monroe, William Hooks,<br>Cara Brousseau, New York State Law<br>Reporting Bureau, Shawn Kerby, and Nancy<br>Barry,<br><br>    Defendants. | Case No. `1:21-cv-1303(DNH)(FH)` |

**NOTICE OF MOTION TO PROCEED UNDER A PSEUDONYM AND FILE
DOCUMENTS UNDER SEAL**

  PLEASE TAKE NOTICE that, upon the annexed Memorandum of Law in Support of

Plaintiff's Motion to Proceed Under a Pseudonym and File Documents Under Seal, and all prior

pleadings, submissions, and proceedings had herein, Plaintiff Publius Publicola will move the

Court, located in the _____ Courthouse,

_____,

on a date and at such time as may be designated by the Court, pursuant to Rule 7(b) of the

Federal Rules of Civil Procedure, for an order granting Plaintiff's Motion to Proceed Under a

Pseudonym and File Documents Under Seal and for such other and further relief as this Court

deems just and proper.

Dated: December 01, 2021

         By: /s/ Publius Publicola _____
           PO Box 13226
           Jersey City, New Jersey 07303

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

I. INTRODUCTION ......................................................................................... 1

II. ARGUMENT ............................................................................................... 1

   A. Plaintiff Should Proceed Under a Pseudonym ............................................ 1

      1. The Matters Are Highly Sensitive and of a Personal Nature ............................. 3

      2. The Identification of Plaintiff Poses a Risk of Retaliatory Physical
         Or Mental Harm to Him ..................................................................... 6

      3. The Identification of Plaintiff Presents Other Harms, Including That the
         Injury Litigated Against Would Be Incurred as a Result of the Disclosure
         of the Plaintiffs Identity ..................................................................... 7

      4. Plaintiff Is Particularly Vulnerable to the Possible Harms of Disclosure .......... 8

      5. The Action Is Solely Challenging the Actions of the Government ................... 8

      6. There Is No Prejudice to the Defendants by Allowing the Plaintiff to
         Proceed Under a Pseudonym ............................................................... 8

      7. Plaintiffs Identity Has Thus Far Been Kept Confidential ................................. 8

      8. The Public's Interest in the Action Is Not Furthered by Requiring the
         Plaintiff to Disclose His Identity ......................................................... 9

      9. The Issues Are of a Purely Legal Nature ............................................... 9

      10. Proceeding Under a Pseudonym Is the Best Method to Protect the
         Confidentiality of the Plaintiff ........................................................... 9

   B. Documents Should Be Filed Under Seal ..................................................... 10

      1. Sealed Exhibit 1 ............................................................................... 10

      1. Sealed Exhibit 2 ............................................................................... 11

III. CONCLUSION ................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. Maxwell*, No. 18-2868 (2d Cir. 2019) ............................................................ 10

*People v. Anonymous*, 34 NY3d 631, 637 [2020] ...................................................... 3, 4

*Roe v. Ingraham*, 364 F. Supp. 536, 541 (S.D.N.Y. 1973) ............................................ 7

*Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008) ................................. 1

*United States v. Amodeo*, 71 F.3d 1044, 1048-1049 (2d Cir. 1995) ............................................. 10

*United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ......................................................... 10


**STATUTES**

22 NY Comp Codes Rules and Regs § 7300.1 ..................................................................... 12, 13

22 NY Comp Codes Rules and Regs § 7300.6 .......................................................................... 13

NY CPL § 160.50 ............................................................................ 1, 3, 4, 5, 8, 9, 15, 16

NY CPL § 160.55 ................................................................................................. 1, 16

NY CPL § 160.60 ...................................................................................................... 3, 4


**RULES**

New York Law Reports Style Manual § 12.4(a)(1) ...................................................... 14

Rule 10(a) of the Federal Rules of Civil Procedure ........................................................ 1


**OTHER AUTHORITIES**

New York State Law Reporting Bureau's website page titled "Selection of Opinions for Publication. https://nycourts.gov/reporter/selection.shtml. .............................................. 13, 14

New York State Law Reporting Bureau's website page titled "Privacy Guidelines." https://www.nycourts.gov/Reporter/privacy-guidelines.shtml. ...................................................... 14

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Publius Publicola,<br><br>            Plaintiff,<br><br>    v.<br><br>John Lomenzo, Town of Penfield, Joseph Valentino, Douglas Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, Leah Mervine, County of Monroe, William Hooks, Cara Brousseau, New York State Law Reporting Bureau, Shawn Kerby, and Nancy Barry,<br><br>            Defendants. | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM AND FILE DOCUMENTS UNDER SEAL**

Plaintiff Publius Publicola respectfully submits this Memorandum of Law in support of Plaintiff's Motion to Proceed Under a Pseudonym and File Documents Under Seal.

## I.     INTRODUCTION

The origins of this action stem from when plaintiff Publius Publicola was a child and involve matters sealed pursuant to NY CPL § 160.50. More specifically, in response to plaintiff Publius Publicola requesting his own court records from when he was a child and attempting to fix sealing errors caused by Defendants' failure to comply with the statutory commands of NY CPL §§ 160.50 and 160.55, whereby the Penfield Town Court was required to "immediately" seal the records upon disposition of his cases *over 15 years ago*, Defendants have deprived plaintiff Publius Publicola of his rights, privileges, and immunities secured by the United States Constitution and, in doing so, perpetrated injuries upon plaintiff Publius Publicola that are far greater than the initial injuries he ever sought to remedy.

## II.     ARGUMENT

### A.     Plaintiff Should Proceed Under a Pseudonym

This Court is not strictly bound by the requirement of Rule 10(a) of the Federal Rules of Civil Procedure that the title of a complaint include the names of "all the parties." *Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008). Instead, allowing parties to proceed under a pseudonym is permitted in certain circumstances. *Id.*, at 189.

In *Sealed Plaintiff*, 537 F.3d at 189-190, the United States Court of Appeals for the Second Circuit created a framework to guide district courts when balancing "the plaintiff's need for anonymity against countervailing interests in full disclosure." *Id.*, at 189. Specifically, the Court held:

This balancing of interests entails the consideration of several factors that have been identified by our sister Circuits and the district courts in this Circuit. We note with approval the following factors, with the caution that this list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration:

(1) [W]hether the litigation involves matters that are "highly sensitive and [of a] personal nature," *Zavaras*, 139 F.3d at 803; *see also James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992);

(2) "[W]hether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties," *Jacobson*, 6 F.3d at 238; *see also Zavaras*, 139 F.3d at 803; *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996);

(3) [W]hether identification presents other harms and the likely severity of those harms, *see Advanced Textile Corp.*, 214 F.3d at 1068, including whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiffs identity," *Zavaras*, 139 F.3d at 803;

(4) [W]hether the plaintiff is particularly vulnerable to the possible harms of disclosure, *see Advanced Textile Corp.*, 214 F.3d at 1068, particularly in light of his age, *see Jacobson*, 6 F.3d at 238; *see also Del Rio*, 241 F.R.D. at 157;

(5) [W]hether the suit is challenging the actions of the government or that of private parties, *see Jacobson*, 6 F.3d at 238; *Frank*, 951 F.2d at 323;

(6) [W]hether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court, *see Advanced Textile Corp.*, 214 F.3d at 1068;

(7) [W]hether the plaintiffs identity has thus far been, kept confidential, *see Del Rio*, 241 F.R.D. at 157;

(8) [W]hether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity, *see Advanced Textile Corp.*, 214 F.3d at 1068;

(9) "[W]hether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," *Del Rio*, 241 F.R.D. at 157; and

(10) [W]hether there are any alternative mechanisms for protecting the confidentiality of the plaintiff, *cf. Aware Woman Ctr.*, 253 F.3d at 687.

### 1.     The Matters Are Highly Sensitive and of a Personal Nature

NY CPL § 160.50 mandates:

Upon the termination of a criminal action or proceeding against a person in favor of such person ... the record of such action or proceeding shall be sealed and the clerk of the court wherein such criminal action or proceeding was terminated shall immediately notify the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies that the action has been terminated in favor of the accused ... that the record of such action or proceeding shall be sealed. Upon receipt of notification of such termination and sealing ... all official records and papers, including judgments and orders of a court ... relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency.

Likewise, NY CPL § 160.60 mandates:

Upon the termination of a criminal action or proceeding against a person in favor of such person, as defined in subdivision two of section 160.50 of this chapter, the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status he occupied before the arrest and prosecution.   The arrest or prosecution shall not operate as a disqualification of any person so accused to pursue or engage in any lawful activity, occupation, profession, or calling.   Except where specifically required or permitted by statute or upon specific authorization of a superior court, no such person shall be required to divulge information pertaining to the arrest or prosecution.

In *People v. Anonymous*, 34 NY3d 631, 637 [2020], the New York Court of Appeals articulated the legislative intent behind NY CPL § 160.50. Specifically, the Court held:

[T]he Legislature's objective in enacting CPL 160.50 . . . was to ensure that the protections provided be consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on

the basis of an accusation, unless the charges were ultimately sustained in a court of law'" (Patterson, 78 NY2d at 716, citing Governor's Approval Mem, 1976 McKinney's Session Laws of NY, at 2451). In other words, "[t]he sealing requirement was designed to lessen the adverse consequences of unsuccessful criminal prosecutions by limiting access to official records and papers in criminal proceedings which terminate in favor of the accused" (Katherine B., 5 NY3d at 202 [citation omitted]). The "articulated rationale for the enactment of the sealing statutes—the presumption of innocence' . . . [—]directed usually at pending charges can surely have been viewed by the Legislature as even more germane in relation to favorably terminated matters" (Matter of Alonzo M. v New York City Department of Probation, 72 NY2d 662, 668-669 [1988]). At its core, "[t]he statute serves the laudable goal of [e]nsuring that one who is charged but not convicted of an offense suffers no stigma as a result of [the accused] having once been the object of an unsustained accusation" (Hynes v. Karassik, 47 NY2d 659, 662 [1979]).

Further, the interplay between NY CPL §§ 160.50 and 160.60 was likewise articled by the New York Court of Appeals in *Anonymous*, 34 NY3d 631, at 637-638. Specifically, the Court held:

> The sealing mandate of CPL 160.50(1), in combination with CPL 160.60—which provides that "the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status [the accused] occupied before the arrest and prosecution"—requires more than a court's acknowledgment that the arrest and prosecution ended favorably. The law clearly intends that the criminal action and proceedings be treated as if they never occurred—as if they are not part of defendant's past.

> As the Court summarized in *Matter of Alonzo M.*, "when an action is favorably disposed of in an adult proceeding the records are sealed under CPL 160.50, the arrest and prosecution are deemed a nullity, the accused is restored to the status occupied before arrest, and unless specifically required by statute, or directed by a superior court, the accused is not required to divulge information regarding the favorably terminated action. This statutory safety net protecting adults ensures that records and materials generated from an arrest and a favorably terminated proceeding are eliminated as facets of the accused's criminal pedigree" (72 NY2d at 667-668 [citations omitted]).

It is well settled that courts do not have inherent authority to unseal records. In *Anonymous*, 34 NY3d 631, at 642, the New York Court of Appeals reiterated this and held:

Memorandum of Law                    Page 4 of 17

The [New York Court of Appeals] long ago rejected the view that a court's inherent authority over its proceedings grants power to unseal because that "would subvert the plain intendment of the statutory scheme—to establish, in unequivocal mandatory language, a general proscription against releasing sealed records and materials, subject only to a few narrow exceptions" (Matter of Joseph M. [New York City Bd. of Educ.], 82 NY2d 128, 134 [1993] [emphasis in original]; see also Matter of Alonzo M., 72 NY2d at 668 [expressing concern that courts' inherent authority over their own records would be "dubious authority (upon which) to override so clear a legislative policy" set forth in a sealing statute]). In accordance with our settled rules of statutory interpretation, we have eschewed efforts to rewrite the statute to achieve what a court or advocate perceives to be a better outcome, because "if there is to be an exception to the general rule proscribing the release of sealed records . . . it should be created by the [l]egislature, not by the courts" (Matter of Joseph M., 82 NY2d at 134).

Defendant Lomenzo's corrupt publication of his February 13, 2018 order containing plaintiff Publius Publicola's full name, in response to plaintiff Publius Publicola's *motion to seal* court records that were statutorily required to be sealed by the Penfield Town Court *immediately* upon disposition of the his cases *over 15 years ago*, unlawfully exposed matters sealed pursuant to NY CPL § 160.50, whereby defendant Lomenzo perpetrated an injury upon plaintiff Publius Publicola that was far greater than the initial injury he ever sought to remedy.

Thankfully, this Court does not need to rely solely on plaintiff Publius Publicola's statements concerning the highly sensitive and personal nature of the matters. The New York State Legislature's objective underpinning the enactment of NY CPL § 160.50 was to ensure "that one who is charged but not convicted of an offense suffers no stigma as a result of [the accused] having once been the object of an unsustained accusation. Likewise, the New York Court of Appeals believes the same and is committed to the "unequivocal mandatory language" of NY CPL § 160.50 and "eschew[ing] efforts to rewrite [NY CPL § 160.50] to achieve what a court ... perceives to be a better outcome, because "if there is to be an exception to the general

rule proscribing the release of sealed records . . . it should be created by the [l]egislature, not by the courts." *Ibid.*

### 2.    The Identification of Plaintiff Poses a Risk of Retaliatory Physical Or Mental Harm to Him

Defendants have a history of retaliating against plaintiff Publius Publicola. For example, in response to contacting the Penfield Town Court to inquire into when he will receive his court records on a recorded and retained telephone call, defendant Lomenzo thereafter corruptly left a voicemail for plaintiff Publius Publicola on November 19, 2015, of which was recorded and retained, full of anger and rage, and clearly designed to oppress, threaten, and intimidate plaintiff Publius Publicola. On said voicemail, defendant Lomenzo stated, "[b]oth of my court clerks indicate that you have been nasty on the phone. I'm telling you right now, do not call the court clerk's office for anything. ... Under no circumstance are you to call my court clerks again."

And when plaintiff Publius Publicola wrote a letter to defendant Lomenzo on November 19, 2015, see Exhibit 1, expressing his concerns with defendant Lomenzo's voicemail and his overall experience with attempting to obtain his court records, which was not only warranted, but obviously protected by the First Amendment to the United States Constitution, defendant Lomenzo again demonstrated his inability to ascertain that he is not a dictator and corruptly sent plaintiff Publius Publicola a letter dated November 21, 2015 in an attempt to oppress, threaten, and intimidate plaintiff Publius Publicola. Exhibit 2. The letter reads:

> Due to the insulting, abusive and contemptuous nature of your letter of November 19, 2015, I will not consider any request from you until I receive your written and unqualified letter of apology directed to my court clerks and myself. I have instructed my court clerks to have no communication with you until I receive such letter.

Had you uttered the same words in your letter in open court before me I would've had the power to and I would have, after demanding an apology and an appropriate warning about the consequences of your refusal to do so, held you in contempt of court and imposed either a fine or incarcerated you.

Further, in response to plaintiff Publius Publicola's simple motions to seal court records that the Penfield Town Court was required to *immediately* seal upon disposition of his cases *over 15 years ago*, defendant Lomenzo corruptly published his February 13, 2018 order containing plaintiff Publius Publicola's full name to the world, of which was littered with disparagement and false statements.

### 3. The Identification of Plaintiff Presents Other Harms, Including That the Injury Litigated Against Would Be Incurred as a Result of the Disclosure of the Plaintiffs Identity

In *Roe v. Ingraham*, 364 F. Supp. 536, 541 (S.D.N.Y. 1973), the United States District Court for the Southern District of New York held:

All of the patient-plaintiffs — the three children and adult of the original complaint and the intervenor cancer patient and migraine sufferer — are identified in each complaint only by fictitious names ostensibly to protect their identities. This procedure is not explicitly authorized by the federal rules. However, it was given implicit recognition by the United States Supreme Court in Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973). The inherent problems which this procedure poses, most notably the possible inability to fix *res judicata* effect, mandate that it be used sparingly. Here, however, if plaintiffs are required to reveal their identity prior to the adjudication on the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid. See N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958). Under such circumstances it is permissible to proceed by pseudonym but only if these fictitious names are actually representative of real and specific aggrieved individuals. Plaintiffs' attorneys have represented to the court that these preconditions have been met.

Here, as in *Roe v. Ingraham*, disclosing the identity of plaintiff Publius Publicola would result in precisely the harm that this action seeks to avoid. The injuries being litigated, which include the unlawful disclosure of plaintiff Publius Publicola's identity in association with records sealed pursuant to NY CPL § 160.50, would undoubtedly be incurred as a result of the disclosure of plaintiff Publius Publicola's identity in this action.

### 4. Plaintiff Is Particularly Vulnerable to the Possible Harms of Disclosure

In addition to the underlying matters being sealed pursuant to NY CPL § 160.50 and from when plaintiff Publius Publicola was a child, plaintiff Publius Publicola is a professional with various business ventures who cares deeply about his reputation and hasn't been cited for violating any law or regulation since being a child. This said, plaintiff Publius Publicola certainly did not commit his life to building his reputation for it to be unlawfully tampered with by defendant Lomenzo.

### 5. The Action Is Solely Challenging the Actions of the Government

All Defendants in this action were, at all relevant times, acting under color of state law.

### 6. There Is No Prejudice to the Defendants by Allowing the Plaintiff to Proceed Under a Pseudonym

Not only is there no prejudice to the Defendants by allowing plaintiff Publius Publicola to proceed under a pseudonym, but for defendant Lomenzo's unlawful and corrupt disclose of plaintiff Publius Publicola's identity, many of the defendants would not know plaintiff Publius Publicola's identity, which is precisely how the New York State Legislature intended it to be.

### 7. Plaintiff's Identity Has Thus Far Been Kept Confidential

Plaintiff Publius Publicola's identity has thus far been kept confidential pursuant to NY

CPL § 160.50 but for Defendants' corrupt conduct, wherein he was deprived of rights, privileges, and immunities secured by the United States Constitution when his records sealed pursuant to NY CPL § 160.50 were exposed to the public, including through the intentional, malicious, and retaliatory publication of defendant Lomenzo's February 13, 2018 order containing plaintiff Publius Publicola's full name. This said, Defendants' corrupt and unlawful conduct cannot possibly justify the obliteration of NY CPL § 160.50, including the legislative intent underpinning it and all of the settled precedent from the New York Court of Appeals affirming its mandates.

### 8.    The Public's Interest in the Action Is Not Furthered by Requiring the Plaintiff to Disclose His Identity

The purpose of this action is to remedy the harms caused by Defendants' deprivation of plaintiff Publius Publicola's of rights, privileges, and immunities secured by the United States Constitution concerning matters sealed pursuant to NY CPL § 160.50 and from when he was a child. This said, the public has no right to any records sealed pursuant to NY CPL § 160.50, and the corruption of a few can in no way change that.

### 9.    The Issues Are of a Purely Legal Nature

Defendants' deprivation of plaintiff Publius Publicola's rights, privileges, and immunities secured by the United States Constitution is conclusive. Thus, this matter involves issues that are purely legal in nature and therefore, there is an atypically weak public interest in knowing plaintiff Publicola's identity.

### 10.    Proceeding Under a Pseudonym Is the Best Method to Protect the Confidentiality of the Plaintiff

Due to the nature of this action, wherein the identity of plaintiff Publius Publicola must

Memorandum of Law                          Page 9 of 17

be kept confidential, proceeding under a pseudonym is the best method to protect the

confidentiality of his identity.

For the foregoing reasons, plaintiff Publius Publicola respectfully requests that this Court

grant his request to proceed under a pseudonym.

**B.        Documents Should Be Filed Under Seal**

"[I]t must be recognized that an abundance of statements and documents generated in

federal litigation actually have little or no bearing on the exercise of Article III judicial power ...

[and that] [u]nlimited access to every item turned up in the course of litigation would be

unthinkable. Reputations would be impaired, personal relationships ruined, and businesses

destroyed on the basis of misleading or downright false information." *United States v. Amodeo*,

71 F.3d 1044, 1048-1049 (2d Cir. 1995).

**1.        Sealed Exhibit 1**

For the common law presumption of public access to attach, the document sought must

be a "judicial document." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). In *Brown v.*

*Maxwell*, No. 18-2868 (2d Cir. 2019), the United States Court of Appeals for the Second Circuit

held:

> In defining "judicial records and documents," we have emphasized that "the mere
> filing of a paper or document with the court is insufficient to render that paper a
> judicial document subject to the right of public access." *Amodeo I*, 44 F.3d at
> 145–46. Instead, "the item filed must be relevant to the performance of the
> judicial function and useful in the judicial process in order for it to be designated
> a judicial document." *Id.* at 145.

Sealed Exhibit 1 is a letter to the Clerk of the Court containing plaintiff Publius

Publicola's actual name. This said, Sealed Exhibit 1 cannot possibly be considered a judicial

record and, as a result, plaintiff Publius Publicola respectfully requests that it be sealed.

### 2.    Sealed Exhibit 2

Sealed Exhibit 2 is defendant Lomenzo's February 13, 2018 order. Assuming this Court

finds Sealed Exhibit 2 to be a judicial record because it is "relevant to the performance of [this

Court's] judicial function and useful in [its] judicial process" *Amodeo*, 44 F.3d, at 145, "the fact

that a document is a judicial record does not mean that access to it cannot be restricted." *Id.*, at

146.

> It is uncontested, however, that the right to inspect and copy judicial records is not
> absolute. Every court has supervisory power over its own records and files, and
> access has been denied where court files might have become a vehicle for
> improper purposes. For example, the common-law right of inspection has bowed
> before the power of a court to insure that its records are not "used to gratify
> private spite or promote public scandal" through the publication of "the painful
> and sometimes disgusting details of a divorce case." *In re Caswell*, 18 R.I. 835,
> 836, 29 A. 259 (1893). Accord, *e.g., C.* v. *C.*, 320 A.2d 717, 723, 727 (Del. 1974).
> See also *King* v. *King*, 25 Wyo. 275, 168 P. 730 (1917). Similarly, courts have
> refused to permit their files to serve as reservoirs of libelous statements for press
> consumption, *Park* v. *Detroit Free Press Co.*, 72 Mich. 560, 568, 40 N.W. 731,
> 734-735 (1888); see *Cowley* v. *Pulsifer*, 137 Mass. 392, 395 (1884) (per Holmes,
> J.); *Munzer* v. *Blaisdell*, 268 A.D. 9, 11, 48 N.Y.S.2d 355, 356 (1944); see also
> *Sanford* v. *Boston Herald-Traveler Corp.*, 318 Mass. 156, 158, 61 N.E.2d 5, 6
> (1945), or as sources of business information that might harm a litigant's
> competitive standing, see, *e.g., Schmedding* v. *May*, 85 Mich. 1, 5-6, 48 N.W. 201,
> 202 (1891); *Flexmir, Inc.* v. *Herman*, 40 A.2d 799, 800 (N.J. Ch. 1945). *Nixon v.
> Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

One established reason to seal judicial records is when there is a privacy interest of the

person resisting disclosure. *Amodeo*, 71 F.3d at 1050.

> Courts have long declined to allow public access simply to cater "to a morbid
> craving for that which is sensational and impure." *In re Caswell*, 18 R.I. 835, 836,

29 A. 259, 259 (1893). As the Supreme Court noted in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), courts have the power to insure that their records are not "used to gratify private spite or promote public scandal," and have "refused to permit their files to serve as reservoirs of libelous statements for press consumption." *Id.* at 598 (internal quotation marks and citation omitted) (collecting cases); *see also Stevenson v. News Syndicate Co.,* 276 A.D. 614, 96 N.Y.S.2d 751, *aff'd,* 302 N.Y. 81, 96 N.E.2d 187 (2d Dep't 1950).

We note that these interests antedate and are distinct from the body of law which has come to be associated with the tort of "invasion of privacy." *See* Samuel D. Warren; Louis D. Brandeis, *The Right to Privacy,* 4 Harv. L. Rev. 193 (1890); W. Page Keeton *et al., Prosser Keeton on the Law of Torts* Section(s) 117 (5th ed. 1984). We thus reject Newsday's argument that our opinion in Gardner limits cognizable privacy rights to "intimate relations" such as bedroom or other intimate conversations. This excessively narrow position ignores the factual posture of *Gardner,* in which the district court redacted the names of both corporations and individuals because they "at least appear[ed] to [the court] to be peripheral characters and as to whose [criminal] complicity [the court] had some doubt." *In re Application of Newsday,* No. 88-286, slip op. at 10 (E.D.N.Y. July 27, 1989) (transcript of unpublished bench decision releasing redacted search warrant application), *aff'd,* 895 F.2d 74 (2d Cir.), *cert. denied,* 496 U.S. 931 (1990).

In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. ... The nature and degree of injury must also be weighed. This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information. *Id.*, at 1050-1051.

The authority to publish court orders originates from NY JUD § 431, which states:

The law reporting bureau shall report every cause determined in the court of appeals and every cause determined in the appellate divisions of the supreme court, unless otherwise directed by the court deciding the cause; and, in addition, *any cause determined in any other court which the state reporter, with the approval of the court of appeals, considers worthy of being reported because of its usefulness as a precedent or its importance as a matter of public interest.* (Emphasis added.)

In addition to the forgoing, 22 NY Comp Codes Rules and Regs § 7300.1-7 was enacted

to establish "rules concerning publication of opinions in the miscellaneous reports." Of

significance to this matter, 22 NY Comp Codes Rules and Regs § 7300.1 mandates that "[n]o

opinion shall be made available for publication in any official or unofficial reports, except the

New York Law Journal, without the approval of the State Reporter or the Committee on

Opinions" and 22 NY Comp Codes Rules and Regs § 7300.6 states that "opinions dealing with

matters which are essentially of interest only to the attorneys and parties involved **should not** be

presented for publication; and opinions covering legal matters which are of relatively incidental

interest or which involve primarily factual or discretionary matters or dicta **should not** be

submitted for publication. (Emphasis added.)

 The New York State Law Reporting Bureau's website page titled "Selection of Opinions

for Publication" state:

> We take the selection process seriously, recognizing the unique importance of the Miscellaneous Reports to our jurisprudence. The Miscellaneous Reports are at the cutting edge of the judicial decision-making process where the law concerning new issues entering the court system for the first time is developed, exceptions to the broad rules established by the appellate courts are devised, interstices in the common law are filled and practice issues unique to the trial courts are decided.

> The Rules Concerning Publication of Opinions in the Miscellaneous Reports, which are published at 22 NYCRR part 7300, elaborate on the statutory criteria—precedential usefulness and public importance—for selection of opinions for the Miscellaneous Reports. These are:

> *Precedential significance.* We select all true "landmark" opinions that make a significant contribution to the law, and any which hold a statute unconstitutional or invalidate administrative regulations. We measure precedential significance by the holdings and matters necessarily decided—discussions constituting dicta do not meet our criteria. Some weight is given to the level of court in applying this criterion.

> *Novelty.* This includes opinions that deal with issues of first impression that are likely to be recurrent; that discuss developing areas of the law on which little has been written; that create exceptions to broad rules established at the appellate level; or that extend or clarify appellate case law.

*Public importance*. We seek to select opinions of broad interest to the bar or to the public at large. These may include cases deciding issues specific to the attorney-client relationship, as well as general interest cases, such as decisions involving school funding, elections and powers of state and local governments.

*Practical significance*. This includes opinions that address issues unique to trial court practice—discovery, evidence, procedure, etc. As a further example, we might select a high percentage of cases on an emerging issue in order to build a more significant body of published case law for the guidance of trial courts and to assist potential appellate review on that important issue. https://nycourts.gov/reporter/selection.shtml.

The New York State Law Reporting Bureau's website page titled "Privacy Guidelines"

states:

The Law Reporting Bureau has developed these privacy guidelines to ensure that privacy interests of individuals are protected when New York State court decisions are published on the Internet. *These guidelines are based on policy guidance from the Unified Court System and the Office of the Chief Administrative Judge.*

The LRB publishes in print and online all decisions of the Court of Appeals and the Appellate Division, as well as selected opinions of the trial courts. After decisions are submitted to the LRB and processed, they are posted to the LRB's website---usually within several hours---and transmitted to the LRB's commercial publisher (currently Thomson Reuters Westlaw). *Third-party websites often link to decisions on the LRB's website or republish them.*

Given the immediacy of public access to opinions on the LRB's website, decisions should be reviewed for privacy concerns **before** they are submitted to the LRB for publication. This review should focus on mandatory redactions, such as those that are required by statute and rules, as well as discretionary redactions, which focus on concerns which may only arise after publication on the Internet. https://www.nycourts.gov/Reporter/privacy-guidelines.shtml. (Emphasis added.)

Further, the New York State Law Reporting Bureau's privacy guidelines are codified in

the New York Law Reports Style Manual. Of specific importance to this matter, New York Law

Reports Style Manual § 12.4(a)(1) mandates that "[t]he name of any person younger than 18

years old should not appear in any published opinion."

Defendant Lomenzo's February 13, 2018 order, which was in response to plaintiff Publius Publicola properly petitioning the Penfield Town Court for redress, wherein he attempted to correct errors *made by the Penfield Town Court* regarding the **sealing** of his records that were statutorily required to be sealed by the Penfield Town Court *immediately* upon disposition of the his cases *over 15 years ago*, perpetrated an injury upon plaintiff Publius Publicola that was far greater than the initial injury plaintiff Publius Publicola ever sought to remedy.

It is indisputable that no lawful exception existed for defendant Lomenzo to unseal plaintiff Publius Publicola's court records sealed pursuant to NY CPL § 160.50 and then engage in the non-judicial act of publishing said court records to the world with plaintiff Publius Publicola's full name.[1] Instead, it is obvious that defendant Lomenzo wrote the six page false and disparaging order dated February 13, 2018 with the intent to corruptly publish it to harm plaintiff Publius Publicola's reputation.

As the facts clearly establish, defendant Lomenzo knew plaintiff Publius Publicola was a child, and, per his own statements in the February 13, 2018 order, that plaintiff Publius Publicola's records were sealed pursuant to NY CPL § 160.50. In addition to this, had defendant Hooks read the February 13, 2018 order as he was required to do by law, he would've likewise known that the matters were sealed pursuant to NY CPL § 160.50 and therefore could not be published.

---

[1] Anyone can engage in the non-judicial act of submitting an order for publication with the New York State Law Reporting Bureau. https://nycourts.gov/reporter/selection.shtml.

In addition to this and in light of defendant Lomenzo's February 13, 2018 order

containing case numbers for cases sealed pursuant to both NY CPL §§ 160.50 and 160.55,

plaintiff Publius Publicola's identity can easily be ascertained. For example, while NY CPL §

160.55 mandates that "all official records and papers relating to the arrest or prosecution,

including all duplicates and copies thereof, on file with the division of criminal justice services,

police agency, or prosecutor's office shall be sealed and not made available to any person or

public or private agency," unlike NY CPL § 160.50, *court records* are available to the public. As

a result, someone could read defendant Lomenzo's February 13, 2018 order and access court

records with the Penfield Town Court for the cases that are sealed pursuant to NY CPL § 160.55,

which would reveal plaintiff Publius Publicola's full name, rendering NY CPL § 160.50

meaningless.

It shocks the conscience that defendant Lomenzo first refused to release plaintiff Publius

Publicola's court records to him in violation of his constitutional and statutory rights, which

resulted in litigation, an apology letter from defendant Lomenzo, see Exhibit 3, and a monetary

settlement, and then, again, violated plaintiff Publius Publicola's constitutional and statutory

rights when he retaliated against plaintiff Publius Publicola and unlawfully submitted the

February 13, 2018 falsely and corruptly written order with plaintiff Publius Publicola's full name

to defendant Law Reporting Bureau for publication to the world. Said conduct undoubtedly has a

chilling effect on the administration of justice and so clearly cuts against everything our

democracy was founded upon and stands for today. Defendant Lomenzo retaliated against

plaintiff Publius Publicola for exercising his most fundament rights protected by the United

States Constitution, wherein he attempted to silence plaintiff Publius Publicola for being critical of his unlawful conduct.

As a result of defendant Lomenzo, defendant Hooks, and defendant Law Reporting Bureau unlawfully publishing the February 13, 2018 libelous order with plaintiff Publius Publicola's full name and underlying case numbers in retaliation to "gratify private spite [and] promote public scandal," see *Amodeo*, 71 F.3d at 1050, plaintiff Publius Publicola respectfully requests that Sealed Exhibit 2 be sealed.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff Publius Publicola respectfully requests that this Court grant his Motion to Proceed Under a Pseudonym and File Documents Under Seal.

Dated: December 01, 2021                    Respectfully Submitted,

                                                                    By: /s/ Publius Publicola
                                                                         PO Box 13226
                                                                         Jersey City, New Jersey 07303

Memorandum of Law                    Page 17 of 17

# EXHIBIT 1

November 19, 2015

**VIA FACSIMILE ONLY**

Penfield Town Court
Attn: John Lomenzo
1985 Baird Road
Penfield, New York 14526

Re: Abuse, Threats, and Harassment for Seeking Records Pursuant to N.Y. JUD. LAW § 255

Dear Mr. Lomenzo:

I write to you today *in response* to the disturbing and unnecessary escalation of abusive tactics by Elise, Sheila, and Carry, whom have all decided to aggressively and angrily harass, abuse, threaten, and attempt to intimidate me as a result of my desire to exercise my Constitutional rights. Further, their slander against my good name is outrageous and must stop immediately. Your voicemail stated that "your court clerks told you," whereby confirming that they are knowingly making false statements to a third party in an attempt to slander my good name. Court clerks do not enjoy the same immunity as the judiciary does, so I would advise against this, as I will not hesitate to exercise my legal rights to put an end to it. All three individuals should be ashamed of their conduct and under **no** circumstances is such conduct appropriate. Further, this isn't a new phenomenon: Sheila attempted to deny my access to some of the records many months ago, of which I correctly addressed in a facsimile dated August 03, 2015, of which addressed Sheila's "confusion as to my rights to access and obtain public records under the law." I've enclosed this facsimile in the hopes that it provides *you* with adequate education as to exactly what my rights are.

Further, albeit laughable, your angry voicemail is ludicrous. Your approach here is wholly wrong. You should have called me to apology for the inappropriate manner in which I have been treated and for the unnecessary five-month delay. Instead, your response was filled with anger and nothing shy of inappropriate. Let me remind you: *all* telephone calls were recorded by me and to be clear, Elise and Carry both hung up on me twice today (first, after I simply called to speak with Elise to inquiry if she had mailed the documents yesterday; second, after Elise abruptly hung up on me, I called back and Carry answered, refused to transfer me to Elise, threatened me that if I ever called the court again something would happen to me, and then hung up on me (In light of this, I addressed her professionally and spoke nothing but professionally, as I do not let angry outbursts of others get to me)). It is natural to call someone back after the phone is disconnected. I didn't actually think Elise purposely hung up, as there was no reason too. This, which Else and Carry inappropriately and maliciously slandered me over, represents nothing more than a concerned citizen asking questions of wannabe tyrants. I plan to, at a minimum, share such calls with the 7th Judicial District, of whom are already very aware of this matter and if they have not already, will be contacting Elise in the near future. Therefore, you might want to hold off on furthering untruthful, slanderous, and malicious lies. Such games will not succeed here. I suppose I have learned enough from my past experiences to take the necessary precautions to eliminate such a childish attack upon my character. The sad part is that people like you, in light of the technological age, are actually still playing such games.

I have every right to contact any court, including the Penfield Town Court, for a lawful purpose. And, contrary to your assertions directed towards me on your inappropriate voicemail, supposing you can read, what I am requesting is clear. Elise already acknowledged what I am requested and went as far as to

Abuse, Threats, and Harassment for Seeking Records Pursuant to N.Y. JUD. LAW § 255
November 19, 2015
Page 2 of 2

say everything was mailed last Thursday, which was a clear lie. What Ms. Alexander (the transcription analyst) has requested from Elise is clear as well. The issue is that Elise does not have a lawful right to deny my right to such records. And now, your childish attempt to create a situation that does not exist is laughable. Again, I recorded all conversations. In light of this, I'd advise against slandering my good name.

You see, I have done everything correct. I mailed multiple notarized letters as requested. I contacted the transcription analyst as requested. The only parties that are living outside of the laws are you and Elise. I have a legitimate purpose of contacting the Penfield Town Court. You, Elise, and Carry have just made it ten time worse for yourselves shall I need to file suit against Elise to compel the production of my request. No higher court will side with you and if Elise tried to slander me, I would simply provide the telephone conversations in one form or another, whereby only making her look that much worse. Further, even if I was "rude," which I wasn't, under such circumstances, any reasonable person would be upset with the intentional delays perpetrated over five-months. Just play by the rules. There is nothing for you to gain by creating lies to further your denial of my protected rights.

In the end, Elise will either comply with 7th Judicial District or Elise will be the defendant to an action to compel the release of my records. Further, it is likely I might need additional records and I expect that such requests will be fulfilled as required by law too. The records are not yours. The records are not Elise's. The records are not the court's. The records belong to the people and the court is the custodian of such records. The release of such records is undisputedly governed by state statutes and black letter law and pursuant to such law, I have done everything correct.

In closing, Mr. Lomenzo, let me be clear: Don't contact me again. You see, I have no business with you. It is not "your court" and as the statute and subsequent case law outlines, the duty is on the court clerk. I am not intimidated by a man that finds it self-fulfilling to abuse his power and be coercive to ones most fundamental rights. And society will only shame the actions of you and Elise. I was always taught that to judge a man's character, give him power. The outcome here is unfortunate, as you have chosen to abuse your power.

This is America. We are a nation of laws. You especially, nor anyone else, will degrade my belief in this nor block me from enjoying all rights provided to me under the U.S. Constitution and state law. The reason for your noncompliance with the law is beyond me. I suppose you are hiding something.

Therefore, you are hereby being notified to immediately cease and desist from your clear and inappropriate harassment and threats against me. I will only communicate via written letter moving forward to make the evidence that much clearer, disallowing any further childish attempts to slander my good name. I will not address you, nor would I address any Judge, when making a records request. Such action is inconsistent with my responsibility under the law and I will address the clerk of court only, as the statute requires. I am not going anywhere and there is absolutely nothing you can do about me enforcing my Constitutional rights. This whole matter is simply bizarre to say the least. And if you find this to be "rude," so be it. It is the way in which our democracy functions and you surely don't have the authority to change that, nor would society agree with such a dictatorial change. Society, the New York State legislature, the New York State Supreme Court all agree with my position. I think you need to do some reflecting on the manner in which you have gone about handling such a simple matter. I wish Sheila and Elise did their job from the very beginning and I never had to babysit them. This entire situation is completely unacceptable on many levels.

I hope you find God in your life and decide to uphold your oath to the Constitution in future matters, as God will one day judge us all.



# EXHIBIT 2

# Penfield Town Court

| | | |
|---|---|---|
| TOWN JUSTICE | PENFIELD COMMUNITY CENTER | TOWN JUSTICE |
| JOHN P. LOMENZO, JR. | 1985 BAIRD ROAD | JAMES P. MULLEY, JR. |
| | PENFIELD, NEW YORK 14526 | |
| COURT CLERK | HOURS: 8:00 AM-4:00 PM | COURT CLERK |
| ELYSE K. VOIGT | FAX: 585-586-0491 | KERRY E. EGERTON |
| 585-340-8723 | | 585-340-8624 |

November 21, 2015



Dear ███████

Due to the insulting, abusive and contemptuous nature of your letter of November 19, 2015, I will not consider any request from you until I receive your written and unqualified letter of apology directed to my court clerks and myself. I have instructed my court clerks to have no communication with you until I receive such letter.

Had you uttered the same words in your letter in open court before me I would have had the power to and I would have, after demanding an apology and an appropriate warning about the consequences of your refusal to do so, held you in contempt of court and imposed either a fine or incarcerated you.

Sincerely,

Hon. John P. Lomenzo Jr.

# EXHIBIT 3

# *Penfield Town Court*

PENFIELD COMMUNITY CENTER
1985 BAIRD ROAD
PENFIELD, NEW YORK 14526
HOURS: 8:00 AM-4:00 PM
FAX: 585-586-0491

TOWN JUSTICE
JOHN P. LOMENZO, JR.

COURT CLERK
ELYSE K. VOIGT
585-340-8723

TOWN JUSTICE
JAMES P. MULLEY, JR.

COURT CLERK
KERRY E. EGERTON
585-340-8624

February 26, 2016



Dear ████████

On behalf of the Penfield Town Court, please accept my sincere apology for the difficulties you encountered obtaining the documents regarding your cases from 2005 and 2006. It was never the Court's intention to obstruct or in any way impede your access to these documents which we understand is protected under the law.

I am glad that we have now been able to provide you with all available documents from the Court's files and appreciate your patience and cooperation. Should you require information regarding your cases in the future, please be assured that the Court staff will respond both appropriately and in a timely manner.

Sincerely,

John P. Lomenzo, Jr.
Town Justice

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Publius Publicola,<br><br>           Plaintiff,<br><br>v.<br><br>John Lomenzo, Town of Penfield, Joseph Valentino, Douglas Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, Leah Mervine, County of Monroe, William Hooks, Cara Brousseau, New York State Law Reporting Bureau, Shawn Kerby, and Nancy Barry,<br><br>           Defendants. | Case No. *1:21-cv-1303* |

**DECLARATION OF PLAINTIFF PUBLIUS PUBLICOLA IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM AND FILE DOCUMENTS UNDER SEAL**

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1.      I am the plaintiff in the above-captioned action.

2.      As a result of being deprived of rights, privileges, and immunities secured by the United States Constitution, on December 01, 2021, I filed a complaint against Defendants pursuant to 42 U.S.C. § 1983.

3.      At the same time as filing said complaint, I filed this Motion to Proceed Under a Pseudonym and File Documents Under Seal.

3.      I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 01, 2021               /s/ Publius Publicola

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Publius Publicola,<br><br>        Plaintiff,<br><br>    v.<br><br>John Lomenzo, Town of Penfield, Joseph Valentino, Douglas Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, Leah Mervine, County of Monroe, William Hooks, Cara Brousseau, New York State Law Reporting Bureau, Shawn Kerby, and Nancy Barry,<br><br>        Defendants. | Case No. 1:21-cv-1303 |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM AND FILE DOCUMENTS UNDER SEAL**

For good cause shown, Plaintiff's Motion to Proceed Under a Pseudonym and File Documents Under Seal is GRANTED and it is hereby

ORDERED that the plaintiff shall be referred to in all court filings as Publius Publicola, the defendants shall not publicly disclose the plaintiff's actual name, and all documents must be redacted so that the plaintiff's actual name or identity cannot be discerned from the redacted filings; and it is further

ORDERED that the following documents be permanently sealed:

      1. Sealed Exhibit 1
      2. Sealed Exhibit 2

Dated: _____     _____

                                    United States District Judge