

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED

MAR 21 2022

AT _____ O'CLOCK _____
John M. Domurad. Clerk - Utica

Publius Publicola,

     Plaintiff,

v.

John Lomenzo, Town of Penfield, Joseph
Valentino, Douglas Randall, Destini Bowman,
Karen Bailey Turner, Craig Doran, Leah Mervine,
County of Monroe, William Hooks, Cara
Brousseau, New York State Law Reporting
Bureau, Shawn Kerby, and Nancy Barry,

     Defendants.

Case No. 1:21-CV-1303 (DNH/CFH)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (ECF
NO. 32)**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

I.      INTRODUCTION ............................................................................................. 1

II.     STANDARD OF REVIEW ................................................................................ 1

III.    ARGUMENT ..................................................................................................... 2

        A.      Plaintiff Publius Publicola's Complaint Was Timely Filed ......................................... 2

        B.      This Court Has Subject-Matter Jurisdiction ................................................. 3

                1.      42 U.S.C. § 1983 Does Not Require State Remedies to Be
                        Exhausted ................................................................................ 3

                2.      Plaintiff Publius Publicola Does Not Complain of an Injury
                        Caused by a State Court Judgment ..................................................... 6

                3.      The State Court Proceeding Seeking a Remedy Is Ongoing ......................... 7

                4.      The Parties Are Different ................................................................ 8

                5.      Preclusion Principles Allow For This Action to Proceed in This
                        Court ....................................................................................... 8

        C.      Defendants Are Liable in Both Their Official and Personal Capacities ..................... 9

                1.      Official Capacities ....................................................................... 9

                2.      Personal Capacities ..................................................................... 10

                3.      Federal Rule of Civil Procedure 25(d)(1) ............................................ 11

        D.      Defendants Are Engaged in Continuing Violations of the United States
                Constitution and Federal Law ................................................................ 11

        E.      Absolute Immunity Provides No Refuge for Defendants ................................... 11

                1.      Defendants Failed to Satisfy Their Burden of Showing They
                        Are Entitled to Any Immunity ........................................................ 11

                2.      The Nature of the Functions Performed Were Not Judicial ...................... 12

                3.      Defendants Acted in the Absence of All Jurisdiction ............................. 14

                4.      Federal Courts Improvement Act of 1996 ........................................... 15

                5.      No Immunity Overcomes Prospective Injunctive and Declaratory
                        Relief ..................................................................................... 16

6.      No Immunity Bars This Court's Ability to Enjoin State Court
        Proceedings ................................................................................ 16

F.      Defendants' Violations of Plaintiff Publius Publicola's Constitutional
        Rights Are Actionable Under 42 U.S.C. § 1983 ....................................... 16

        1.      Defendants Violated Plaintiff Publius Publicola's Rights
                Guaranteed by the United States Constitution ........................... 17

                a.      Freedom of Speech and Right to Petition Pursuant to the
                        First Amendment to the United States Constitution ................... 17

                        i. Access and Speech ............................................... 17

                        ii. Right to Petition ..................................................... 19

                b.      Due Process Clause of the Fourteenth Amendment to the
                        United States Constitution ........................................... 20

                        i. Procedural Due Process ........................................... 20

                        ii. Liberty Interest .................................................... 21

                c.      Equal Protection Clause of the Fourteenth Amendment to
                        the United States Constitution ...................................... 22

                d.      Conspiracy to Deprive Plaintiff Publius Publicola of
                        Rights, Privileges, and Immunities Secured by the
                        United States Constitution ........................................... 24

        2.      Defendants Were Acting Under Color of State Law .................................. 25

        3.      Supervisory Liability ......................................................... 25

IV.     CONCLUSION ............................................................................... 26

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

**CASES**

1.    **Federal**

A.    **United States Supreme Court**

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516 (2002) ................................................................ 19

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983) ................................................ 19

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ............................................ 21

*Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011) ........................................................ 19

*Bradley v. Fisher*, 80 U.S. 335 (1872) ................................................................ 9, 14

*Burns v. Reed*, 500 U.S. 478 (1991) ................................................................ 11

*Butz* v. *Economou*, 438 U.S. 478 (1978) ................................................................ 11, 12

*Christian Legal Soc'y v. Martinez*, 561 U.S. 661 (2010) ........................................................ 10

*Daniels v. Williams*, 474 U.S. 327 (1986) ................................................................ 17

*District of Columbia v. Carter*, 409 U.S. 418 (1973) ........................................................ 16

*Ex parte Virginia*, 100 U.S. 339 (1880) ................................................................ 12

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ........................................ 6, 7, 8

*Forrester* v. *White*, 484 U.S. 219 (1988) ................................................................ 11, 12, 15

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ................................................................ 20

*Green v. Mansour*, 474 U.S. 64 (1985) ................................................................ 11

*Hafer v. Melo*, 502 U.S. 21 (1991) ................................................................ 10, 11

*Harlow* v. *Fitzgerald*, 457 U.S. 800 (1982) ................................................................ 11

*Hurtado v. California*, 110 U.S. 516 (1884) ................................................................ 20

*Hutto v. Finney*, 437 U.S. 678 (1978) ................................................................ 10

*Kentucky v. Graham*, 473 U.S. 159 (1985) ................................................................ 15

*Lane v. Wilson*, 307 US 268 (1939) ................................................................ 3, 4

*Lindsey v. Normet*, 405 U.S. 56 (1972) ................................................................ 22

*Los Angeles Cty., Ca. v. Humphries*, 562 U.S. 29 (2010) ........................................... 10

*Malley* v. *Briggs*, 475 U.S. 335 (1986) ...................................................................... 11

*Mireles v. Waco*, 502 U.S. 9 (1991) ................................................................. 14, 15, 16

*Mitchum v. Foster*, 407 U.S. 225 (1971) ................................................................. 16

*Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) ........................................... 9

*Monroe v. Pape*, 365 U.S. 167 (1961) ............................................................... 4, 25

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....................... 20

*Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982) ....................... 4, 5

*Paul v. Davis*, 424 U.S. 693 (1976) ..................................................................... 21

*Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987) ...................................................... 16

*Quern v. Jordan*, 440 U.S. 332 (1979) ................................................................ 9, 16

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ................................................................ 11

*Stump v. Sparkman*, 435 U.S. 349 (1978) .............................................................. 15

*Thomas v. Collins*, 323 U.S. 516 (1945) ............................................................... 17

*United States v. Classic*, 313 U.S. 299 (1941) ...................................................... 25

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ........................................ 7, 22

*West v. Atkins*, 487 U.S. 42 (1988) ...................................................................... 17

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ................................................. 21

*Younger v. Harris*, 401 U.S. 37 (1971) ................................................................ 16

### B.      United States Court of Appeals for the Second Circuit

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) ....................................................... 2

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006) ....................................... 2

*Graham v. Henderson*, 89 F.3d 75 (2d Cir. 1996) .................................................... 2

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) .............................. 17

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) .............. 6, 7, 8

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2004) ............................................ 13, 15

*In re New York Times*, 828 F.2d 110 (2d Cir. 1987) ............................................... 17

*Jewell v. Cty. of Nassau*, 917 F.2d 738 (2d Cir. 1990) ............................................. 2

*Morrison v. City of New York*, 591 F. 3d 109 (2d Cir. 2010) .......................................................... 6

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005) ................................................ 2

*Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185 (2d Cir. 2008) ....................................... 2

*Sealey v. Giltner*, 116 F.3d 47 (2d Cir. 1997) ............................................................................. 25

*Sharpe v. Conole*, 386 F.3d 483 (2d Cir. 2004) ........................................................................... 2

*Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980) .................................................................... 2

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) ...................................................................... 21, 22

*Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138 (2d Cir. 2002) ....................................... 2

*Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16 (2d Cir.1984) ................................... 17

### C.     United States Court of Appeals for the Ninth Circuit

*Empress LLC v. City & County of San Francisco*, 419 F.3d 1052 (9th Cir. 2005) ..................... 15

*Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978). ......................................................................... 17

### D.     United States Court of Appeals for the Third Circuit

*Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) ............................................................................ 25

*Ridgewood Board of Education v. N.E.*, 172 F.3d 238 (3d Cir. 1999) ........................................ 24

### E.     United States District Court for the Eastern District of New York

*Bonilla v. City of New York*, Case No. 20-cv-1704 (RJD) (LB) (E.D.N.Y. 2020) ......................... 3

*Collins v. Lippman*, Case No. 04-CV-3215 (E.D.N.Y. 2005) ..................................................... 26

### F.     United States District Court for the Southern District of New York

*Anderson v. City of New York*, 611 F. Supp. 481 (S.D.N.Y. 1985) ............................................. 22

*Citi Connect, LLC v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, No. 20 Civ. 5147 (CM) (S.D.N.Y. Oct. 7, 2020) ................................................................................................................................ 3

### G.     United States District Court for the Western District of New York

*Bowers v. City of Salamanca*, No. 20-CV-1206-LJV (W.D.N.Y. 2021) ........................................ 3

### 2.    State

### A.    New York Court of Appeals

*City of N.Y. v. Welsbach Elec*, 9 NY3d 124 (2007) ..................................................................... 2, 8

*Curts v. Randall*, 110 A.D.3d 1452 (N.Y. App. Div. 2013) ......................................................... 21

*People v. Anonymous*, 34 NY3d 631 (2020) ................................................................. 15

      **B.**     **New York Court of Claims**

*Foy v. State*, 71 Misc. 3d 605 (N.Y. Ct. Cl. 2021) ....................................................... 3

      **C.**     **Appellate Division of the Supreme Court of New York, Second Department**

*Brash v. Richards*, 195 AD3d 582 (2021) .................................................................... 3

**STATUTES**

    **1.**    **Federal**

18 U.S.C. § 241 ............................................................................................................ 25

18 U.S.C. § 242 ............................................................................................................ 25

28 U.S.C. § 1331 .......................................................................................................... 3

42 U.S.C. § 1983 ............................................................................ 3, 10, 15, 16, 17, 25

Federal Courts Improvement Act of 1996 ................................................................. 15, 16

    **2.**    **State**

NY CPL § 160.50 ....................................................... 1, 3, 5, 6, 7, 9, 11, 14, 22, 23, 24

NY CPLR § 5512(a) ..................................................................................................... 8

NY CPLR § 5513(a) ..................................................................................................... 7

NY CPLR § 5601(b) ..................................................................................................... 7, 23

NY CPLR § 5602 .......................................................................................................... 7

NY CPLR § 5703(b) ..................................................................................................... 7, 23

NY JUD § 431 ............................................................................................................... 23

NY PBO § 87(2)(a) ....................................................................................................... 24

NY PBO § 87(2)(b) ....................................................................................................... 24

NY PBO §§ 84-90 ......................................................................................................... 24

NY PBO § 89(1)(a) ....................................................................................................... 24

NY PBO § 89(1)(b) ....................................................................................................... 24

NY UJC § 1702 ............................................................................................................. 7, 23

**RULES**

### 1.    Federal

Federal Rule of Civil Procedure 12(b)(6) .................................................................................................... 1

Federal Rule of Civil Procedure 25(d)(1) .................................................................................................. 11

**OTHER AUTHORITIES**

Executive Order 202.8 ................................................................................................................................. 3

New York Law Reporting Bureau's website page titled "Selection of Opinions
for Publication" ........................................................................................................................................... 23

New York Law Reporting Bureau's website page titled "Privacy Guidelines" .......................................... 23

New York Law Reports Style Manual ......................................................................................................... 23

Plaintiff Publius Publicola respectfully submits this Memorandum of Law in Opposition of Defendants' Motion to Dismiss (ECF No. 32).

## I.    INTRODUCTION

This action is brought against Defendants for declaratory relief and to enjoin and recover monetary damages from Defendants for their deprivation of plaintiff Publius Publicola's rights, privileges, and immunities secured by the United States Constitution and laws of the United States. More specifically, this action is brought in response to defendant Lomenzo's transmission of plaintiff Publius Publicola's court record sealed pursuant to NY CPL § 160.50 via email to defendant Hooks for publication to the world. Unfortunately, plaintiff Publius Publicola's attempt to remedy this egregious deprivation of his rights, privileges, and immunities secured by the United States Constitution and laws thereof through state proceedings has only led to further violations of his most basic rights, privileges, and immunities secured by the United States Constitution and laws thereof.

Additionally, instead of consuming this Court's time with continuously having to restate what his Complaint actually states, Plaintiff Publius Publicola asks that this Court read his Complaint to understand what it states instead of reading the ridiculous narratives written by Defendants in utterly pathetic attempts to persuade this Court of falsehoods that directly contradict the facts. For example, Defendants attempt to convince this Court, *inter alia*, that "Plaintiff also avers that [he] discovered after the decision was issued that [his] records were in fact sealed. *Id.* ¶ 89." Yet, in direct contradiction to this blatantly false statement, the **truth** is that paragraph 89 of Plaintiff Publius Publicola's Complaint states:

> As the facts demonstrate, anytime plaintiff Publius Publicola seeks to exercise any right in the Penfield Town Court, defendant Lomenzo is unable to control his desire to abuse his power and wield the enormous power of the judiciary to corruptly attack him. This said, in light of the continued harm, chilling effect, and lack of desire to further subject himself to further retaliation, instead of seeking to reargue the motions and/or appealing the order, plaintiff Publius Publicola obtained new Certificates of Disposition from the Penfield Town Court for the two cases identified in Elyse Voigt's December 20, 2017 letter as being unable to be sealed indicating that the cases were in fact sealed and thereafter contacted the various agencies himself. *In doing so, plaintiff Publius Publicola discovered that the cases remained unsealed.* After the various agencies confirmed that the cases were sealed, plaintiff Publius Publicola moved forward with his life. (Emphasis added).

Defendants spill considerable ink attempting to mislead this Court down a path of lies and deception, which should be wholly rejected.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court

must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

Moreover, when a plaintiff is appearing *pro se*, the Court "must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). See also *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000); *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002); *Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004). More recently, the United States Court of Appeals for the Second Circuit emphasized:

> On occasions too numerous to count, we have reminded district courts that "when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)). This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings. As the Supreme Court has recently observed, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, ___ U.S. ___ , 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (internal quotation marks omitted). This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. *See McEachin*, 357 F.3d, at 200. Accordingly, the "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008). *Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008).

## III.   ARGUMENT

### A.   Plaintiff Publius Publicola's Complaint Was Timely Filed

In *Jewell v. Cty. of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990), the United States Court of Appeals for the Second Circuit held:

> New York's three year statute of limitations under [NY CPLR] 214(2) governs [42 U.S.C.] § 1983 actions brought in federal district court in New York. *Romer v. Leary*, 425 F.2d 186 (2d Cir.1970). In [42 U.S.C.] § 1983 actions filed in New York, "federal courts [are] obligated not only to apply the analogous New York statute of limitations to ... federal constitutional claims, but also to apply the New York rule for tolling that statute of limitations." *Board of Regents v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980).

Additionally, "the accrual date of a [42 U.S.C. §] 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim accrues once the "plaintiff knows or has reason to know of the injury which is the basis of his action," *Singleton v. New York*, 632 F.2d 185, 191 (2d Cir. 1980).

On March 7, 2020, New York Governor Andrew Cuomo issued Executive Order 202.8,[1] tolling statutes of limitations in New York, which tolled the statute of limitations in this action. See *Bonilla v. City of New York*, Case No. 20-cv-1704 (RJD) (LB) (E.D.N.Y. 2020) (holding Executive Order 202.8 is applicable to 42 U.S.C. § 1983 cases brought in federal court); *Bowers v. City of Salamanca*, No. 20-CV-1206-LJV (W.D.N.Y. 2021) (holding that Executive Order 202.8 is applicable to 42 U.S.C. § 1983 cases brought in federal court); *Citi Connect, LLC v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, No. 20 Civ. 5147 (CM) (S.D.N.Y. 2020) (holding that Executive Order 202.8 tolled the statute of limitations in a claim brought under the False Claims Act, which, like 42 U.S.C. 1983, does not provide a federal statute of limitations); *Brash v. Richards*, 195 AD3d 582 (2021) (holding that Governor Andrew Cuomo had the authority to toll the statute of limitations; *Foy v. State*, 71 Misc. 3d 605 (N.Y. Ct. Cl. 2021) (holding that Governor Andrew Cuomo's executive orders were meant to effect a true tolling of statutes of limitation, not merely a suspension of filing deadlines, and that "the tolls were authorized" by the Executive Law).

Here, plaintiff Publius Publicola discovered that defendant Lomenzo intentionally transmitted plaintiff Publius Publicola's February 13, 2018 court record sealed pursuant to NY CPL § 160.50, inclusive of plaintiff Publius Publicola's full name, via email from his personal email address jlomenzo@outlook.com to defendant Hooks on April 20, 2018 for its publication to the world on May 05, 2018. The three year statute of limitations plus the 228 days from the tolling of said statute of limitations establishes that the statute of limitations expired on December 18, 2021. Plaintiff Publius Publicola filed this action on December 07, 2021.[2] Thus, plaintiff Publius Publicola clearly commenced this action in a timely manner.

### B.    This Court Has Subject-Matter Jurisdiction

This action is properly before this Court pursuant to 28 U.S.C. § 1331.

### 1.    42 U.S.C. § 1983 Does Not Require State Remedies to Be Exhausted

"[R]esort to a federal court may be had without first exhausting the judicial remedies of state courts. *Bacon* v. *Rutland* R. Co., 232 U.S. 134; *Pacific Tel. & Tel. Co. v. Kuykendall*, 265 U.S. 196." *Lane*

---

[1] This Executive Order was subsequently extended through November 3, 2020, extending filing deadlines for a period of 228 days. *See* Executive Order 202.67 (Oct. 4, 2020).

[2] While the action was timely filed regardless of this fact, plaintiff Publius Publicola notes that the Complaint was mailed using USPS Priority Mail Express Shipping on December 02, 2021, which guaranteed delivery on December 03, 2021, but was not actually delivered until December 07, 2021. See Exhibit 1.

*v. Wilson*, 307 US 268, 274-275 (1939). "It is no answer that the State has a law which, if enforced, would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence, the fact that Illinois, by its constitution and laws, outlaws unreasonable searches and seizures is no barrier to the present suit in the federal court." *Monroe v. Pape*, 365 U.S. 167, 183 (1961). "Unless the doctrine that statutes of limitations are not tolled pending exhaustion were overruled, *see Board of Regent v. Tomanio,* 446 U.S. 478 (1980), a judicially imposed exhaustion requirement might result in the effective repeal of [42 U.S.C.] § 1983." *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 516 n. 17 (1982).

To address administrative remedies, the United States Supreme Court held, "[b]ased on the legislative histories of both [42 U.S.C.] § 1983 ..., we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to [42 U.S.C.] § 1983." *Patsy*, 457 U.S., at 516.

> The 1871 Congress intended § 1 to "throw open the doors of the United States courts" to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights, *id.* at 376 (remarks of Rep. Lowe), and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary. For example, Senator Edmunds, who introduced the bill in the Senate, stated in his closing remarks that the bill was similar in principle to an earlier act upheld by this Court in *Prigg v. Pennsylvania,* 16 Pet. 539 (1842):
>
>> "[T]he Supreme Court decided . . . that it was the solemn duty of Congress under the Constitution to secure to the individual, in spite of the State, or with its aid, as the case might be, precisely the rights that the Constitution gave him, and that *there should be no intermediate authority to arrest or oppose the direct performance of this duty by Congress.*" Globe 692 (emphasis added).
>
> Similarly, Representative Elliott viewed the issue as whether "the Government of the United States [has] the right, under the Constitution, to protect a citizen in the exercise of his vested rights as an American citizen by . . . *the assertion of immediate jurisdiction through its courts,* without the appeal or agency of the State in which the citizen is domiciled. " *Id.* at 389 (emphasis added). *See, e.g., id.* at 459 (remarks of Rep. Coburn); *id.* at 807 (remarks of Rep. Garfield); *id.* at 609 (remarks of Sen. Pool); Globe App. 141 (remarks of Rep. Shanks).
>
> A second theme in the debates further suggests that the 1871 Congress would not have wanted to impose an exhaustion requirement. A major factor motivating the expansion of federal jurisdiction through §§ 1 and 2 of the bill was the belief of the 1871 Congress that the state authorities had been unable or unwilling to protect the constitutional rights of individuals or to punish those who violated these rights. *See, e.g.,* Globe 321 (remarks of Rep. Stoughton) ("The State authorities and local courts are unable or unwilling to check the evil or punish the criminals"); *id.* at 374 (remarks of Rep. Lowe) ("the local administrations have been found inadequate or unwilling to apply the proper corrective"); *id.* at 459 (remarks of Rep. Coburn); *id.* at 609 (remarks of Sen. Pool); *id.* at 687 (remarks

of Sen. Shurz); *id.* at 691 (remarks of Sen. Edmunds); Globe App. 185 (remarks of Rep. Platt).

Of primary importance to the exhaustion question was the mistrust that the 1871 Congress held for the factfinding processes of state institutions. *See, e.g.,* Globe 320 (testimony of Hon. Thomas Settle, Justice of the North Carolina Supreme Court, before the House Judiciary Committee) ("The defect lies not so much with the courts as with the juries"); *id.* at 394 (remarks of Rep. Rainey); Globe App. 311 (remarks of Rep. Maynard). This Congress believed that federal courts would be less susceptible to local prejudice and to the existing defects in the factfinding processes of the state courts. *See, e.g.,* Globe 322 (remarks of Rep. Stoughton); *id.* at 459 (remarks of Rep. Coburn). This perceived defect in the States' factfinding processes is particularly relevant to the question of exhaustion of administrative remedies: exhaustion rules are often applied in deference to the superior factfinding ability of the relevant administrative agency. *See, e.g., McKart v. United States,* 395 U.S., at 395 U.S. 192-196. *Patsy,* 457 U.S., at 504-506.

Unfortunately, it turns out that the instincts of the 1871 Congress were accurate and state authorities are indeed unable and unwilling to protect the constitutional rights of individuals or punish those who violated said rights.

Here, the injury that plaintiff Publius Publicola seeks to remedy is defendant Lomenzo engaging in the corrupt non-judicial act of transmitting plaintiff Publius Publicola's February 13, 2018 court record sealed pursuant to NY CPL § 160.50, inclusive of plaintiff Publius Publicola's full name, via email from his personal email address jlomenzo@outlook.com to defendant Hooks on April 20, 2018 for its publication to the world. While plaintiff Publius Publicola could have immediately sought relief in federal court, he first attempted to remedy the matter through administrative and/or judicial state proceedings. Specifically, the following occurred:

1.      First, after discovering said injury on May 05, 2018, plaintiff Publius Publicola sought to remedy said injury directly with defendant Hooks. In response, defendant Hooks sent a letter to plaintiff Publius Publicola on May 10, 2018 (see Exhibit 2) claiming that plaintiff Publius Publicola should remedy the injury with defendant Lomenzo.

2.      Second, plaintiff filed a motion to seal the publication on May 18, 2018 to remedy the injury. On May 29, 2018, defendant Lomenzo unsurprisingly denied said motion (see Exhibit 3).

3.      Third, on June 12, 2018, plaintiff Publius Publicola properly filed a Notice of Appeal concerning defendant Lomenzo's May 18, 2018 order.

4.      Fourth, in light of (1) being subjected to additional injuries caused by further deprivations of his rights, privileges, and immunities secured by the United States Constitution and laws thereof in his attempt to remedy said injury and (2) the time to file an action pursuant to 42 U.S.C. § 1983 in

accordance with the applicable statute of limitations ending soon, plaintiff Publius Publicola rightly filed this action.

### 2.    Plaintiff Publius Publicola Does Not Complain of an Injury Caused by a State Court Judgment

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291-92 (2005), the United States Supreme Court held:

> In both [Rooker and Feldman], the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment.

Ultimately, for the *Rooker-Feldman* analysis to be entertained, the plaintiff must "complain of injuries *produced by* state-court judgments." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005) (emphasis added). See also *Morrison v. City of New York*, 591 F. 3d 109, 112 (2d Cir. 2010) (holding that "the plaintiff must "complain[] of injuries caused by [a] state-court judgment" for the *Rooker-Feldman* analysis to proceed). "Since Feldman, this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction. The few decisions that have mentioned *Rooker* and *Feldman* have done so only in passing or to explain why those cases did not dictate dismissal." *Exxon Mobil Corp.*, 544 U.S., at 287.

> [B]y focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment. *Hoblock*, 422 F.3d, at 88.

Here, plaintiff Publius Publicola's Complaint articulates with certainty that the injury he is complaining of is the publication of plaintiff Publius Publicola's February 13, 2018 court record sealed pursuant to NY CPL § 160.50 and the subsequent injuries caused by further deprivations of his rights, privileges, and immunities secured by the United States Constitution and laws thereof in his attempt to remedy said injury. Said injuries are obviously not the result of any state-court judgment but instead the authoritarian desires of individuals acting under the color of state law.

Not only is plaintiff Publius Publicola not complaining of any injury produced by any state court

judgment, but he is certainly not seeking the review and/or rejection thereof. Again, all facts concerning plaintiff Publius Publicola's interactions with defendant Lomenzo and the Town of Penfield prior to the publication of plaintiff Publius Publicola's February 13, 2018 court record sealed pursuant to NY CPL § 160.50 serve the purpose of demonstrating, *inter alia*, the extensive retaliation against plaintiff Publius Publicola, along with the disturbing pattern of deprivations of plaintiff Publius Publicola's rights, privileges, and immunities secured by the United States Constitution and laws thereof. See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

### 3.   The State Court Proceeding Seeking a Remedy Is Ongoing

When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan* v. *Carland*, 217 U.S. 268, 282 (1910); accord *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *Atlantic Coast Line R. Co.*, 398 U.S., at 295." *Exxon Mobil Corp.*, 544 U.S., at 292.

Instead, for the *Rooker-Feldman* analysis to be entertained, "the federal suit will come after the state suit has unequivocally terminated." *Hoblock*, 422 F.3d, at 89.

Pursuant to NY UJC § 1702, which states that "[a]ppeals in civil causes [originating in a town court] shall be taken to the county court[]," plaintiff Publius Publicola rightly appealed defendant Lomenzo's order dated May 29, 2018 to the Monroe County Court. Pursuant to NY CPLR § 5703(b), "[a]n appeal may be taken to the appellate division as of right from an order of a county court or a special term of the supreme court which determines an appeal from a judgment of a lower court." Additionally, an appeal may be taken to the New York Court of Appeals from the appellate division by permission pursuant to NY CPLR § 5602 or as of right for, *inter alia*, constitutional matters pursuant to NY CPLR § 5601(b).

Pursuant to NY CPLR § 5513(a), "[a]n appeal as of right must be taken within thirty days after service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry." Here, while there has been a lot of disturbing chatter amongst individuals who have no legal right to possess any of plaintiff Publius Publicola's records sealed pursuant to NY CPL § 160.50, it is likely that the purported February 09, 2021 order does not exist and Defendants are instead continuing their conspiracy to further deprive plaintiff Publius Publicola of his most basic and fundamental rights, privileges, and immunities secured and protected by the United States Constitution and laws thereof.

In any event, the state court proceedings are ongoing until plaintiff Publius Publicola is served with "a copy of the judgment or order appealed from and written notice of its entry," NY CPLR § 5513(a),

and plaintiff Publius Publicola exhausts his appeals. In avoidance of any doubts, plaintiff Publius Publicola cannot take his appeal even if he wanted to as NY CPLR § 5512(a) requires an "appealable paper," of which he is not only being denied access to, but it isn't clear what, if anything, the purported February 09, 2021 "order" relates to. In fact, Defendants have brazenly admitted that they don't want to provide the purported February 09, 2021 order to plaintiff Publius Publicola and have continued to demonstrate their utter distain for the United States Constitution, which is simply astonishing, especially in light of the fact that other individuals without any lawful right to possess it claim to be in possession of it.

As demonstrated in plaintiff Publius Publicola's Complaint, Defendants ignorantly believed that they could bury his appeal in an attempt to prevent plaintiff Publius Publicola from appealing it out of Monroe County to an actual appellate court because Defendants know plaintiff Publius Publicola will succeed on the merits. In fact, plaintiff Publius Publicola raised this very issue with Defendants while they were violating his most basic and fundamental rights, privileges, and immunities secured and protected by the United States Constitution and laws thereof as it was abundantly clear what they were attempting to do.

### 4. The Parties Are Different

For *Rooker-Feldman* to be contemplated, "the parties in the state and federal suits must be the same." *Hoblock*, 422 F.3d, at 89. This said, and while *Rooker-Feldman* is inapplicable for the reasons discussed, *supra*, it is worth noting that the parties in the state action, which include plaintiff Publius Publicola and the State of New York, are obviously not the same parties to this action.

### 5. Preclusion Principles Allow For This Action to Proceed in This Court

The Full Faith and Credit Act, 28 U.S. C. § 1738, originally enacted in 1790, ch. 11, 1 Stat. 122, requires the federal court to "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc.* v. *First Alabama Bank,* 474 U.S. 518, 523 (1986); accord *Matsushita Elec. Industrial Co.* v. *Epstein,* 516 U.S. 367, 373 (1996); *Marrese* v. *American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380-381 (1985). Preclusion, of course, is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c) (listing res judicata as an affirmative defense). In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. *Exxon Mobil Corp.*, 544 U.S., at 293.

As held by the New York Court of Appeals in *City of N.Y. v. Welsbach Elec*, 9 NY3d 124, 127-28 (2007):

One linchpin of res judicata is an identity of parties actually litigating successive actions against each other: the doctrine applies only when a claim between the parties has been

previously "brought to a final conclusion" ( Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347; see also Matter of La-Rocco v Goord, 43 AD3d 500, 500 [3d Dept 2007] [res judicata bars a party "from bringing additional actions (against) the same part(y) on the same claims based upon the same harm"]).

For similar reasons, the City's action is not barred by collateral estoppel. This doctrine applies only "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action" (Parker, 93 NY2d, at 349; see also Ryan v New York Tel. Co., 62 NY2d 494, 500).

Here, as discussed, *supra*, the parties are different, whereby res judicata is not applicable. Additionally, collateral estoppel is not applicable. First, the issues in the state court proceeding solely deal with remedying the injury caused by the publication of plaintiff Publius Publicola's February 13, 2018 court record sealed pursuant to NY CPL § 160.50. Second, the state court proceeding was not "necessarily decided." Third, it is obvious that plaintiff Publius Publicola has not had a full and fair opportunity to litigate the issues in the earlier action." *Welsbach Elec*, 9 NY3d, at 128.

## C.  Defendants Are Liable in Both Their Official and Personal Capacities

### 1.  Official Capacities

"[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury. [*Edelman v. Jordan*, 415 U.S. 651, 667-668 (1974)]; *see Milliken v. Bradley,* 433 U.S. 267, 433 U.S. 289 (1977); *Scheuer v. Rhodes,* 416 U.S. 232, 416 U.S. 237 (1974)." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). "A public official sued in his official capacity for carrying out official policy would be a "person" [in a 42 U.S.C. § 1983 action] for purposes of injunctive relief." *Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 712 (1978).

In the landmark decision in *Ex parte Young,* 209 U.S. 123, the Court held that, although prohibited from giving orders directly to a State, federal courts could enjoin state officials in their official capacities. And in *Edelman* v. *Jordan,* 415 U.S. 651, when the Court held that the Amendment grants the States an immunity from retroactive monetary relief, it reaffirmed the principle that state officers are not immune from prospective injunctive relief. Aware that the difference between retroactive and prospective relief "will not in many instances be that between day and night," *id.,* at 667, the Court emphasized in *Edelman* that the distinction did not immunize the States from their obligation to obey costly federal-court orders. The cost of compliance is "ancillary" to the prospective order enforcing federal law. *Id.,* at 668. The line between retroactive and prospective relief cannot be so rigid that it defeats the effective enforcement of prospective relief.

The present case requires application of that principle. In exercising their prospective powers under *Ex parte Young* and *Edelman v. Jordan,* federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced. Many of the court's most effective enforcement weapons

involve financial penalties. A criminal contempt prosecution for "resistance to [the court's] lawful . . . order" may result in a jail term or a fine. 18 U.S.C. § 401 (1976 ed.). Civil contempt proceedings may yield a conditional jail term or fine. *United States* v. *Mine Workers,* 330 U.S. 258, 305. Civil contempt may also be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance. *Id.,* at 304; *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418. If a state agency refuses to adhere to a court order, a financial penalty may be the most effective means of insuring compliance. The principles of federalism that inform Eleventh Amendment doctrine surely do not require federal courts to enforce their decrees only by sending high state officials to jail. The less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief. *Hutto v. Finney,* 437 U.S. 678, 690-691 (1978).

Like an injunction, a declaratory judgment is intended to be a prospective remedy. See, *e.g., Los Angeles Cty., Ca. v. Humphries,* 562 U.S. 29, 31 (2010) (contrasting "monetary damages" with "prospective relief, such as an injunction or a declaratory judgment"); *Christian Legal Soc'y* v. *Martinez,* 561 U.S. 661, 676 n.6 (2010) (lawsuit "seeks only declaratory and injunctive—that is, prospective—relief").

Of the twenty-six requests in the Prayer for Relief section of plaintiff Publius Publicola's Complaint, only four of them are for monetary damages, whereby the vast majority seek prospective relief and are properly pled as such.

### 2. Personal Capacities

"State officials, sued in their individual capacities, are "persons" within the meaning of [42 U.S.C.] § 1983," *Hafer v. Melo,* 502 U.S. 21 (1991), and may be held personally liable for damages under 42 U.S.C. § 1983 based upon actions taken in their official capacities. *Hafer,* 502 U.S., at 30-31.

[S]ince *Ex parte Young,* 209 U.S. 123 (1908), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law. *Ex parte Young* teaches that, when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is, in that case, stripped of his official or representative character, and is subjected *in his person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Id.* at 209 U.S. 159-160. (Emphasis supplied.) *Ex parte Young,* like *Sterling v. Constantin,* 287 U.S. 378 (1932), involved a question of the federal courts' injunctive power, not, as here, a claim for monetary damages. While it is clear that the doctrine of *Ex parte Young* is of no aid to a plaintiff seeking damages from the public treasury, *Edelman v. Jordan, supra; Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573 (1946); *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459 (1945); *Great Northern Life Insurance Co. v. Real,* 322 U.S. 47 (1944), damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office. *Myers v. Anderson,* 238 U.S. 368 (1915). *See generally Monroe v. Pape,* 365 U.S. 167 (1961); *Moor v. County of Alameda,* 411 U.S. 693 (1973). In some situations, a damage remedy can be as effective a redress for the infringement of a constitutional right

as injunctive relief might be in another. *Scheuer v. Rhodes*, 416 U.S. 232, 237-238 (1974).

Plaintiff Publius Publicola's Complaint properly pleads for monetary damages against Defendants in their personal capacities.

### 3.     Federal Rule of Civil Procedure 25(d)(1)

In as much as this is applicable to defendant Hooks and defendant Brousseau, "when officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. See Fed. Rule Civ. Proc. 25(d)(1); Fed. Rule App. Proc. 43(c)(1); this Court's Rule 35.3." *Hafer*, 502 U.S., at 25. While defendant Brousseau has rightly been substituted for defendant Hooks since he has left office, defendant Hooks is likewise being sued in his personal capacity and therefore must remain a defendant.

### D.     Defendants Are Engaged in Continuing Violations of the United States Constitution and Federal Law

Claims for injunctive relief and a declaratory judgment relating to ongoing conduct are not barred by the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 65-66 (1985).

Here, the conduct complained of is ongoing. More specifically, Defendants, *inter alia*, continue to fail to provide plaintiff Publius Publicola with the purported February 09, 2021 order, continue to publish plaintiff Publius Publicola's February 13, 2018 court record sealed pursuant to NY CPL § 160.50, continue to release plaintiff Publius Publicola's February 13, 2018 court record sealed pursuant to NY CPL § 160.50, along with other identifiable information concerning plaintiff Publius Publicola, and continue to unlawfully possess plaintiff Publius Publicola's court records sealed pursuant to NY CPL § 160.50.

### E.     Absolute Immunity Provides No Refuge for Defendants

"We have been 'quite sparing' in our recognition of absolute immunity ... and have refused to extend it any 'further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991). See also *Forrester* v. *White,* 484 U.S. 219, 224 (1988); *Harlow* v. *Fitzgerald,* 457 U.S. 800, 811 (1982).

### 1.     Defendants Failed to Satisfy Their Burden of Showing They Are Entitled to Any Immunity

"We have also emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S., at 487. See also *Forrester*, 484 U.S., at 224; *Harlow*, 457 U.S., at 812; *Malley* v. *Briggs,* 475 U.S. 335, 340 (1986); *Butz* v.

*Economou,* 438 U.S. 478, 506 (1978).

Here, Defendants have failed to satisfy their burden of showing they are entitled to any immunity. Instead, Defendants, again, spill considerable ink attempting to mislead this Court down a path of lies and deception, which should be wholly rejected. Again, plaintiff Publius Publicola asks that this Court read his Complaint to understand what it states instead of reading the ridiculous narratives written by Defendants in unethical attempts to persuade this Court of falsehoods that directly contradict the facts.

### 2. The Nature of the Functions Performed Were Not Judicial

The United States Supreme Court has made clear that "it [is] the *nature of the function* performed, not the *identity of the actor* who perform[s] it, that inform[s] our immunity analysis." *Forrester,* 484 U.S., at 229 (denying absolute immunity to a judge sued for a nonjudicial act) (emphasis added). See also *Ex parte Virginia,* 100 U.S. 339, 348 (1880) (holding "[w]hether the act done by was judicial or not is to be determined by its character, and not by the character of the agent"). "To conclude that, because a judge acts within the scope of his authority, such ... decisions are brought within the court's `jurisdiction,' or converted into `judicial acts,' would lift form above substance." *Forrester*, 484 U.S., at 230.

> This Court has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity. The decided cases, however, suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform. Thus, for example, the informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character. See *Stump* v. *Sparkman,* 435 U.S. 349, 363, n. 12 (1978). Similarly, acting to disbar an attorney as a sanction for contempt of court, by invoking a power "possessed by all courts which have authority to admit attorneys to practice," does not become less judicial by virtue of an allegation of malice or corruption of motive. *Bradley* v. *Fisher,* 13 Wall., at 354. As the *Bradley* Court noted: "Against the consequences of [judges'] erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort." *Ibid.* Administrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts. In *Ex parte Virginia,* 100 U.S. 339 (1880), for example, this Court declined to extend immunity to a county judge who had been charged in a criminal indictment with discriminating on the basis of race in selecting trial jurors for the county's courts. The Court reasoned:
>
> > "Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent. Whether he was a county judge or not is of no importance. The duty of selecting jurors might as well have been committed to a private person as to one holding the office of a judge. . . . That the jurors are selected for a court makes no difference. So are court-criers, tipstaves, sheriffs, &c. Is their election or their appointment a judicial act?" *Id.,* at 348.
>
> Although this case involved a criminal charge against a judge, the reach of the Court's analysis was not in any obvious way confined by that circumstance. *Forrester,* 484 U.S.,

at 227-228.

Solidifying this framework, in *Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2004), the United States Court of Appeals for the Second Circuit held "[w]e have been reluctant to extend the doctrine of judicial immunity to contexts in which judicial decisionmaking is not directly involved."

Here, plaintiff Publius Publicola complains of Defendants' non-judicial acts. Examples include, but are certainly not limited to, the following facts that have been pled in plaintiff Publius Publicola's complaint:

1.  Defendant Valentino, on a recorded and retained telephone call, impersonating a "Sheriff" on October 01, 2020 in an attempt to injure, oppress, threaten, and intimidate plaintiff Publius Publicola from engaging in the free exercise and enjoyment of his rights and privileges secured to him by the United States Constitution and laws thereof.

2.  Defendant Valentino refusing to send a copy of the purported February 09, 2021 order to plaintiff Publius Publicola, including through the use of a *properly* addressed envelope sent via USPS First-Class Mail or through email (defendant Valentino emailed plaintiff Publius Publicola two different court orders via email (see Exhibits 4 and 5) and one of the said court orders explicitly requested that plaintiff Publius Publicola communicate with defendant Valentino via email).

3.  Defendant Bowman, after stating on a recorded and retained telephone call dated September 23, 2020, "[y]ou know, people call all the time about the decision ... and so answering that question is very simple ...  and, you know, so that's not an issue," on October 01, 2020 and in response to plaintiff Publius Publicola simply contacting defendant Bowman to inquire into the status of his appeal and the documents that he had requested, defendant Bowman unlawfully stated to plaintiff Publius Publicola on a recorded and retained telephone call:

    a.  "There is no reason to call me."

    b.  "If you want to know if a decision has been issued, it will be mailed out to you. There is no reason to keep calling and asking if a decision has been rendered."

    c.  "Do not call again. Any decision will be issued in writing."

    d.  "The only way you are going to hear about a decision being made is that it will be sent to you in writing."

At best, the functions can be said to be administrative or executive, but under no circumstance were they adjudicative, which is the sole judicial function that captures the profound *privilege* of absolute

immunity.

### 3.    Defendants Acted in the Absence of All Jurisdiction

"[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of

all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

> A distinction must be here observed between excess of jurisdiction and the clear absence
> of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the
> subject-matter any authority exercised is a usurped authority, and for the exercise of such
> authority, when the want of jurisdiction is known to the judge, no excuse is permissible.
> But where jurisdiction over the subject-matter is invested by law in the judge, or in the
> court which he holds, the manner and extent in which the jurisdiction shall be exercised
> are generally as much questions for his determination as any other questions involved in
> the case, although upon the correctness of his determination in these particulars the
> validity of his judgments may depend. Thus, if a probate court, invested only with
> authority over wills and the settlement of estates of deceased persons, should proceed to
> try parties for public offences, jurisdiction over the subject of offences being entirely
> wanting in the court, and this being necessarily known to its judge, his commission would
> afford no protection to him in the exercise of the usurped authority. *Bradley v. Fisher*, 80
> U.S. 335, 351-352 (1872).

Here, as articulated in plaintiff Publius Publicola's Complaint, the acts complained of against

Defendants were not only non-judicial, but lacked all jurisdiction.

Additionally, court records sealed pursuant to NY CPL § 160.50(d) can only be made available as

follows:

> [S]uch records shall be made available to the person accused or to such person's
> designated agent, and shall be made available to (i) a prosecutor in any proceeding in
> which the accused has moved for an order pursuant to section 170.56 or 210.46 of this
> chapter, or (ii) a law enforcement agency upon ex parte motion in any superior court, or
> in any district court, city court or the criminal court of the city of New York provided that
> such court sealed the record, if such agency demonstrates to the satisfaction of the court
> that justice requires that such records be made available to it, or (iii) any state or local
> officer or agency with responsibility for the issuance of licenses to possess guns, when
> the accused has made application for such a license, or (iv) the New York state
> department of corrections and community supervision when the accused is on parole
> supervision as a result of conditional release or a parole release granted by the New York
> state board of parole, and the arrest which is the subject of the inquiry is one which
> occurred while the accused was under such supervision, or (v) any prospective employer
> of a police officer or peace officer as those terms are defined in subdivisions thirty-three
> and thirty-four of section 1.20 of this chapter, in relation to an application for
> employment as a police officer or peace officer; provided, however, that every person
> who is an applicant for the position of police officer or peace officer shall be furnished
> with a copy of all records obtained under this paragraph and afforded an opportunity to
> make an explanation thereto, or (vi) the probation department responsible for supervision
> of the accused when the arrest which is the subject of the inquiry is one which occurred
> while the accused was under such supervision.

In addition to the foregoing, a court does not have inherent authority to unseal records.

The [New York Court of Appeals] long ago rejected the view that a court's inherent

authority over its proceedings grants power to unseal because that "would subvert the plain intendment of the statutory scheme—to establish, in unequivocal mandatory language, a general proscription" against releasing sealed records and materials, subject only to a few narrow exceptions" (Matter of Joseph M. [New York City Bd. of Educ.], 82 NY2d 128, 134 [1993] [emphasis in original]; see also Matter of Alonzo M., 72 NY2d, at 668 [expressing concern that courts' inherent authority over their own records would be "dubious authority (upon which) to override so clear a legislative policy" set forth in a sealing statute]). In accordance with our settled rules of statutory interpretation, we have eschewed efforts to rewrite the statute to achieve what a court or advocate perceives to be a better outcome, because "if there is to be an exception to the general rule proscribing the release of sealed records . . . it should be created by the [l]egislature, not by the courts" (Matter of Joseph M., 82 NY2d, at 134). *People v. Anonymous*, 34 NY3d 631, 642 (2020).

In light of the aforementioned, Defendants' unlawful conduct of providing the purported February 09, 2021 order to defendant Lomenzo, who has not been a judge with the Town of Penfield since November 04, 2019, further demonstrates that they are engaged in non-judicial acts without all jurisdiction.

### 4.   Federal Courts Improvement Act of 1996

While § 309(c) of the Federal Courts Improvement Act of 1996 amended 42 U.S.C. § 1983 to add "except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable," the United States Supreme Court has repeated held that a judge only acts in his or her "judicial capacity" when he or she performs an adjudicative act. See *Mireles*, 502 U.S., at 11-12 (holding that "a judge is not immune from liability for nonjudicial actions, *i. e.,* actions not taken in the judge's judicial capacity"). See also *Forrester*, 484 U.S., at 227-229; *Stump v. Sparkman*, 435 U.S. 349, 360 (1978). Thus, when a specific act is deemed judicial in nature, injunctive relief is only disallowed "provided declaratory relief remains available." *Huminski*, 396 F.3d, at 77.

Here, the actions complained of against Defendants are non-judicial and thus, § 309(c) of the Federal Courts Improvement Act of 1996 is irrelevant. Additionally, there is no heightened pleading standard for 42 U.S.C. § 1983 claims,[3] whereby plaintiff Publius Publicola was not required to plead the

---

[3] "On the merits, to establish personal liability in a [42 U.S.C.] § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167 (1961)." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[T]he logical conclusion of [*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167 (1993)], [*Crawford-El v. Britton*, 523 U.S. 574, 594-97 (1998)], and [*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-15 (2002)] dictates that a heightened pleading standard should only be applied when the Federal Rules of Civil Procedure so require." *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005).

availability of declaratory relief.

### 5.   No Immunity Overcomes Prospective Injunctive and Declaratory Relief

"[A] judge is not absolutely immune from criminal liability, *Ex parte Virginia,* 100 U.S. 339, 348-349 (1880), from a suit for prospective injunctive relief, *Pulliam* v. *Allen,* 466 U.S. 522, 536-543 (1984), or from a suit for attorney's fees authorized by statute, *Pulliam,* 466 U.S., at 543-544." *Mireles*, 502 U.S., at 15. 42 U.S.C. § 1988(b), *e.g.*, provides for payment of attorney's fees to a prevailing plaintiff in a 42 U.S.C. § 1983 action.

To the extent that plaintiff Publius Publicola's Complaint requests this Court to grant prospective injunctive and declaratory relief and/or attorney's fees, Defendants are under no circumstance immune from such action(s) by this Court. Again, in light of the actions complained of against Defendants being non-judicial, § 309(c) of the Federal Courts Improvement Act of 1996 is irrelevant.

### 6.   No Immunity Bars This Court's Ability to Enjoin State Court Proceedings

The federal anti-injunction statute, 28 U.S.C. § 2283, does not bar a plaintiff from filing a 42 U.S.C § 1983 action that requests a federal court to enjoin state court proceedings. *See Mitchum v. Foster,* 407 U.S. 225, 242-243 (1971). "[T]his Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Mitchum,* 407 U.S., at 242. In *Younger v. Harris,* 401 U.S. 37 (1971), the United States Supreme Court held that federal injunctive intervention in a pending state court prosecution is appropriate where irreparable injury is "both great and immediate," *Younger*, 401 U.S., at 46, where the state law is "flagrantly and patently violative of express constitutional prohibitions," *Younger*, 401 U.S., at 53, or where there is a showing of "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Younger*, 401 U.S., at 54. While *Younger* arose in a criminal context, it has been applied to an ever increasing range of cases, including civil case. See *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987).

To the extent that plaintiff Publius Publicola's Complaint requests this Court to enjoin state court proceedings, Defendants are under no circumstance immune from such action(s) by this Court.

### F.   Defendants' Violations of Plaintiff Publius Publicola's Constitutional Rights Are Actionable Under 42 U.S.C. § 1983

Congress enacted section 1983 pursuant to its power under section 5 of the Fourteenth Amendment to adopt "appropriate legislation" to enforce the Fourteenth Amendment. *Quern,* 440 U.S., at 351. See also *District of Columbia v. Carter*, 409 U.S. 418, 423 (1973). 42 U.S.C. § 1983, derived from

section 1 of the Civil Rights Act of 1871, provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

To state a claim under 42 U.S.C. § 1983:

> A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 451 U.S. 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 474 U.S. 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 436 U.S. 155 (1978). *West v. Atkins*, 487 U.S. 42, 48 (1988).

42 U.S.C. § 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 329-330 (1986).

> A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. *Sims v. Adams* (5th Cir. 1976) 537 F.2d 829. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. *Cf. Beverly v. Morris* (5th Cir. 1972) 470 F.2d 1356. *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978).

### 1.    Defendants Violated Plaintiff Publius Publicola's Rights Guaranteed by the United States Constitution

#### a.    First Amendment to the United States Constitution

##### i.    Access and Speech

The public enjoys a right of access to both judicial proceedings and judicial documents. *In re New York Times,* 828 F.2d 110 (2d Cir. 1987). "[T]he First Amendment does secure to the public and to the press a right of access to civil proceedings." *Westmoreland v. Columbia Broad. Sys., Inc.,* 752 F.2d 16, 23 (2d Cir.1984). This right includes the right to inspect docket sheets. See *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 102 (2d Cir. 2004) ("[w]e hold that the public and press enjoy a qualified First Amendment right of access to docket sheets)."

> In *Thomas v. Collins*, 323 U.S. 516, 530 (1945), the United States Supreme Court held:
> [A]ny attempt to restrict [freedoms secured by the First Amendment] must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present

danger. The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. These rights rest on firmer foundation. Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. It is therefore in our tradition to allow the widest room for discussion, the narrowest range for its restriction, particularly when this right is exercised in conjunction with peaceable assembly. It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, cf. De Jonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 259, 81 L.Ed. 278, and therefore are united in the First Article's assurance. Cf. 1 Annals of Congress 759—760.

This conjunction of liberties is not peculiar to religious activity and institutions alone. The First Amendment gives freedom of mind the same security as freedom of conscience. Cf. Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446; Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438. Great secular causes, with small ones, are guarded. The grievances for redress of which the right of petition was insured, and with it the right of assembly, are not solely religious or political ones. And the rights of free speech and a free press are not confined to any field of human interest.

Here, as the facts in plaintiff Publius Publicola's Complaint establish, Defendants' conduct is violative of the First Amendment to the United States Constitution. Examples include, but are certainly not limited to, the following facts that have been pled in plaintiff Publius Publicola's Complaint:

1.      Defendant Valentino, on a recorded and retained telephone call, impersonating a "Sheriff" on October 01, 2020 in an attempt to injure, oppress, threaten, and intimidate plaintiff Publius Publicola from engaging in the free exercise and enjoyment of his rights and privileges secured to him by the United States Constitution and laws thereof.

2.      Defendant Valentino refusing to send a copy of the purported February 09, 2021 order to plaintiff Publius Publicola, including through the use of a *properly* addressed envelope sent via USPS First-Class Mail or through email (defendant Valentino emailed plaintiff Publius Publicola two different court orders via email (see Exhibits 4 and 5) and one of the said court orders explicitly requested that plaintiff Publius Publicola communicate with defendant Valentino via email).

3.      Defendant Bowman, after stating on a recorded and retained telephone call dated September 23, 2020, "[y]ou know, people call all the time about the decision ... and so answering that question is very simple ... and, you know, so that's not an issue," on October 01, 2020 and in response to plaintiff Publius Publicola simply contacting defendant Bowman to inquire into the status of his appeal and the documents that he had requested, defendant Bowman unlawfully stated to plaintiff Publius

Publicola on a recorded and retained telephone call:

      a.     "There is no reason to call me."

      b.     "If you want to know if a decision has been issued, it will be mailed out to you. There is no reason to keep calling and asking if a decision has been rendered."

      c.     "Do not call again. Any decision will be issued in writing."

      d.     "The only way you are going to hear about a decision being made is that it will be sent to you in writing."

Said conduct on behalf of Defendants constitutes an unjustified attempt to restrict plaintiff Publius Publicola's freedoms secured by the First Amendment to the United States Constitution and establishes a pattern of conduct demonstrating Defendants' attempts to injure, oppress, threaten, and intimidate plaintiff Publius Publicola from engaging in the free exercise and enjoyment of his rights and privileges secured to him by the United States Constitution and the laws thereof.

### ii.    Right to Petition

"We have recognized this right to petition as one of 'the most precious of the liberties safeguarded by the Bill of Rights,' *Mine Workers* v. *Illinois Bar Assn.,* 389 U.S. 217, 222 (1967), and have explained that the right is implied by '[t]he very idea of a government, republican in form,' *United States* v. *Cruikshank,* 92 U.S. 542, 552 (1876)." *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524-525 (2002). "In *California Motor Transport Co.* v. *Trucking Unlimited,* 404 U.S. 508, 510 (1972), we recognized that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983).

Similarly, in *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 381 (2011), the United States Supreme Court held:

> Both speech and petition are integral to the democratic process, although not necessarily in the same way. The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs. Beyond the political sphere, both speech and petition advance personal expression, although the right to petition is generally concerned with expression directed to the government seeking redress of a grievance.

Plaintiff Publius Publicola's repeated petitions have been answered only by repeated injury, of which are far greater than what the initial petitions ever sought to cure. Retaliation against Plaintiff Publius Publicola for utilizing his most sacred rights guaranteed to him by the United States Constitution is blatantly violative of the First Amendment to the United States Constitution.

**b.**     **Due Process Clause of the Fourteenth Amendment to the United States Constitution**

**i.**     **Procedural Due Process**

"Any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law." *Hurtado v. California*, 110 U.S. 516, 537 (1884). "[A]n impartial decisionmaker is essential. *Cf. In re Murchison*, 349 U.S. 133 (1955); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 339 U.S. 45-46 (1950)." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process. *See Carey v. Piphus*, 435 U.S. 247, 435 U.S. 259-262, 435 U.S. 266-267 (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. *See Mathews v. Eldridge*, 424 U.S. 319, 424 U.S. 344 (1976). At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 341 U.S. 172 (1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. The requirement of neutrality has been jealously guarded by this Court. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950), the United States Supreme Court held:

> Against this interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment. This is defined by our holding that "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis* v. *Ordean*, 234 U.S. 385, 394. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest. ... An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken* v. *Meyer*, 311 U.S. 457; *Grannis* v. *Ordean*, 234 U.S. 385; *Priest* v. *Las Vegas*, 232 U.S. 604; *Roller* v. *Holly*, 176 U.S. 398. The notice must be of such nature as reasonably to convey the required information, *Grannis* v. *Ordean, supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller* v. *Holly, supra*, and *cf. Goodrich* v. *Ferris*, 214 U.S. 71. ...
>
> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself

reasonably certain to inform those affected, compare *Hess* v. *Pawloski*, 274 U.S. 352, with *Wuchter* v. *Pizzutti*, 276 U.S. 13, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

Here, as the facts in plaintiff Publius Publicola's Complaint establish, Defendants were not impartial or disinterested. Additionally, defendant Valentino, possessing methods reasonably certain to inform plaintiff Publius Publicola that the purported February 09, 2021 order exists,  refused to send a copy of said purported February 09, 2021 order to plaintiff Publius Publicola through said methods, which included through the use of a *properly* addressed envelope sent via USPS First-Class Mail or through email (defendant Valentino emailed plaintiff Publius Publicola two different court orders via email (see Exhibits 4 and 5) and one of the said court orders explicitly requested that plaintiff Publius Publicola communicate with defendant Valentino via email).

Additionally, this isn't the first time that defendant Randall has violated the due process rights of a litigant. In *Curts v. Randall*, 110 A.D.3d 1452 (N.Y. App. Div. 2013), the Appellate Division of the Supreme Court of New York, Fourth Department held:

> We agree with petitioner that the determination is arbitrary and capricious, and constitutes an abuse of discretion inasmuch as the record from the hearing is devoid of any evidence upon which respondent could have based his determination (*see Matter of Papaioannou v. Kelly,* 14 A.D.3d 459, 460, 788 N.Y.S.2d 378; *see generally Matter of Jennings v. New York State Off. of Mental Health,* 90 N.Y.2d 227, 240, 660 N.Y.S.2d 352, 682 N.E.2d 953). We further agree with petitioner that his due process rights were violated inasmuch as the record from the hearing does not demonstrate that he was afforded the opportunity to review the alleged documentation upon which respondent based his determination (*see LaGrange v. Bruhn,* 276 A.D.2d 974, 975, 714 N.Y.S.2d 392). We therefore annul the determination.

### ii.      Liberty Interest

"The Due Process Clause also forbids arbitrary deprivations of liberty." *Paul v. Davis*, 424 U.S. 693, 735 (1976). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972). See also *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

In *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994), the United States Court of Appeals for the Second Circuit held:

> The question of whether one's good name and standing, and the interest in protecting that reputation, constitutes a protectible liberty interest has been considered in a string of Supreme Court and Second Circuit cases. The Supreme Court held in 1971 that a protectible liberty interest may be implicated "[w]here a person's good name, reputation,

honor, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). A year later, the Court held that a government employee's liberty interest would be implicated if he were dismissed based on charges that imposed "on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

*Constantineau* and *Roth* were followed a few years later by the Court's decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in which the Court held that damage to one's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161. Rather, the Court held, loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest. *Id.* We have previously interpreted this holding to mean that "stigma plus" is required to establish a constitutional deprivation. *See Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.), *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989).

The Court went on to conclude "*Paul v. Davis* 'strongly suggests' that defamation is not by itself a deprivation of a liberty interest unless coupled with the termination of government employment 'or deprivation of some other legal right or status.' [*Neu,* 869 F.2d] at 667." *Valmonte,* 18 F.3d, at 1000. See also *Anderson v. City of New York,* 611 F. Supp. 481 (S.D.N.Y. 1985).

Here, plaintiff Publius Publicola's "good name, reputation, honor, [and] integrity is at stake because of what the government is doing to him," and no "notice and [] opportunity to be heard" has been provided to him. *Roth,* 408 U.S., at 573. Instead, defendant Hooks has engaged in a repeated pattern of misconduct with deliberate indifference to damage plaintiff Publius Publicola's reputation. As a result of NY CPL § 160.50 conferring the "other legal right or status," see *Valmonte,* 18 F.3d, at 1000, plaintiff Publius Publicola has satisfied the "stigma plus" analysis, establishing a constitutional deprivation.

### c.    Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

In *Lindsey v. Normet,* 405 U.S. 56, 77 (1972), the United States Supreme Court held:

When an appeal is afforded ... it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause. *Griffin v. Illinois, supra; Smith v. Bennett,* 365 U.S. 708 (1961); *Lane v. Brown,* 372 U.S. 477 (1963); *Long v. District Court of Iowa,* 385 U.S. 192 (1966); *Gardner v. California,* 393 U.S. 367 (1969). *Cf. Coppedge v. United States,* 369 U.S. 438 (1962); *Ellis v. United States,* 356 U.S. 674 (1958).

In *Village of Willowbrook,* 528 U.S., at 564, the United States Supreme Court held:

Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See *Sioux City Bridge Co.* v. *Dakota County,* 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co.* v. *Commission of Webster Cty.,* 488 U.S. 336 (1989). In so doing, we have explained

that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co., supra,* at 445 (quoting *Sunday Lake Iron Co.* v. *Township of Wakefield,* 247 U.S. 350, 352 (1918)).

Here, not only was an appeal of defendant Lomenzo's May 29, 2018 order appealable *as of right* to the Monroe County Court pursuant to NY UJC § 1702, but it is likewise appealable *as of right* to the appellate division pursuant to NY CPLR § 5703(b) and the New York Court of Appeals pursuant to NY CPLR § 5601(b). As the facts in plaintiff Publius Publicola's Complaint clearly establish, plaintiff Publius Publicola's rights to appeal defendant Lomenzo's May 29, 2018 order have been capriciously and arbitrarily denied.

In addition, the facts in plaintiff Publius Publicola's Complaint articulate with precision that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Examples include, but are certainly not limited to, the following facts that have been pled in plaintiff Publius Publicola's Complaint:

1.      Defendant Hooks' unlawful publication of plaintiff Publius Publicola's February 13, 2018 court record sealed pursuant to NY CPL § 160.50, of which was violative of NY CPL § 160.50, NY JUD § 431, the New York Law Reports Style Manual, defendant Law Reporting Bureau's website page titled "Selection of Opinions for Publication" (see Exhibit 6), and defendant Law Reporting Bureau's website page titled "Privacy Guidelines" (see Exhibit 7).

2.      Defendant Valentino, on a recorded and retained telephone call, impersonating a "Sheriff" on October 01, 2020 in an attempt to injure, oppress, threaten, and intimidate plaintiff Publius Publicola from engaging in the free exercise and enjoyment of his rights and privileges secured to him by the United States Constitution and laws thereof.

3.      Defendant Valentino refusing to send a copy of the purported February 09, 2021 order to plaintiff Publius Publicola, including through the use of a *properly* addressed envelope sent via USPS First-Class Mail or through email (defendant Valentino emailed plaintiff Publius Publicola two different court orders via email (see Exhibits 4 and 5) and one of the said court orders explicitly requested that plaintiff Publius Publicola communicate with defendant Valentino via email).

4.      Defendant Bowman, after stating on a recorded and retained telephone call dated September 23, 2020, "[y]ou know, people call all the time about the decision ... and so answering that question is very simple ... and, you know, so that's not an issue," on October 01, 2020 and in response to

plaintiff Publius Publicola simply contacting defendant Bowman to inquire into the status of his appeal and the documents that he had requested, defendant Bowman unlawfully stated to plaintiff Publius Publicola on a recorded and retained telephone call:

   a. "There is no reason to call me."

   b. "If you want to know if a decision has been issued, it will be mailed out to you. There is no reason to keep calling and asking if a decision has been rendered."

   c. "Do not call again. Any decision will be issued in writing."

   d. "The only way you are going to hear about a decision being made is that it will be sent to you in writing."

  5. In violation of NY PBO §§ 87(2)(a) and (b) and the Committee on Open Government advisory guidelines and opinions and rules and regulations[4] (see Exhibit 8) and in response to plaintiff Publius Publicola's October 16, 2020 anonymous Freedom of Information Law request pursuant to NY PBO §§ 84-90 directed towards defendant Brousseau, defendant Brousseau, defendant Kerby, and defendant Barry released copies of plaintiff Publius Publicola's February 13, 2018 court records sealed pursuant to NY CPL § 160.50 containing plaintiff Publius Publicola's full name, along with other records containing plaintiff Publius Publicola's full name, email address, and address.

> **d. Conspiracy to Deprive Plaintiff Publius Publicola of Rights, Privileges, and Immunities Secured by the United States Constitution**

  "In order to prevail on a conspiracy claim under [42 U.S.C.] § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right. See *Dennis v. Sparks*, 449 U.S. 24, 29 (1980); *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). Unlike § 1985(3), a § 1983 conspiracy claim does not require that the conspiracy be motivated by invidious discrimination." *Ridgewood Board of Education v. N.E.*, 172 F.3d 238, 254 (3d Cir. 1999).

  Here, as established by the facts of plaintiff Publius Publicola's Complaint, Defendants collaborated to deprive him of his constitutionally protected rights. This is not only demonstrated through the egregious email communications between defendant Hooks and defendant Lomenzo, but by the very fact that defendant Lomenzo, who has not been a judge with the Town of Penfield since November 04,

---

[4] Pursuant to NY PBO §§ 89(1)(a) and (b), "[t]he committee on open government ... shall (i) furnish to any agency advisory guidelines, opinions or other appropriate information regarding this article[,] (ii) furnish to any person any person advisory opinions or other appropriate information regarding this article[, and] (iii) promulgate rules and regulations."

2019, is in possession of plaintiff Publius Publicola's purported court record dated February 09, 2021 and **threatened to publish it**. Thus, instead of it being provided to plaintiff Publius Publicola, either defendant Randall or defendant Valentino, the only two people who could have legally came in contact with said purported order, provided it to defendant Lomenzo, whereby it is obvious that Defendants are collaborating with each other in furtherance of their ongoing conspiracy to unlawfully access plaintiff Publius Publicola's court records and deprive plaintiff Publius Publicola of his constitutionally protected rights. This said, Defendants' criminal conduct is not only violative of 42 U.S.C. § 1983, but should also be prosecuted pursuant to 18 U.S.C. §§ 241 and 242.

While there are sufficient facts pled in plaintiff Publius Publicola's Complaint to establish a conspiracy between Defendants, it should be noted that federal courts have "long recognized the importance of discovery in the successful prosecution of civil rights complaints. See *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir. 1988) ("[I]n civil rights cases `much of the evidence can be developed only through discovery' of materials held by defendant officials. (quoting *Frazier v. Southeastern Pa. Transp. Auth.*,785 F.2d 65, 68 (3d Cir. 1986))." *Alston v. Parker*, 363 F.3d 229, 232 (3d Cir. 2004).

### 2.   Defendants Were Acting Under Color of State Law

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law. *Ex parte Virginia*, 100 U.S. 339, 100 U.S. 346; *Home Telephone & Telegraph Co. v. Los Angeles*, 227 U.S. 278, 227 U.S. 287, *et seq.; Hague v. CIO*, 307 U.S. 496, 307 U.S. 507, 307 U.S. 519; *cf.* 101 F.2d 774, 790." *United States v. Classic*, 313 U.S. 299, 326 (1941). In *Monroe*, 365 U.S., at 187, the United States Supreme Court adopted this standard for purposes of 42 U.S.C. § 1983 actions.

Here, the facts in plaintiff Publius Publicola's Complaint establish that all Defendants were clothed with the authority of state law when they engaged in the various acts that deprived plaintiff Publius Publicola of his rights, privileges, and immunities secured by the United States Constitution and laws thereof.

### 3.   Supervisory Liability

A supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

In *Collins v. Lippman*, Case No. 04-CV-3215, 9 (E.D.N.Y. 2005), which involved a plaintiff suing a variety of defendants, including judges, an administrative judge, and a clerk after attempting to access court records that were unlawfully sealed, the United States District Court for the Eastern District of New York held:

> Here, Collins specifically alleges that he wrote to Lippman to complain about Imperatrice's allegedly unconstitutional actions and to request that Lippman direct Imperatrice to disclose the allegedly sealed documents. He further alleges that Lippman failed to respond to this request. These allegations fall within the second category of "personal involvement" described in Sealey.

Here, plaintiff Publius Publicola sent emails to defendant Doran, the administrative judge with the Monroe County Court, on January 13, 2021, January 20, 2021, January 27, 2021, February 25, 2021, February 26, 2021, and March 30, 2021 describing the very deprivations of his rights, privileges, and immunities secured by the United States Constitution and laws thereof. Defendant Doran failed to respond and the very deprivations complained of were not remedied. Thus, it is plausible from the facts that defendant Doran violated all four possible theories of liability, *supra*.

## IV.    CONCLUSION

Only those with lust for despotism find notions of freedom and equality to be controversial. Defendants must be held accountable for their blatant tyrannical attempts to obliterate plaintiff Publius Publicola's rights, privileges, and immunities secured by the United States Constitution and laws thereof.

For the foregoing reasons, plaintiff Publius Publicola respectfully requests that this Court deny Defendants' Motion to Dismiss (ECF No. 32). If this Court finds any deficiencies in plaintiff Publius Publicola's Complaint, plaintiff Publius Publicola respectfully requests leave to amend his Complaint to cure said deficiencies.

Dated:  March 17, 2022                                 Respectfully Submitted,

                                                        By: /s/ Publius Publicola
                                                            PO Box 13226
                                                            Jersey City, New Jersey 07303

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Publius Publicola,<br><br>        Plaintiff,<br><br>   v.<br><br>John Lomenzo, Town of Penfield, Joseph Valentino, Douglas Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, Leah Mervine, County of Monroe, William Hooks, Cara Brousseau, New York State Law Reporting Bureau, Shawn Kerby, and Nancy Barry,<br><br>        Defendants. | Case No. 1:21-CV-1303 (DNH/CFH) |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of March, 2022, I mailed the foregoing using USPS First-Class Mail, postage prepaid, to the following:

Brittany Haner
The Capitol
Albany, New York 12224
*Attorney for Defendants Valentino, Randall, Bowman, Turner, Doran, Hooks, Brousseau, New York State Law Reporting Bureau, Kerby, and Barry*

Andrew Schwab
109 S. Warren Street, Suite 306
Syracuse, New York 13202
*Attorney for Defendants Town of Penfield and Lomenzo*

Dated:  March 17, 2022

By: /s/ Publius Publicola
     PO Box 13226
     Jersey City, New Jersey 07303

# EXHIBIT 1

# USPS Tracking®

FAQs >

**Track Another Package +**

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

(https://reg.usps.com/xsell?
app=U: psTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/st

**Tracking Number:** 9481703699300041101875

Remove ✕

**Scheduled Delivery by**

# FRIDAY

**3** DECEMBER
2021 ⓘ

by
**6:00pm** ⓘ

**USPS Tracking Plus® Available** ⌄

## ⊘ Delivered, Individual Picked Up at Postal Facility

December 7, 2021 at 10:44 am
SYRACUSE, NY 13218

**Get Updates** ⌄

---

**Text & Email Updates**                                                    ⌄

---

**Proof of Delivery**                                                       ⌄

---

**Tracking History**                                                        ⌃

**December 7, 2021, 10:44 am**
Delivered, Individual Picked Up at Postal Facility
SYRACUSE, NY 13218
Your item was picked up at postal facility at 10:44 am on December 7, 2021 in SYRACUSE, NY 13218.
The item was signed for by Z CORTESE.

December 7, 2021, 10:05 am
Available for Pickup
SYRACUSE, NY 13261

**December 7, 2021, 10:03 am**
Arrived at Post Office
SYRACUSE, NY 13218

**December 7, 2021, 8:48 am**
Departed USPS Regional Facility
SYRACUSE NY DISTRIBUTION CENTER

**December 7, 2021, 8:21 am**
Arrived at USPS Regional Destination Facility
SYRACUSE NY DISTRIBUTION CENTER

**December 2, 2021, 7:13 pm**
Arrived at USPS Regional Facility
NEWARK NJ DISTRIBUTION CENTER

**December 2, 2021, 6:34 pm**
Departed Post Office
JERSEY CITY, NJ 07302

**December 2, 2021, 6:31 pm**
Arrived at USPS Regional Facility
KEARNY NJ DISTRIBUTION CENTER

**December 2, 2021, 3:37 pm**
USPS in possession of item
JERSEY CITY, NJ 07302

**December 2, 2021**
Pre-Shipment Info Sent to USPS, USPS Awaiting Item

**USPS Tracking Plus®**   ⌄

**Product Information**   ⌃

Feedback

| **Postal Product:** | **Features:** | Signed for By: Z CORTESE |
|---|---|---|
| Priority Mail Express 1-Day® | Money Back Guarantee<br>PO to Addressee<br>Signature Service<br>Up to $100 insurance included. Restrictions Apply ⓘ | // SYRACUSE, NY<br>13218 // 10:44 am |

**See Less ∧**

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

# EXHIBIT 2



NEW YORK STATE
LAW REPORTING BUREAU
17 Lodge Street
Albany, New York 12207
518.453.6900

William J. Hooks
State Reporter

reporter@nycourts.gov

May 10, 2018

▮▮▮▮▮▮▮▮

Re: ▮▮▮▮▮▮▮▮▮▮▮▮

Dear ▮▮▮▮

I have received your letter, dated May 5, 2018, requesting that the reporting and future publication of the above-referenced opinion be revoked.

The Law Reporting Bureau publishes the decisions that are provided to it pursuant to statute by the courts. Decisions are not removed from publication without a direction to do so from the authoring court. If you feel that the above-captioned opinion should be removed from publication, you should make your request to the judge who rendered the opinion — in this case, Town Justice John P. Lomenzo, Jr.  This office will comply with any direction that it receives from the court.

Sincerely,

William J. Hooks

William J. Hooks
State Reporter

# EXHIBIT 3

STATE OF NEW YORK          COUNTY OF MONROE
JUSTICE COURT              TOWN OF PENFIELD

PEOPLE OF THE STATE OF NEW YORK

        -vs-                                    **DECISION and ORDER**

█████████            Defendant.

On May 21, 2018 the defendant filed a motion with this Court in which he requests that an order be issued (a) requiring the sealing of court records and (b) directing the New York State Court Reporter not to publish the decision of this Court, dated February 13, 2018.

Upon review of the motion papers, including all exhibits filed therewith, and upon due deliberation thereon, the motion is denied in all respects, as this Court finds the defendant's arguments to be totally without merit. Furthermore, if the defendant was dissatisfied with the decision of this Court, dated February 13, 2018, his remedy was to appeal that decision. No such appeal was filed. Lastly, this Court suggested and the State Reporter agreed to publish said decision under an anonymous name in place of the defendant's actual name.

This constitutes the decision and order of the Court.

Dated: May 29, 2018

John P. Lomenzo Jr.
Penfield Town Justice

# EXHIBIT 4



*Douglas A. Randall*
*County Court Judge*

*County Court Chambers*
*545 Hall of Justice*
*Rochester New York 14614-2184*

*Phone: (585) 371-3669*
*Fax:   (585) 530-3242*

November 5, 2020



Leah Mervine, Esq.
Assistant District Attorney
Ebenezer Watts Building, Suite 832
Rochester, NY 14614

RE: ███████████████████████████████

Dear ██████ And Ms. Mervine:

    This appeal matter has been transferred to the Hon. Douglas A. Randall in Monroe County Court.   Oral argument of the above-captioned appeal is scheduled for Friday, November 20, 2020 at 10:00 a.m. at the Hall of Justice.

    Thank you in advance for your attention to this matter.

Very truly yours,

Joseph J. Valentino, Esq.
Law Clerk to Hon. Douglas A. Randall

# EXHIBIT 5



*County Court Chambers*
*545 Hall of Justice*
*Rochester, New York 14614-2184*
*Phone: (585) 371-3649*
*Fax: (585) 530-3242*

*Douglas A. Randall*
*County Court Judge*

November 20, 2020



Derek Harnsberger, Esq.
Assistant District Attorney
Ebenezer Watts Building, Suite 832
Rochester, NY 14614

RE: [redacted]

Dear [redacted]

    This appeal matter has been transferred to the Hon. Douglas A. Randall in Monroe County Court.  The court is willing to schedule oral argument of the above-captioned appeal if oral argument is requested by the parties.  If either party is requesting oral argument, that party should send a letter or email to the court by December 7, 2020.  You can send the letter to the address listed on the letterhead above or you can send an email to jjvalent@nycourts.gov.

    If oral argument is requested, such proceeding must be held virtually as the court in not permitted to schedule in-person proceedings at this time due to Covid-19 restrictions.  The parties must send the court an email address so the court can send the virtual link on Microsoft Teams when the oral argument date is scheduled.

    If the court does not receive a request for oral argument by December 7, 2020 the court will assume that the parties are standing on the record and their appellate briefs.  The court will then issue a written decision.

    Thank you in advance for your attention to this matter.

Very truly yours,

Joseph J. Valentino, Esq.
Law Clerk to Hon. Douglas A. Randall

# EXHIBIT 6



# New York Official Reports
### *Selection of Opinions for Publication*

The State Reporter is authorized by statute to selectively publish Appellate Term and trial court opinions in the Miscellaneous Reports. Judiciary Law § 431 provides that the Law Reporting Bureau may report any lower court opinion which the "state reporter, with the approval of the court of appeals, considers worthy of being reported because of its usefulness as a precedent or its importance as a matter of public interest."

Judges and others transmit as many as 7,500 opinions each year to the Law Reporting Bureau for possible publication in the Miscellaneous Reports. Attorneys and other third parties often submit trial court opinions for publication, and we will solicit from the authoring Judge interesting opinions which we read in the New York Law Journal; on court websites, such as the Court of Claims; and other legal publications. However, most of the lower court opinions which we receive each year are submitted in the first instance by the Judges themselves.

We publish approximately 500 Appellate Term and trial court opinions in full text in the Miscellaneous Reports each year. Generally, this constitutes less than seven percent of the opinions submitted for publication.

However, under a program approved by the Court of Appeals in 2000, most of the remainder are selected exclusively for publication in the New York Slip Opinion Service and the New York Official Reports content category on Thomson Reuters Westlaw (path: Home > Cases > New York State & Federal Cases > New York State Cases > New York Official Reports). These opinions are classified by subject to the Official Reports Digest and are assigned a unique slip opinion citation and pagination to permit pinpoint citations. An abstract of each opinion—providing the case name, authoring judge or justice name, jurisdiction, decision date, and slip opinion citation—is published in the Advance Sheets.

We take the selection process seriously, recognizing the unique importance of the Miscellaneous Reports to our jurisprudence. The Miscellaneous Reports are at the cutting edge of the judicial decision-making process where the law concerning new issues entering the court system for the first time is developed, exceptions to the broad rules established by the appellate courts are devised, interstices in the common law are filled and practice issues unique to the trial courts are decided.

The Rules Concerning Publication of Opinions in the Miscellaneous Reports, which are published at 22 NYCRR part 7300, elaborate on the statutory criteria—precedential usefulness and public importance—for selection of opinions for the Miscellaneous Reports.

These are:

*Precedential significance*. We select all true "landmark" opinions that make a significant contribution to the law, and any which hold a statute unconstitutional or invalidate administrative regulations. We measure precedential significance by the holdings and matters necessarily decided—discussions constituting dicta do not meet our criteria. Some weight is given to the level of court in applying this criterion.

*Novelty*. This includes opinions that deal with issues of first impression that are likely to be recurrent; that discuss developing areas of the law on which little has been written; that create exceptions to broad rules established at the appellate level; or that extend or clarify appellate case law.

*Public importance*. We seek to select opinions of broad interest to the bar or to the public at large. These may include cases deciding issues specific to the attorney-client relationship, as well as general interest cases, such as decisions involving school funding, elections and powers of state and local governments.

*Practical significance*. This includes opinions that address issues unique to trial court practice—discovery, evidence, procedure, etc. As a further example, we might select a high percentage of cases on an emerging issue in order to build a more significant body of published case law for the guidance of trial courts and to assist potential appellate review on that important issue.

*Subject matter diversity*. An attempt is made to publish opinions on a broad spectrum of legal issues.

*Geographical diversity*. We try to publish opinions by courts from all regions of the state.

*Author diversity*. An attempt is made to publish opinions by as many different Judges as possible. In a given year, some Judges may have multiple opinions selected. However, in the interest of publishing worthy opinions from as many Judges as possible, circumstances in a given year may

require that we limit the number of otherwise worthy opinions selected from frequently-published Judges.

*Literary quality*. Preference is given to short (no more than 10 typewritten pages), concisely written opinions that focus on the issue or issues worthy of publication without recitation of nonessential facts or collateral issues or lengthy dissertations on well-known legal principles.

---

The Format Guides for submission of opinions and the Privacy Guidelines provide additional information. Please note that it is very helpful if the submission email briefly explains why the authoring Judge believes the opinion to be worthy of publication. This helps us to zero in on the critical issues and to avoid overlooking significant points.

We may invoke our partial publication rule (22 NYCRR 7300.5) to request Judges to delete portions of otherwise worthy opinions that do not meet our size criteria. This significantly tightens up the structure of the opinion, improves readability, and saves researchers considerable time by limiting the published version of the opinion to its precedentially significant portions. The partial publication rule allows us to publish greater numbers of lower court opinions within our budgetary ceiling of four Miscellaneous Bound Volumes per year. When an opinion is edited for publication pursuant to this rule, it is the Judge—not the State Reporter—who determines which portions of the opinion are omitted for purposes of publication and it is the Judge who approves the opinion for publication in its edited form. Generally, we are able to work with Trial Judges to suggest ways in which worthy, but excessively lengthy, opinions can be condensed for publication.

Despite our best efforts, we are not infallible in applying our selection criteria. Therefore, Judges may request reconsideration of any opinion not selected for publication. Additionally, the State Reporter's Rules Concerning Publication of Opinions in the Miscellaneous Reports permit Trial Judges to appeal the rejection of an opinion to a Committee on Opinions, consisting of four Appellate Division Justices.

## Decisions

All Decisions & Motions

**Advanced Search**

### Court of Appeals
Decisions | Motions

### Appellate Division
1st Dept | 2d Dept | 3d Dept | 4th Dept

## Resources

Style Manual (HTML | PDF)
Citation Services
Legal Research Portal
Court of Appeals New Filings
Official Reports Service
Links of Interest
Electronic Resources User Guide

## About

Who We Are
Operations | Editorial Procedures
Statutes & Regulations | Case Law
200th Anniversary
State Reporter
Opinion Selection Criteria
Privacy Guidelines
Opinion Submission Format

## Connect

Contact Us
RSS Feed
Twitter

**Appellate Term**

1st Dept | 2d Dept

**Trial Courts**

Other Courts | Commercial Division

Judges of Courts of Record

Publications

FAQs | Site Map

Annual Reports

Links to other sites, or links to this site by any other sites, do not imply any endorsement of, or relationship with, such other sites.

New York State Law Reporting Bureau
17 Lodge Street, Albany, NY 12207
phone: (518) 453-6900
email us

# EXHIBIT 7



# New York Official Reports
## *Privacy Guidelines*

The Law Reporting Bureau has developed these privacy guidelines to ensure that privacy interests of individuals are protected when New York State court decisions are published on the Internet. These guidelines are based on policy guidance from the Unified Court System and the Office of the Chief Administrative Judge.

The LRB publishes in print and online all decisions of the Court of Appeals and the Appellate Division, as well as selected opinions of the trial courts. After decisions are submitted to the LRB and processed, they are posted to the LRB's website---usually within several hours---and transmitted to the LRB's commercial publisher (currently Thomson Reuters Westlaw). Third-party websites often link to decisions on the LRB's website or republish them.

Given the immediacy of public access to opinions on the LRB's website, decisions should be reviewed for privacy concerns before they are submitted to the LRB for publication. This review should focus on mandatory redactions, such as those that are required by statute and rules, as well as discretionary redactions, which focus on concerns which may only arise after publication on the Internet.

Before submitting a decision for publication, judges and court staff are asked to consider the following:

1. Certain personal identifying information must be redacted in accordance with statutes and rules. Required redactions are discussed in New York Law Reports Style Manual § 12.4 (2017), entitled Personal Identifying Information (reproduced below). Note that section 12.4 includes only a subset of privacy statutes, and other statutes and rules should also be reviewed.

2. Other redactions may be made in the discretion of the judge, pursuant to Unified Court

System policy. Where confidential, intimate or sensitive details are unnecessary to the holding of the case, consider removing them from the published decision. Where such information is necessary to the holding, consider redacting personal identifying information like names of witnesses, physical addresses, etc.

3. Special consideration should be given to whether a party's name should be redacted for publication purposes. Note that this standard may differ from what is required for an anonymous caption or sealing purposes (*see e.g.* 22 NYCRR 216.1).

The LRB will contact the authoring judge if any privacy concerns are identified during processing or editing.

Questions about privacy considerations in the publication of court decisions on the Internet can be sent to Reporter@nycourts.gov.

# New York Law Reports Style Manual § 12.4 (2017) (Personal Identifying Information)

Privacy interests of individuals should be protected by omitting irrelevant references to personal identifying information and redacting necessary references.

### 12.4 (a) Personal Names

**(1) Children.** The name of any person younger than 18 years old should not appear in any published opinion. This includes the surname of an adoptive child (Domestic Relations Law § 112 [4]) and the name of a subject of a youthful offender proceeding (*see* CPL 720.35 [2]). Nor should any opinion contain the surname of any person, such as a parent, who shares a surname with the child.

**(2) Other Persons.** The names of affected persons should not appear in any published opinion where court records are made confidential by law or where the sensitivity or circumstances of the case raise privacy concerns. For example:

**(a)** The name of any victim of a sex offense or of an offense involving the alleged transmission of HIV should not be published (Civil Rights Law § 50-b).

**(b)** In Family Court proceedings, the names of the individual parties should not be published. This includes juvenile delinquency and PINS proceedings, foster care proceedings, child abuse and neglect proceedings and support proceedings. (*See* Family Ct Act § 166.)

**(c)** In proceedings under Mental Hygiene Law article 9 (hospitalization of individuals with mental illness), the name of the subject individual should not be published (*see* Mental Hygiene Law §§ 9.11, 33.13).

**(d)** In matrimonial actions, the parties' names should not be published where access to the matrimonial files has been limited pursuant to Domestic Relations Law § 235.

Special consideration should be given to the possibility that, under the circumstances of a case, the identification of a person in a published decision may raise concerns for that person's privacy or safety, even if that person's role in the case is already a matter of public record. This rule may require redaction of the names of witnesses or other nonparties who are referenced in text.

**(3) How to Redact.** If reference to protected personal names is necessary, use real or fictitious initials or other formats that shield the person from identification. For example, George Jones may be replaced by George J., or G.J., or George RR or Anonymous.

## 12.4 (b) Numerical Identifiers

**(1) Account Numbers.** Numerical identifiers such as Social Security numbers; bank, credit and debit card numbers, insurance policy numbers and other financial account numbers; and driver's license numbers should not appear in any published opinion.

**(2) Birth Dates.** The exact date of birth of any individual should not appear in any published opinion.

**(3) How to Redact.** If reference to numerical identifiers is necessary, only the last three or four digits should be used (e.g. xxx-xx-1234). If reference to date of birth is necessary, use only the year (e.g. xx/xx/1975).

## 12.4 (c) Other Identifying Information

Other identifying detail, such as an exact street address, email address, home or work telephone number, name of a child's school or name of a person's employer, should be redacted in whole or in part where publication of that information would tend to identify a person whose identity requires protection under section 12.4 (a) or is not essential to the opinion.

## 12.4 (d) Consistent Application of Omissions and Redactions

Omissions and redactions should be applied consistently within a decision and to all subsequent decisions in the same action or proceeding, whether they issue out of the trial court or appellate courts. When the name of a party is redacted in the title of a decision, the names of family members sharing the party's surname should also be redacted.

## 12.4 (e) Mandatory Redaction in Matrimonial Decisions for Publication

Uniform Rules for Trial Courts (22 NYCRR) § 202.16 (m) requires omission or redaction of

certain confidential personal information from matrimonial decisions submitted for publication, whether or not a sealing order is or has been sought. That confidential information includes: individual or entity taxpayer identification numbers or any financial account numbers, except the last four digits; the actual home address of parties and their children; the full name of an individual known to be under the age of 18 or of either party in cases containing allegations of domestic violence, neglect, abuse, juvenile delinquency or mental health issues; and any individual's birth date, except the year of birth. The most recent version of section 202.16 (m) should be reviewed and required redactions made prior to submitting any matrimonial decision for publication.

While redaction of the adult parties' names is not required in all instances, it is strongly encouraged when inclusion of the parents' full names will likely reveal the identities of minor children whose names are required to be redacted in all published matrimonial decisions.

## 12.4 (f) Other Considerations

Many statutes and rules address privacy without reference to publication. Cases involving the Civil Rights Law, Criminal Procedure Law, Family Court Act, Domestic Relations Law, Mental Hygiene Law, Public Health Law and Social Services Law, as well as specialized acts like HIPAA, the Child Victims Act and the Red Flag Law, should be reviewed carefully before submission for publication. In addition, even where confidentiality is not required, resolution of the issue in dispute may affect an individual's right to privacy, such as where a party requests youthful offender status, a statute requires the sealing of a defendant's record after conviction, or a sex offender challenges their risk level. A nonparty's right to privacy should also be considered, such as where a complainant or witness is a victim of domestic violence or stalking. Special consideration should be given in these—and other—cases to whether an individual's name, address, or other identifying information should be redacted for publication purposes, in the discretion of the judge. Note that this standard may differ from what is required for an anonymous caption or sealing purposes (see e.g. 22 NYCRR 216.1).

| Decisions | Resources | About | Connect |
|---|---|---|---|
| All Decisions & Motions | Style Manual (HTML | PDF) | Who We Are | Contact Us |
| **Advanced Search** | Citation Services | Operations | Editorial Procedures | RSS Feed |
| **Court of Appeals** | Legal Research Portal | Statutes & Regulations | Case Law | Twitter |
| Decisions | Motions | Court of Appeals New Filings | 200th Anniversary | |
| **Appellate Division** | Official Reports Service | State Reporter | |
| 1st Dept | 2d Dept | 3d Dept | 4th Dept | Links of Interest | Opinion Selection Criteria | |
| | Electronic Resources User | Privacy Guidelines | |

**Appellate Term**

1st Dept | 2d Dept

**Trial Courts**

Other Courts | Commercial Division

Guide

Judges of Courts of Record

Opinion Submission Format

Publications

FAQs | Site Map

Annual Reports

Links to other sites, or links to this site by any other sites, do not imply any endorsement of, or relationship with, such other sites.

New York State Law Reporting Bureau
17 Lodge Street, Albany, NY 12207
phone: (518) 453-6900
email us

# EXHIBIT 8



**State of New York**
**Department of State**
**Committee on Open Government**

One Commerce Plaza
99 Washington Ave.
Albany,New York 12231
(518) 474-2518
Fax (518) 474-1927
http://www.dos.ny.gov/coog/

April 28, 2014

FOIL-AO-19123

Dear

As you are aware, this office has advised on many occasions that records relating to criminal offense should be sealed to comply with §160.50 of the Criminal Procedure Law when charges are dismissed in favor of an accused.  In a situation in which records are sealed pursuant to §160.50, they are exempt from disclosure to the public pursuant to §87(2)(a) of FOIL concerning records that "are specifically exempted from disclosure by state or federal statute." Because that is so, as a general matter, FOIL provides no rights when §160.50 applies.

It appears, however, that rights of access to "official records and papers...relating to the arrest or prosecution" referenced in subdivision (1)(c) of §160.50 are conferred not by FOIL, but rather by subdivision (1)(d) of that statute. That provision states in relevant part that "such records shall be made available to the person accused or to such person's designated agent..."

From my perspective, when records are sealed pursuant to §160.50 of the Criminal Procedure Law, FOIL has no application and provides no rights of access to the public, including a person accused.  Because FOIL does not apply, an agency cannot, in my opinion, cite exceptions in that statute as a means of denying access to a person whose charges have been dismissed in his or her favor.  The only statute conferring rights of access to such a person is subdivision (d) of §160.50.

In your determination of an appeal made by Ms.          , the subject of records that were sealed following the dismissal of charges against her, you denied access based on the exceptions to rights of access appearing in §87(2) of FOIL.  Again, in my view, FOIL serves neither as a basis for disclosure, nor as a basis for a denial of access in the circumstance of Ms.          's request.  Rather, the statute granting rights of access is §160.50(d), which does not include the limitations or grounds for denial of access contained in §87(2) of FOIL.

In consideration of the foregoing, at Ms.          's request, it is asked that you reconsider the response to her denying access to the records sought in view of the direction given in §160.50(1)(d) of the Criminal Procedure Law.

Sincerely,
Robert J. Freeman
Executive Director

cc:

FOIL-AO-f19123
19123