UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PUBLIUS PUBLICOLA,

                    Plaintiff,

          -v-                          1:21-CV-1303

JOHN LOMENZO, TOWN
OF PENFIELD, JOSEPH
VALENTINO, DOUGLAS
RANDALL, DESTINI
BOWMAN, KAREN BAILEY
TURNER, CRAIG DORAN,
LEAH MERVINE, COUNTY
OF MONROE, WILLIAM
HOOKS, CARA BROUSSEAU,
NEW YORK STATE LAW
REPORTING BUREAU,
SHAWN KERBY, and
NANCY BARRY,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

PUBLIUS PUBLICOLA
Plaintiff, Pro Se
P.O. Box 13226
Jersey City, NJ 07303

SCHWAB & GASPARINI, PLLC        ANDREW J. SCHWAB, ESQ.
Attorneys for Defendants John
    Lomenzo and Town of Penfield
109 South Warren Street, Suite 306
Syracuse, NY 13202

SCHWAB & GASPARINI, PLLC                    JAMES A. RESILA, ESQ.
Attorneys for Defendants John
    Lomenzo and Town of Penfield
90 State Street, Suite 700
Albany, NY 12207


HON. LETITIA JAMES                          BRITTANY M. HANER, ESQ.
New York State Attorney General             Ass't Attorney General
Attorneys for Defendants Joseph
    Valentino, Douglas Randall,
    Destini Bowman, Karen Bailey
    Turner, Craig Doran, William
    Hooks, Cara Brousseau, New
    York Law Reporting Bureau,
    Shawn Kerby, and Nancy Barry
The Capitol
Albany, NY 12224


MONROE COUNTY                               BRIAN P. GREEN, ESQ.
    LAW DEPARTMENT
Attorneys for Defendants Leah
    Mervine and County of Monroe


DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On December 7, 2021, *pro se* plaintiff Publius Publicola ("plaintiff"),

proceeding under a pseudonym, filed this 42 U.S.C. § 1983 action against

defendants John Lomenzo, the Town of Penfield, Joseph Valentino, Douglas

Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, Leah Mervine,

County of Monroe, William Hooks, Cara Brousseau, the New York State Law

Reporting Bureau, Shawn Kerby, and Nancy Barry.  Dkt. No. 1.

According to plaintiff's five-count, seventy-eight-page complaint and its forty-four attached exhibits, the fourteen named defendants have violated plaintiff's federal constitutional rights: initially, through their involvement in state court proceedings where plaintiff attempted to seal old criminal records; and later, by publishing or continuing to disseminate a state court order that includes plaintiff's name and personal identifying information.[1]  *See id.*

On January 25, 2022, defendants Leah Mervine and the County of Monroe (the "County defendants") moved under 28 U.S.C. § 1404(a) to transfer this matter to the Western District of New York.  Dkt. No. 15.  According to the County defendants, most of the events alleged in plaintiff's complaint occurred in the Town of Penfield, which is situated in the Western District of New York.  *Id*.  Thereafter, the County defendants also moved under Federal Rule of Civil Procedure ("Rule") 12(b) to dismiss the complaint for failure to state any plausible claims for relief against them.  Dkt. No. 29.

On January 31, 2022, defendants John Lomenzo and the Town of Penfield (the "Town defendants") moved to transfer venue to the Western District of New York.  Dkt. No. 21.  They too argued that the relevant events occurred in the Western District of New York.  *Id*.  In addition to their venue transfer motion, the Town defendants also moved under Rule 12(b) to dismiss the

---

[1]  Together with his complaint, plaintiff also filed a motion to seal certain exhibits and to proceed under a pseudonym.  Dkt. No. 4.  Those requests will be discussed *infra*.

complaint.  Dkt. No. 28.  According to the Town defendants, John Lomenzo, a former Town Justice in the Town of Penfield, is entitled to absolute judicial immunity from the § 1983 claims asserted by plaintiff and, as a result, plaintiff's claims alleging that the Town of Penfield failed to properly train Lomenzo regarding his federal constitutional obligations must also fail.  *Id*.

On February 28, 2022, defendants Joseph Valentino, Douglas Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, William Hooks, Cara Brousseau, New York State Law Reporting Bureau, Shawn Kerby, and Nancy Barry (the "State defendants") moved under Rule 12(b) to dismiss plaintiff's complaint.  Dkt. No. 32.  According to the State defendants, plaintiff's § 1983 claims are barred by various immunity and jurisdictional principles and, even assuming otherwise, the complaint fails to state any plausible claims for relief under the First or Fourteenth Amendments.  *Id*.

The motions have been fully briefed and will be decided on the basis of the submissions without oral argument.

## II. **<u>BACKGROUND</u>**[2]

On July 15, 2015, plaintiff submitted a request to the Penfield Town Court seeking "all court records related to himself, including Certificates of Disposition and transcripts."  Compl. ¶ 30.  As plaintiff explains, he was

---

[2]  The facts taken from the complaint and attached exhibits are assumed true for the purpose of deciding the pending motions to dismiss.

seeking a complete record of "matters from when he was a child, which included a traffic infraction and other violations," in anticipation of filing an application for a professional license that required him to "be candid" about this category of information.  *Id*. ¶ 1.

On August 3, 2015, plaintiff contacted the Penfield Town Court to inquire about the cost of producing the court records he had requested and to offer to pay the cost in advance.  Compl. ¶ 31.  According to plaintiff, Elyse Voigt, an employee in the Penfield Town Court, "demanded that plaintiff pay [redacted sum] for a purported judgment outstanding from 2006."  *Id*.

Plaintiff further alleges that Ms. Voigt told him he must request any court records directly from John Lomenzo, who was then a judge in Penfield Town Court ("Town Justice Lomenzo").  Compl. ¶ 6; *see also id*. ¶ 31 (alleging that "at all relevant times," Lomenzo "was a judge with the Penfield Town Court").

On August 4, 2015, plaintiff received from Town Justice Lomenzo a letter that stated, *inter alia*, that plaintiff's records request would not be considered until it was notarized.  Compl. ¶ 32.  Plaintiff sought out a notary public, had his written request notarized, and re-sent it to the Penfield Town Court less than a week later.  *Id*. ¶ 33.

On August 18, 2015, plaintiff received from Town Justice Lomenzo two telephone calls in which Lomenzo allegedly demanded that plaintiff pay a

sum of money in exchange for the court records.  Compl. ¶ 34.  Plaintiff complied and sent a money order to the Penfield Town Court.  *Id*.

On September 10, 2015, plaintiff received two "case history reports" in response to his records request.  Compl. ¶ 35.  Because plaintiff believed that these "case history reports" were an incomplete response to his records request, he re-contacted the Penfield Town Court to reiterate his desire for a complete set of records.  *Id*.  Plaintiff continued contacting the Penfield Town Court over the "next two months" in an effort to have his records request fully satisfied.  *Id*. ¶ 36.

On October 26, 2015, plaintiff received from the Penfield Town Court a telephone call in which he was told that "he needed to contact a transcriber for the transcripts."  Compl. ¶ 37.  The Penfield Town Court provided plaintiff with contact information for a person who could perform this task.  *Id*.  He immediately contacted them.  *Id*.  As plaintiff explains, he was also told by the Penfield Town Court that only two of his cases could be transcribed at a time, so he would need to send additional notarized requests for his other cases.  *Id*.  Plaintiff did so on October 28, 2015.  *Id*. ¶ 38.

On November 12, 2015, plaintiff telephoned Ms. Voigt at the Penfield Town Court to inquire about the status of his requests.  Compl. ¶ 39.  Ms. Voigt "stated that she would mail the court records he had requested on

November 13, 2015 and provide the transcriber with the tapes to be transcribed by the end of that day, November 12, 2015."  *Id*.

The next day, November 13, 2015, plaintiff contacted the transcriber to inquire about the status of his requests.  Compl. ¶ 40.  The transcriber explained to plaintiff that she had not yet received the tapes from the Penfield Town Court, but that Ms. Voigt had told her she would receive them "no later than November 16, 2015."  *Id*.

On November 18, 2015, plaintiff telephoned Ms. Voigt to inquire about the status of his requests and to determine whether the transcriber had been provided with the tapes she needed.  Compl. ¶ 41.  Ms. Voigt promised to provide the transcriber with the tapes that day.  *Id*.  However, when plaintiff called Ms. Voigt the next day, he learned that she had not sent the tapes to the transcriber.  *Id*. ¶ 42.

Instead, Ms. Voigt told plaintiff that he "needed to go before the judge" to explain "why" he needed the records.  Compl. ¶ 42.  Plaintiff re-contacted the Penfield Town Court.  *Id*. ¶ 43.  This time he spoke with Kerry Egerton instead of Ms. Voigt.  *Id*.  According to plaintiff, Ms. Egerton told him that Town Justice Lomenzo would call him about his records request.  *Id*.

On November 19, 2015, plaintiff received from Town Justice Lomenzo a voicemail in which he stated that "[b]oth of my court clerks indicate that you have been nasty on the phone.  I'm telling you right now, do not call the court

clerk's office for anything . . . . Under no circumstances are you to call my court clerks again." Compl. ¶ 44. Later that day, plaintiff contacted the New York State Office of Court Administration to complain about the tone and nature of Town Justice Lomenzo's voicemail. *Id*. ¶ 45. He was referred to the agency's Rochester, New York office, which in plaintiff's view "did nothing to resolve the matter amicably." *Id*.

On November 19, 2015, plaintiff wrote a letter to Town Justice Lomenzo in which he " rightly criticiz[ed]" what he viewed as Lomenzo's "disturbing conduct." Compl. ¶¶ 46–47. Thereafter, Lomenzo responded in writing that plaintiff must apologize to him and his clerks before the court would further consider his outstanding records requests. *Id*. ¶ 47.

On December 8, 2015, plaintiff contacted the transcriber and learned that the Penfield Town Court had not provided her with the tapes; instead, the transcriber told plaintiff that the Town Court employees had "told her that the tapes do not exist." Compl. ¶ 49.

In January of 2016, plaintiff filed a civil lawsuit in federal court to vindicate what he perceived to be violations of his constitutional rights by Town Justice Lomenzo and other Town Court employees, including Ms. Voigt and Ms. Egerton. Compl. ¶ 50. Soon thereafter, those defendants—through counsel—agreed to settle the matter. Compl. ¶ 50. In exchange for a stipulation dismissing his constitutional claims, plaintiff received (1) his

requested court records; (2) an apology letter from Town Justice Lomenzo; and (3) a monetary payment. *Id*. ¶ 51.

At some point after these events, plaintiff "became aware that some [of the state court] cases [from his childhood] were not properly sealed pursuant to NY CPL §§ 160.05 and 160.55." Compl. ¶ 75. As plaintiff explains, he "had a total of six cases with the Penfield Town Court as child, which constitutes the entirety of all cases plaintiff [ ] has ever had." *Id*. ¶ 74. "Of the six cases, two were dismissed in [plaintiff's] favor, one was a traffic infraction, one was pursuant to the NY ABC [The Alcoholic Beverage Control Law] statutory scheme, and the remaining two were other violations." *Id*.

On November 8, 2017, plaintiff "filed six independent motions to seal with the Penfield Tow[n] Court, each motion corresponding to its respective case and relevant sealing statute." Compl. ¶ 77. As plaintiff explains, based on his previous negative experience with the Penfield Town Court he believed that going through an official route; *i.e.*, filing motions in court, would be the best way to achieve his goal of sealing his old records. *Id*. ¶ 76.

On December 18, 2017, plaintiff telephoned the Penfield Town Court to inquire about the status of his six motions. Compl. ¶ 78. Ms. Voigt explained to plaintiff that the motions had not been scheduled because "the cases have since been properly sealed." *Id*. Ms. Voigt offered to send plaintiff "new Certificates of Disposition indicating that the cases were now properly

sealed." *Id*.  Plaintiff accepted her offer.  *Id*.  Thereafter, plaintiff received from Ms. Voigt a letter in which "she stated that two of the cases could not be sealed pursuant to NY CPL § 160.55."  Compl. ¶ 79.

On January 12, 2018, dissatisfied with the explanation given by Ms. Voigt in her letter, plaintiff contacted the Penfield Town Court to inquire about the status of the six motions he had filed.  Compl. ¶ 80.  Plaintiff alleges that he was transferred to speak with Judge Mulley.  *Id*.  When plaintiff requested that "the motions be docketed and orders be mailed," Judge Mulley "stated he would contact plaintiff . . . via telephone at a later date."  *Id*.

On January 23, 2018, Judge Mulley telephoned plaintiff to state that "he didn't believe NY CPL § 160.55 applied to the remaining unsealed cases, but that plaintiff['s] . . . motions had 'essentially' been granted."  Compl. ¶ 81.  In plaintiff's view, this was an inadequate resolution to his pending motion practice.  *Id*.  Thus, plaintiff reiterated to Judge Mulley his prior request that, if the Town Court believed his motions should be denied, plaintiff should "be sent orders stating such."  *Id*.

On February 1, 2018, plaintiff faxed the Penfield Town Court a letter in which he stated that "if he did not receive orders on or before February 15, 2018, the Penfield Town Court 'will leave [him] with no choice but to immediately commence" state and federal lawsuits to vindicate his civil rights.  Compl. ¶ 83.

According to plaintiff, he thereafter received from Town Justice Lomenzo a telephone call in which Lomenzo "stated, multiple times, that he was 'flabbergasted' that Elyse Voigt didn't bring the motions to his attention" and promised plaintiff that he "would receive orders to his motions by February 9, 2017 [*sic*]." Compl. ¶ 83.  However, plaintiff did not receive any orders on his motions by that date. *Id*.

On February 12, 2018, plaintiff received from Town Justice Lomenzo another telephone call in which he indicated "he would be mailing the orders on February 13, 2018." Compl. ¶ 85.  On that date, plaintiff received yet another telephone call from Lomenzo in which he stated that "he was going to deny the motions" and that plaintiff "should write a letter seeking to reargue the motions instead of appealing the orders." *Id*.  Eventually, plaintiff received from Lomenzo a "one six page order" that denied all six of plaintiff's motions. *Id*. ¶ 86.  According to plaintiff, this February 13, 2018 order "is inconsistent with the law, contradicts itself, ignores the truth, and is littered with disparagement." *Id*. ¶ 87.

On April 20, 2018, Town Justice Lomenzo e-mailed the New York Law Reporting Bureau (the "Law Reporting Bureau") with a copy of the February 13, 2018 order.  Compl. ¶ 105.  Plaintiff contends this was a "non-judicial act" because, *inter alia*, Lomenzo used his personal e-mail address and because state law does not permit the publication of this kind of order.  *See id*.

As a result of Lomenzo's e-mail to the Law Reporting Bureau, the February 13, 2018 order was "immediately published to the world" in the Miscellaneous Reports.  Compl. ¶ 106.  The Law Reporting Bureau's publication included plaintiff's full name.  *Id*.  According to plaintiff, defendant State Reporter Hooks "approved" this publication.  *Id*. & n.3.

Thereafter, plaintiff's full name was published and re-published by third parties, including Thomson Reuters Westlaw.  Compl. ¶ 108.  Plaintiff's full name was later redacted by State Reporter Hooks.  *Id*. ¶ 109.  However, this belated redaction was not reflected in the version of the February 13, 2018 order that had already been re-published by other websites.  *Id*.

On May 5, 2018, plaintiff conducted a "routine[ ]" search of his name on internet search engines "for repetitional [*sic*] purposes."  Compl. ¶ 111.  As plaintiff explains, he regularly conducts these internet searches because he "is a professional with various business ventures."  *Id*.  During this search, plaintiff discovered "multiple results" that included his "full name."  *Id*.

As a result of this discovery, plaintiff wrote a letter to State Reporter Hooks in which he complained that the Penfield Town Court "has been entirely weaponized against [him]."  Compl. ¶ 112.  In sum and substance, plaintiff believed that Town Justice Lomenzo had instigated the publication of plaintiff's personal identifying information out of retaliatory animus or some other, improper motive.  *See id*.

On May 10, 2018, State Reporter Hooks responded to plaintiff with a letter that "did nothing to remedy the unlawful publication" of his full name on the internet as a result of Town Justice Lomenzo's order.  Compl. ¶ 113. Instead, State Reporter Hooks stated that plaintiff must make any request for removal directly to the judge who rendered it.  *Id*.

On May 18, 2018, plaintiff filed a motion with the Penfield Town Court in which he sought to seal court records and to "unpublish" Town Justice Lomenzo's February 13, 2018 order.  Compl. ¶ 117.  Lomenzo "recklessly and illogically" denied this motion on May 29, 2018.  *Id*. ¶ 118.  Plaintiff filed a notice of appeal on June 12, 2018.  *Id*. ¶ 131.  Although plaintiff perfected his appeal, the respondent did not file a brief.  *Id*. ¶ 133.

Between January 2019 and July 2020, plaintiff repeatedly telephoned the appeals clerk and other court personnel to inquire about the status of this appeal.  Compl. ¶ 134.  According to plaintiff, he was repeatedly told that the appeal had not been assigned to a judge yet.  *Id*.  Plaintiff continued contacting court personnel and other law enforcement entities to inquire about the status of his pending appeal.  *Id*. ¶¶ 135–75.  Plaintiff received a variety of unsatisfactory responses.  *Id*.  Eventually, Judge Randall issued a decision that failed to remedy the harm caused by Town Justice Lomenzo's publication of the February 13, 2018 order.  *See id*. ¶ 174.

On October 16, 2020, plaintiff submitted a Freedom of Information Law ("FOIL") request pursuant to the applicable state law.  Compl. ¶ 178.  In response, defendants State Reporter Brousseau, State Records Access Officer Kerby ("Access Officer Kerby"), and State FOIL Appeals Officer Barry ("Appeals Officer Barry") released copies of the February 13, 2018 order that still contained plaintiff's "full name, email address, and address."  *Id*. ¶ 179.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Wagner v. Hyra*, 518 F. Supp. 3d 613, 622 (N.D.N.Y. 2021) (quoting *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019)).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Forjone*, 414 F. Supp. 3d at 298 (cleaned up).

Generally speaking, the Second Circuit draws a distinction between "facial" and "fact-based" 12(b)(1) motions, with the former being confined to the pleadings and the latter permitting consideration of a broader universe of extraneous materials.  *See, e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  However, because defendants' jurisdictional arguments can be resolved on the basis of the pleadings alone, consideration of any

extraneous material is unnecessary. *See, e.g.*, *Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 2019, 215 (E.D.N.Y. 2019) (adjudicating motion to dismiss on Eleventh Amendment immunity grounds under Rule 12(b)(1)); *Marshall v. N.Y. State Public High Sch. Athletic Ass'n*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (considering absolute judicial immunity argument under Rule 12(b)(1)); *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 272 (S.D.N.Y. 2018) (observing that a *Rooker-Feldman* argument goes to the court's subject matter jurisdiction under Rule 12(b)(1)).

### B. <u>Rule 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it

by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. <u>DISCUSSION</u>[3]

Plaintiff's five-count complaint alleges the named defendants conspired (Count Five) with each other to violate his constitutional rights to freedom of speech and to petition the government under the First Amendment (Counts One and Two) and his constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment (Counts Three and Four). Compl. ¶¶ 180–217.

Except for the Town of Penfield, the County of Monroe, and the Law Reporting Bureau, plaintiff has sued each named defendant in both their personal and official capacities. Compl. ¶¶ 6–19. The complaint's twenty-six part *ad damnum* clause seeks declaratory and injunctive relief as well as an unspecified amount of money damages. *Id.* at pp. 75–78.[4]

Because plaintiff is proceeding *pro se*, his complaint must be held to less stringent standards than a formal pleading drafted by a lawyer. *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has

---

[3] The County defendants and the Town defendants sought to transfer this action to the Western District of New York before filing their 12(b) motions to dismiss, but neither set of defendants have affirmatively raised venue as a basis for dismissal. *See* FED. R. CIV. P. 12(b)(3). Venue, like personal jurisdiction, is a personal privilege of the defendant "rather than [an] absolute stricture[ ] on the court." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (observing that both defenses can be waived). Accordingly, the Court will proceed to consider the merits of the 12(b) motions to dismiss.

[4] Pagination corresponds to CM/ECF.

repeatedly instructed, a complaint filed *pro se* "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Ahlers*, 684 F.3d at 60 (citation omitted).

## A.  The County Defendants

As an initial matter, however, the County defendants must be dismissed from this action.  On March 9, 2022, plaintiff filed with the Court a document entitled "stipulation of dismissal" in which plaintiff has agreed to dismiss "all claims" against these two defendants "with prejudice."  Dkt. No. 36.  The stipulation has been signed by representatives from the relevant parties.  *Id.*

Accordingly, all of plaintiff's claims against defendants Leah Mervine and the County of Monroe will be dismissed with prejudice.  And because the County defendants will be dismissed on the basis of this stipulation, their pending motions to transfer venue (Dkt. No. 15) and to dismiss (Dkt. No. 29) will be denied without prejudice as moot.

## B.  The Town & State Defendants

The Town Defendants consist of Town Justice Lomenzo and the Town of Penfield.  Compl. ¶¶ 6–7.  The State defendants consist of the Law Reporting Bureau as well as Monroe County Court Clerk Joseph Valentino ("Clerk

Valentino"), Monroe County Court Judge Douglas Randall ("Judge Randall"), Monroe County Court Clerk Destini Bowman ("Clerk Bowman"), Monroe County Court Judge Karen Bailey Turner ("Judge Turner"), Monroe County Court Administrative Judge Craig Doran ("Judge Doran"), State Reporter Hooks, State Reporter Brousseau, Access Officer Kerby, and Appeals Officer Barry (collectively the "individual State defendants"). *Id.* ¶¶ 8–11, 13, 15–19.

The Town defendants and the State defendants have each moved under Rule 12(b) to dismiss all of plaintiff's claims against them. State Defs.' Mem., Dkt. No. 32-1; Town Defs.' Mem., Dkt. No. 28-1. According to both sets of defendants, most of plaintiff's § 1983 claims are barred by the applicable statute of limitations and by various immunity doctrines and jurisdictional principles. State Defs.' Mem. at 8; Town Defs.' Mem. at 1–3. The State defendants further contend that, even assuming one or more of plaintiff's federal constitutional claims are justiciable in this forum, the complaint fails to state any plausible claims for relief. *See id.*

### 1. The *Rooker-Feldman* Doctrine

The State defendants contend plaintiff's claims for equitable relief are barred by the *Rooker-Feldman* doctrine. State Defs.' Mem. at 19–20. In defendants' view, plaintiff cannot use a § 1983 claim in federal court as a vehicle to challenge the outcome of his prior state court cases. *See id.*

Where, as here, "a federal suit follows a state suit, the former may, under certain circumstances, be prohibited by what has become known as the *Rooker-Feldman* doctrine." *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018); *see also Morrison v. City of N.Y.*, 591 F.3d 109, 112 (2d Cir. 2010) ("The *Rooker-Feldman* doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts.").

The doctrine takes its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "Together, those cases 'established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.'" *Sung Cho*, 910 F.3d at 644 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)).

Historically, federal courts applied this doctrine "expansively." *Sung Cho*, 910 F.3d at 644 (citation omitted). However, "[i]n *Exxon Mobil*, the Supreme Court pared back the *Rooker-Feldman* doctrine to its core, holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Hoblock*, 422

F.3d at 85 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Thus, for *Rooker-Feldman* to bar a federal-court suit, four distinct requirements must be met: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho*, 910 F.3d at 645 (quoting *Hoblock*, 422 F.3d at 85).

Upon review, the *Rooker-Feldman* doctrine bars plaintiff's § 1983 claims for equitable relief. First, plaintiff alleges that he "lost" in state court; *i.e.*, he alleges that Town Justice Lomenzo denied his requests to seal his state court records on February 13, 2018. Compl. ¶ 105. Second, plaintiff's alleged injuries are apparently caused by, and certainly traceable to, Town Justice Lomenzo's February 13, 2018 order.

After all, plaintiff alleges that the harm in this case occurred when Lomenzo directed the February 13, 2018 order to be published and disseminated without the redaction of plaintiff's personal identifying information. Compl. ¶¶ 105–06. And third, plaintiff seeks from this Court, *inter alia*, equitable relief that would direct Town Justice Lomenzo and other

named defendants to redact, unpublish, and/or remove information included in the February 13, 2018 order.  *See* Compl. at pp 75–78.

Fourth and finally, even a broad reading of plaintiff's complaint leads to the conclusion that the state-court judgment at issue was rendered before he commenced this action in federal court on December 7, 2021.  As relevant here, plaintiff does not allege that he appealed from Town Justice Lomenzo's February 13, 2018 order or that the February 13, 2018 order is otherwise not a final judgment from the state tribunal that rendered it.[5]

Notably, plaintiff does allege that he filed a *second* motion in Penfield Town Court on May 18, 2018 in which he again sought to seal records and, this time, to "unpublish" the February 13, 2018 order.  Compl. ¶ 117.  Town Justice Lomenzo denied this motion on May 29, 2018, *id.* ¶ 118, and plaintiff appealed from it on June 12, 2018, *id.* ¶ 131.

However, plaintiff's complaint appears to allege that these renewed state-court proceedings ended on February 9, 2021, when Judge Randall rendered a decision that did not provide plaintiff satisfactory relief from the February 13, 2018 order.  *See, e.g.*, *id.* ¶ 174.  Plaintiff does not allege any further proceedings on appeal in either matter between the time of this

---

[5] If the matter were still pending, abstention would likely be appropriate.

February 9, 2021 order denying him relief and December 7, 2021, the date on which he filed this § 1983 action in federal court. *See generally id.*

Even assuming otherwise, *Rooker-Feldman*'s fourth requirement would still be satisfied. Although the most plaintiff-friendly reading of the doctrine in this Circuit renders it "inapplicable unless all state proceedings—including appeals—have ended before the federal action commences," *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346–47 (E.D.N.Y. 2010), the Second Circuit has yet to endorse that particularly expansive interpretation, *see, e.g.*, *Gabriele v. Am. Home Mortg. Servicing*, 503 F. App'x 89, 92 (2d Cir. 2012) (summary order) (assuming without deciding that the doctrine applies "irrespective of the status of the plaintiff's appeals in the state court system").

In short, "[r]egardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment." *Caldwell*, 701 F. Supp. 2d at 348. "This is what *Rooker-Feldman* prohibits." *Id.* Because plaintiff's § 1983 claims for equitable relief against the State defendants are barred by *Rooker-Feldman*, these claims must be dismissed for lack of subject matter jurisdiction.

Generally speaking, *Rooker-Feldman* will also bar a § 1983 claim for money damages, at least where the relief sought is tied directly to the injury allegedly caused by the adverse state-court judgment. *See, e.g.*, *Charles v.*

- 22 -

*Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017) (summary order) (rejecting plaintiff's assertion that money damages could avoid *Rooker-Feldman*'s jurisdictional bar where the damages sought "manifest[ed] a singular focus on allegedly wrongful actions related to the state court's imposition and execution of [a] receivership.").

However, because the State defendants did not clearly raise this argument and because plaintiff is proceeding *pro se*, the Court will proceed to analyze plaintiff's § 1983 claims to determine whether he has stated any plausible claims for monetary relief. *Hoblock*, 422 F.3d at 86 (acknowledging existence of a subset of federal lawsuits raising "independent claims" that would fall outside the scope of *Rooker-Feldman*'s jurisdictional bar "even if they involve the identical subject matter and parties as previous state-court suits").

### 2. **Eleventh Amendment Immunity**

The State defendants argue that the doctrine of state sovereign immunity bars plaintiff's § 1983 claims against the Law Reporting Bureau because it is an entity created by the State Legislature and administered by the State's Office of Court Administration. *See* State Defs.' Mem. at 15–16; *see also* Compl. ¶ 17 (alleging same). The State defendants argue sovereign immunity also bars plaintiff's § 1983 official-capacity claims against the individual State defendants. State Defs.' Mem. at 15–16.

The Eleventh Amendment to the U.S. Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

"The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens, unless (1) the state consents to be sued, or (2) Congress validly abrogates the state's immunity." *Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019) (quoting *Ross v. City Univ. of N.Y.*, 211 F. Supp. 3d 518, 525 (E.D.N.Y. 2016)).

The reach of this immunity extends to a state's constituent agencies and to state officials working on behalf of the state; *i.e.*, individuals sued in their official capacities. *See, e.g.*, *Jurist v. Long Island Power Auth.*, 538 F. Supp. 3d 254, 270 (E.D.N.Y. 2021). And "[i]mportantly for present purposes, the State of New York has not waived its sovereign immunity from § 1983 claims in federal court." *Forjone*, 414 F. Supp. 3d at 300 (citation omitted). "Nor has Congress validly abrogated New York's sovereign immunity from these claims." *Id.*

Upon review, plaintiff's § 1983 claims against the Law Reporting Bureau and § 1983 official-capacity claims against the individual State defendants must be dismissed because they are barred by Eleventh Amendment

immunity.  This immunity bar applies to the extent plaintiff's complaint

seeks either retrospective equitable relief or money damages.[6]  *See Ward v.*

*Thomas*, 207 F.3d 114, 120 (2d Cir. 2000); *see also Pennhurst State Sch. &*

*Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("This jurisdictional bar applies

regardless of the nature of the relief sought.").

### 3.  **Absolute Judicial Immunity**

The State defendants argue that the doctrine of absolute judicial

immunity bars plaintiff's § 1983 claims for retrospective equitable relief and

money damages against Judge Turner, Judge Randall, Judge Doran, Clerk

Bowman, and Clerk Valentino.  State Defs.' Mem. at 16–17.  The Town

defendants raise the same immunity defense as to these claims to the extent

they are pleaded against Town Justice Lomenzo.  Town Defs.' Mem. at 1–3.

"It is well settled that judges generally have absolute judicial immunity

from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579

F.3d 204, 209 (2d Cir. 2009) (cleaned up).  "The purpose of absolute immunity

is to protect 'the independent and impartial exercise of judgment vital to the

judiciary [which] might be impaired by exposure to potential damages

liability.'"  *McKnight v. Middleton*, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010)

(quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993)).

---

[6]  Plaintiff also purports to seek prospective injunctive relief under *Ex Parte Young*, which will
be discussed *infra*.

This immunity doctrine applies "even when the judge is accused of acting maliciously and corruptly," *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976), or where "the act he took was in error . . . or was in excess of his authority," *Mireles v. Waco*, 502 U.S. 9, 12–13 (1991) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).  Importantly, this immunity also extends to non-judicial officers who are "functionally comparable to that of a judge" or when they are engaged in the performance of "acts [that] are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (cleaned up).[7]

Further, the Federal Courts Improvement Act of 1996 expressly amended the text of 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omissions taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

In other words, "the doctrine of absolute judicial immunity now extends to cover suits against judges where the plaintiff seeks not only monetary relief, but injunctive relief as well, unless preceded by a declaration, or by a showing that such declaratory relief is unavailable." *MacPherson v. Town of Southampton*, 664 F. Supp. 2d 203, 211 (E.D.N.Y. 2009).

---

[7]  If, however, the non-judicial officer is performing "ministerial, non-judicial duties" or "purely administrative tasks," only a qualified, good-faith immunity attaches.  *McKnight*, 699 F. Supp. 2d at 525.

Of course, the doctrine of judicial immunity has some outer limits.  The doctrine does not shield judges from liability for "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. "In determining whether an act by a judge is 'judicial,' thereby warranting absolute immunity, [courts] are to take a functional approach, for such 'immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches," *Bliven*, 579 F.3d at 209–10 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis in original).

Nor does judicial immunity shield from liability a judge who "acts in the clear absence of all jurisdiction." *McKnight*, 699 F. Supp. 2d at 523 (citing *Tucker v. Outwater*, 118 F.3d 930, 936 (2d Cir. 1997).  This exception has objective and subjective elements: the first element is an "objective" inquiry that asks whether "no reasonable person would have thought jurisdiction proper," while the second element is a "subjective" inquiry into whether "the judge whose actions are questioned actually knew or must have known" he was acting in the clear absence of all jurisdiction.  *Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir. 1998).

Upon review, plaintiff's § 1983 claims against Town Justice Lomenzo, Judge Turner, Judge Randall, Judge Doran, Clerk Bowman, and Clerk Valentino must be dismissed to the extent the complaint seeks retrospective

equitable relief or money damages.[8]  The factual allegations in the complaint describe actions taken by judicial defendants within the scope of their responsibilities as judicial officers or actions taken by judicial support staff that were "integrally related" to ongoing judicial proceedings.

This conclusion extends to Town Justice Lomenzo's various interactions with plaintiff in his capacity as a litigant seeking to seal his state court records.  It also includes Lomenzo's various orders on plaintiff's requests to seal, since adjudicating a pending motion is a core judicial function.  That is so regardless of whether or not these motions were properly decided in accordance with the relevant governing law.

Notably, this immunity extends to Town Justice Lomenzo's allegedly improper release or unredacted publication of those orders.  The release of judicial opinions is a quintessential part of the adjudication of pending motions.  *Cf. Cinotti v. Adelman*, 709 F. App'x 39, 41 (2d Cir. 2017) (summary order) ("[E]ven if the judge's actions were, as the plaintiff asserts, incorrect or improper, the plaintiff is barred by established law from bringing a lawsuit against the judge to correct or obtain compensation for that error.").

In short, judicial immunity shields all of the individual defendants from plaintiff's § 1983 claims.  *See, e.g.*, *Sundwall v. Leuba*, 28 F. App'x 11, 13 (2d

---

[8]  Plaintiff also purports to seek prospective relief *Ex Parte Young*, discussed *infra*.

Cir. 2001) (summary order) (affirming lower court's finding of judicial immunity from § 1983 claims where defendants "were each acting in their judicial capacity and within their jurisdiction"); *McCluskey v. Town of East Hampton*, 2014 WL 3921363, at *4 (E.D.N.Y. Aug. 7, 2014) (applying immunity doctrine to court clerks and law clerks performing discretionary functions integrally related to judicial decisions). Accordingly, those claims must be dismissed.

### 4. <u>Statute of Limitations</u>

The State defendants argue that plaintiff's § 1983 claims against State Reporter Hooks and the Law Reporting Bureau are barred by the statute of limitations. As the State defendants explain, plaintiff alleges that Town Justice Lomenzo's February 13, 2018 order was submitted to the Law Reporting Bureau for publication on April 20, 2018 and accepted the same day. State Defs.' Mem. at 14. According to defendants, plaintiff was therefore on notice of the Law Reporting Bureau's publication of the order no later than May 5, 2018, since that is the date on which plaintiff sent a letter to State Reporter Hooks seeking its removal or redaction. *See id.*

"The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits." *Dimitracopoulos v. City of N.Y.*, 26 F. Supp. 3d 200, 210–11 (E.D.N.Y. 2014) (citing *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir.

1993)).  The applicable limitations period in New York is three years.  *See*

*Pearl v. City of Long Beach*, 296 F.3d 76, 78 (2d Cir. 2002).  Because the

statute of limitations is an affirmative defense, dismissal on this basis is

generally considered under 12(b)(6) rather than 12(b)(1).  *See, e.g.*, *Nghiem v.*

*U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 602–03 (S.D.N.Y. 2006).

Upon review, plaintiff's § 1983 claims against State Reporter Hooks and

the Law Reporting Bureau are time-barred.  "Although the statute of

limitations period is determined by reference to state law, the determination

of when a claim accrues is governed by federal law."  *Mitchell v. Home*, 377 F.

Supp. 2d 361, 371 (S.D.N.Y. 2005).

Plaintiff's § 1983 claims arising out of the Law Reporting Bureau's

publication of Town Justice Lomenzo's February 13, 2018 Order, and any

involvement Reporter Hooks is alleged to have had with that event, accrued

no later than May 5, 2018, the date on which plaintiff addressed his written

objection to Reporter Hooks.  *See Ormiston v. Nelson*, 117 F.3d 69, 70 (2d Cir.

1997) (explaining that a claim accrues "when the plaintiff knows or has

reason to know of the injury which is the basis of [the] action").

Because plaintiff did not file this civil rights action until December 7, 2021, his § 1983 claims against the Law Reporting Bureau and State Reporter Hooks are time-barred.[9]

### 5. <u>Failure to State a Claim</u>

Finally, to the extent that plaintiff's § 1983 claims are not barred by jurisdictional limitations or by the statute of limitations, defendants argue that plaintiff has failed to allege any plausible claims for relief.

Generally speaking, a successful § 1983 personal-capacity claim against an individual defendant who is not entitled to sovereign or judicial immunity results in an award of money damages. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, a § 1983 plaintiff may also pursue a claim under the doctrine of *Ex parte Young*, which "permits a suit to proceed against an otherwise immune entity if a plaintiff names a state official in his or her official capacity provided the plaintiff (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 360 n.6 (N.D.N.Y. 2017) (cleaned up); *see also Tiraco v. N.Y. State Bd. of Elecs.*, 963 F. Supp. 2d 184, 192 (E.D.N.Y. 2013) (collecting cases confirming same).

---

[9] As the State defendants point out in reply, plaintiff has not identified an appropriate basis for tolling of this limitations period under the facts allege. State Defs.' Reply, Dkt. No. 43 at 4. An independent review confirms that plaintiff has failed to establish a basis for tolling. *See, e.g.*, *Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 440–41 (E.D.N.Y. 2015).

As set forth *supra*, plaintiff's five-count complaint alleges that all of the named defendants conspired (Count Five) to violate his federal constitutional rights to freedom of speech and to petition the government under the First Amendment (Counts One and Two) and his federal constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment (Counts Three and Four).  Compl. ¶¶ 180–217.

### a.  <u>First Amendment</u>

In Counts One and Two, plaintiff alleges that defendants Town of Penfield, the Bureau, Town Justice Lomenzo, Clerk Valentino, Judge Randall, Clerk Bowman, Judge Turner, Judge Doran, State Reporter Hooks, and State Reporter Brousseau deprived him of his First Amendments rights of speech and petition.[10]  Compl. ¶¶ 180–95.

"[T]he First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 604 (1982).  As relevant here, [t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).  And of course, "[t]he right of access to the courts and to petition the

---

[10]  These claims were also asserted against the County defendants, who will be dismissed as defendants based on the stipulation of discontinuance.  Dkt. No. 36.

government includes the right to be free from retaliation for the exercise of such right." *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 133 (E.D.N.Y. 2011).

Generally speaking, "[t]o state a First Amendment claim, a plaintiff must allege facts admitting a plausible inference that the defendant's actions restricted, or were retaliation against, speech or conduct protected by the First Amendment." *Salmon v. Blesser*, 802 F.3d 249, 255 (2d Cir. 2015) (collecting cases); *see also Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (cautioning the lower courts that First Amendment claims are heavily dependent upon the factual context alleged in the pleading).[11]

Upon review, plaintiff has failed to plausibly allege a § 1983 claim based on the First Amendment. Plaintiff's complaint alleges that various State court officials, judicial support staff, and court administrative personnel (*e.g.*, State Reporter Hooks) were responsible for a series of delayed state court rulings with unfavorable results that ultimately resulted in the improper publication of his personal identifying information. Plaintiff's complaint further alleges that when he attempted to appeal from these rulings, various

---

[11] "The Second Circuit has held that the right to petition the government for the redress of grievances is generally subjected to the same constitutional analysis as the right to free speech." *Gusler*, 823 F. Supp. 2d at 133 (citing White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993)).

court officials and their support staff failed to promptly and/or satisfactorily respond to his various procedural and substantive requests.

None of this amounts to an actionable § 1983 claim because it does not allege any "concrete harm" of a constitutional dimension. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Although various forms of non-speech related harms have been held to satisfy the First Amendment's injury requirement, *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011), the Supreme Court has cautioned that there still exists a "*de minimis* level of imposition with which the Constitution is not concerned," *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

Even broadly construed, plaintiff has not alleged a chill in his speech or in his petitioning activities. On the contrary, plaintiff alleges that he has ramped up his speech and petitioning activities—via telephone, fax, postal mail, e-mail, and court filings—at various times response to what he believed to be defendants' intransigence. *Dorsett*, 732 F.3d at 161 (finding "concrete injury" requirement unsatisfied where the "alleged retaliation did not curtail the Plaintiffs' speech" and rejecting assertion that showing of delayed action by municipal defendants was sufficient); *Eberhart v. Crozier*, 423 F. App'x 57, 58 (2d Cir. 2011) (summary order) (rejecting access-to-courts claim where plaintiff failed to demonstrate "actual injury").

Notably, the Second Circuit has recently cautioned that "[c]hilled speech is not the *sine qua non* of a First Amendment claim" when the plaintiff is a private citizen.  *Dorsett*, 732 F.3d at 160; *see also Doe v. City of N.Y.*, 2018 WL 3824133, at *11 & n.8 (E.D.N.Y. Aug. 9, 2018) (observing that state action infringing on the First Amendment rights of prisoners and public employees are subject to a less plaintiff-friendly standard).

Rather, under existing Second Circuit precedent, "[a] plaintiff has standing [to pursue a First Amendment violation] if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm."  *Dorsett*, 732 F.3d at 160 (emphasis in original).

But plaintiff has not done so.  Although plaintiff alleges that various defendant-officials subjected him to delays and have denied certain of his procedural and substantive requests, none of these events constitute "concrete harm" for purposes of a § 1983 claim.  *Cf. id.* at 161 (rejecting speculative delay in state action as qualifying form of harm).

To the extent plaintiff alleges that Town Justice Lomenzo—acting out of retaliatory animus—directed the February 13, 2018 order to be published by the Law Reporting Bureau in violation of a state law or regulation, *see, e.g.*, compl. ¶ 105, or that the Law Reporting Bureau and State Reporter Hooks violated state law by publishing Lomenzo's order and/or causing it to be

disseminated to other, publicly accessible electronic databases, *id.* ¶ 109, those actions do not amount to actionable § 1983 claims, either.

First, "[a] violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009); *see also Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 573 (E.D.N.Y. 2011) (rejecting plaintiff's § 1983 claim based on an alleged violation of New York State law).

Second, and as will be discussed in additional detail *infra* in connection with plaintiff's motion to seal exhibits and proceed pseudonymously, the information contained on docket sheets and court captions—which typically includes basic identifying information, such the parties' names and valid mailing addresses—"enjoy[s] a presumption of openness and . . . the public and the media possess a qualified First Amendment right to inspect them." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004).

While that presumption can be overcome in the presence of an appropriate justification, *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013), plaintiff's theory of First Amendment relief in this action boils down to his assertion that (1) he filed motions in state court that sought to seal and/or redact certain information; (2) those motions were delayed; (3) then denied by a judge acting within the scope of his jurisdiction; (4) who issued a judicial opinion that included plaintiff's basic identifying information; (5) which was

published in unredacted form in an official State law database; (6) and thereafter republished in other public databases by third parties.

The Court has never entertained such a § 1983 claim, and in the absence of plausible allegations of real, concrete harm—beyond plaintiff's subjective desire not to share his name and address in a public database—declines to do so now. *Cf. Lambert v. Hartman*, 517 F.3d 433, 445 (6th Cir. 2008) (rejecting under various theories a litigant's assertion of a freestanding privacy right in even more sensitive personal information (his Social Security number) and cautioning that "constitutionaliz[ing] a harm of the type [the plaintiff] has suffered would be to open a Pandora's box of claims"). Accordingly, plaintiff's § 1983 First Amendment claims based on the alleged infringement of his right of speech (Count One) and of his right to petition (Count Two) must be dismissed.

### b. **Fourteenth Amendment**

In Counts Three and Four, plaintiff alleges that defendants Town of Penfield, the Law Reporting Bureau, Town Justice Lomenzo, Clerk Valentino, Judge Randall, Clerk Bowman, Judge Turner, Judge Doran, State Reporter Hooks, and State Reporter Brousseau deprived him of his Fourteenth Amendments rights under the Due Process and Equal Protection Clauses. Compl. ¶¶ 196–211.

### i. **Due Process Clause**

The Fourteenth Amendment's Due Process Clause protects procedural and substantive rights.  On one hand, "[p]rocedural due process requires that 'a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Ceja v. Vacca*, 503 F. App'x 20, 22 (2d Cir. 2012) (summary order) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  On the other hand, "[s]ubstantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Kisembo v. N.Y. State Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 521 (N.D.N.Y. 2018) (citation omitted).

Upon review, plaintiff has failed to state a plausible § 1983 substantive due process claim.  "Numerous cases in a variety of contexts recognize [substantive due process] as a last line of defense against those literally outrageous abuses of official power whose very verity makes formulation of a more precise standard impossible." *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980).

"Importantly, however, the amorphous nature of the protections afforded by substantive due process also implicates 'a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be

demoted to . . . a font of tort law.'" *Kisembo*, 285 F. Supp. 3d at 521 (quoting *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002)).

Taking as true the facts alleged in the complaint, plaintiff has failed to plausibly allege that one or more of the individual State defendants engaged in any sort of "conscience-shocking" behavior that might give rise to a substantive due process claim.

Though plaintiff may subjectively believe otherwise, there is nothing conscience-shocking about the inclusion of plaintiff's name and address in Town Justice Lomenzo's February 13, 2018 order, the Law Reporting Bureau's publication of a judicial opinion with that information, its subsequent dissemination to third parties, or the refusal by Judge Randall to order some kind of relief from its publication on appeal.

This § 1983 claim fares no better when considered from a personal privacy angle. "It is well established that the individual right to privacy is protected by the Due Process Clause of the Fourteenth Amendment." *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005). "The right to privacy takes two somewhat different forms: the right to personal autonomy (i.e., the right to make certain choices from of unwarranted government interference) and the right to confidentiality (i.e., the right to hold certain information private)." *Id.*

However, as mentioned previously, there is no unqualified right to hold private the basic identifying information about which plaintiff complains. On the contrary, basic information about parties involved in a civil action (*i.e.*, names and addresses) enjoys a presumption of openness that can only be overcome with appropriate justification. At best, plaintiff has alleged action by various defendants that might be "incorrect or ill-advised." Accordingly, plaintiff has failed to plausible allege a § 1983 substantive due process claim.

Plaintiff has also failed to plead a procedural due process claim. "To assert a claim under Section 1983 based on an alleged violation of procedural due process, plaintiff must plead (1) he possesses a liberty or property interest protected by the Constitution or a federal statute, and (2) he was deprived of that liberty or property interest without due process." *Clavin v. Cty. of Orange*, 620 F. App'x 45, 47–48 (2d Cir. 2015) (summary order).

The first element involves consideration of different sources of authority. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (cleaned up). However, "[p]roperty interests are not created by the Constitution; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understanding that secure

certain benefits and that support claims of entitlement to those benefits." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Broadly construed, the complaint alleges that Town Justice Lomenzo violated plaintiff's procedural due process rights by refusing to seal his old criminal records and then publishing a written order denying that request in unredacted form.  Thereafter, the complaint alleges that other defendants also refused to enforce this state law sealing requirement or otherwise act to remedy Lomenzo's improper disclosure of plaintiff's identifying information.

But these events amount to alleged violations of state law (either state records law or perhaps state law requirements related to processing sealing requests or adjudicating motions to seal).  The alleged violation of a state law is not an appropriate basis on which to pursue a § 1983 claim.  *See, e.g.*, *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 607–08 (E.D.N.Y. 2011) ("The Second Circuit has held that a plaintiff cannot maintain a cause of action under Section 1983 when the alleged deprivation of due process is based on the violation of state law.").

Alternatively, plaintiff's complaint could be construed to raise a claim for loss of reputation based on the publication and dissemination of his name and address.  However, as explained *supra*, plaintiff has not articulated any concrete reputational harm flowing from these events.  Although he alleges

that his own "routine" electronic search returned evidence showing that he had litigated in state court, that fact alone does not amount to harm of a constitutional magnitude.

Even if it did, "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

Notably, "[t]he loss of one's reputation can violate the Due Process Clause if the loss of reputation is associated with the deprivation of a federally protected liberty interest, such as government employment." *Kuczinski v. City of N.Y.*, 352 F. Supp. 3d 314, 324 (S.D.N.Y. 2019).

However, plaintiff has also failed to plausibly allege this so-called "stigma plus" claim. "Like any procedural due process claim, a stigma-plus claim enforces a limited but important right: the right to be heard 'at a meaningful time and in a meaningful manner.'" *Segal v. City of N.Y.*, 459 F.3d 207, 213 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).

Plaintiff has alleged that he received unfavorable results in state court proceedings. But due process only guarantees the availability of meaningful procedures. It does not entitle a disgruntled state court litigant to a satisfactory outcome. Accordingly, these claims must be dismissed.

ii. **Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any persons within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  This Constitutional provision is "essentially a direction that all persons similarly situated be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

"There are a number of common methods for pleading an equal protection claim."  *Kisembo*, 285 F. Supp. 3d at 523.  First, "[a] plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.'"  *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. 2013) (quoting *Brown v. City of Oneida*, 221 F.3d 329, 337 (2d Cir. 1999)).

Second, "a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner."  *Brown*, 221 F.3d at 337 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886)).  Third, "[a] plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus."  *Floyd*, 959 F. Supp. 2d at 570 (citation omitted).

With respect to these first three theories, a plaintiff "generally need not plead or show the disparate treatment of similarly situated individual."  *Pyke v. Cuomo*, 258 F.3d 107, 108–09 (2d Cir. 2001).  Plaintiff has not alleged that

he is a member of an inherently suspect or vulnerable class and therefore these first three theories of relief are inapplicable to his § 1983 claims.

However, there are two other ways to plead an equal protection violation.  Pursuant to *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980), a plaintiff may assert a "selective enforcement" claim by showing they were treated differently "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injury a person."  *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 301 (S.D.N.Y. 2013).

Alternatively, pursuant to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), a plaintiff may assert a "class of one" claim by alleging that "they were intentionally treated different from others similarly situated and that there was no rational basis for this difference in treatment."  *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 558 (S.D.N.Y. 2006).

Upon review, plaintiff has not plausibly alleged either a "selective enforcement" or a "class of one" equal protection claim.  To pursue either theory "require[s] a showing of similarly situated individuals or groups who were treated differently."  *Kisembo*, 285 F. Supp. 3d at 524 (citation omitted); *see also Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) ("Under any applicable test, the plaintiff must allege facts showing that he is

similarly situated to other persons with respect to the specific incident or incidents that are alleged to be examples of differential treatment.").

These are demanding requirements.  For instance, the Second Circuit has held that a "class of one" plaintiff must ultimately "establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (citation omitted).

Even at this early stage of the proceedings, plaintiff has failed to plausibly allege the existence of suitable comparators.  *See, e.g.*, *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434–35 (S.D.N.Y. 2013) (holding that plaintiff need only plausibly allege that a jury could determine that the comparators are similarly situated).  Accordingly, this claim must be dismissed.

### c. **Conspiracy**

In Count Five, plaintiff alleges that the named defendants conspired with each other to deprive him of rights, privileges, and immunities secured by the United States Constitution.  Compl. ¶¶ 212–17.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

However, in the absence of an underlying constitutional violation, a plaintiff "cannot sustain a claim of conspiracy to violate those rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).  Because plaintiff has failed to plausibly allege constitutional claims, any claim based on a conspiracy to violate those rights must fail.

### d.  <u>Municipal Liability</u>

Plaintiff's complaint names as defendants the Town of Penfield and the County of Monroe.  Compl. ¶¶ 7, 14.  As noted *supra*, plaintiff has already stipulated to the discontinuance of this action against the County of Monroe.  Dkt. No. 36.  However, this leaves for consideration plaintiff's claims against the Town of Penfield.

In *Monell v. Dept' of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a municipality may be held liable under § 1983 if a plaintiff can demonstrate that the constitutional violation he suffered was caused by a municipal "policy or custom."  *Id*. at 694.  "However, the Supreme Court has intentionally made these so-called '*Monell*' claims hard to plead and hard to prove."  *LaFever v. Clarke*, 525 F. Supp. 3d 305, 338 (N.D.N.Y. 2021) (cleaned

up).  "Unlike state tort law, a municipality cannot be held liable under § 1983 merely because it happened to employ the alleged tortfeasor."  *Id.*

Instead, "under § 1983[ ] local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  Thus, "to establish municipal liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that the deprivation of his constitutional rights was 'caused by a governmental custom, policy or usage of the municipality.'"  *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (summary order) (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012)).

Plaintiff alleges that the Town of Penfield and the Law Reporting Bureau failed to adequately train Town Justice Lomenzo and the individual State defendants regarding their constitutional obligations under the First and Fourteenth Amendments.  Compl. ¶¶ 183–84, 191–92, 199–200, 207–08.

Upon review, plaintiff's *Monell* claim must be dismissed.  "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).

As discussed *supra*, plaintiff has failed to plausibly allege any § 1983 claims against any of the individual State defendants.  Because plaintiff has failed to establish any underlying constitutional claim against an individual defendant, the *Monell* claim must be dismissed.  *See, e.g.*, *Carter v. Broome Cty.*, 394 F. Supp. 3d 228, 239–40 (N.D.N.Y. 2019) (explaining that the "presence of an underlying constitutional violation remains a 'required predicate'" to the pursuit of a municipal liability claim).

### C.  <u>Motion to Seal & Proceed Under a Pseudonym</u>

As a final matter, plaintiff has moved to seal certain exhibits and to proceed in this action under a pseudonym.  Pl.'s Mot., Dkt. No. 4.  According to plaintiff, sealing and pseudonymity are warranted because, *inter alia*, the "origins of this action stem from when" he was a child and "involve matters sealed pursuant to" state law.  *Id.* at 7.

Generally speaking, a civil action "must be prosecuted in the name of the real party in interest."  FED. R. CIV. P. 17(a)(1); *see also* FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties.").  "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."  *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015).

As the Second Circuit has explained, "[i]dentifying the parties to the proceeding is an important dimension of publicness.  The people have a right

to know who is using their courts." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)). "Indeed, this right is supported by the First Amendment." *Doe*, 484 F. Supp. 3d at 93 (cleaned up).

Nevertheless, in certain "extraordinary" circumstances, *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 351 (E.D.N.Y. 2013), especially those that implicate serious individual privacy concerns, *Doe v. City of N.Y.*, 201 F.R.D. 100, 101 (S.D.N.Y. 2001), a court may, in its discretion, "permit a litigant to proceed anonymously." *Doe ex rel. Doe No. 1 v. Nygard*, 2020 WL 4890427, at *1 (S.D.N.Y. Aug. 20, 2020).

In *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), the Second Circuit set out a non-exhaustive list of ten factors used to help analyze this sensitive and difficult issue, which requires "the plaintiff's interest in anonymity [ ] be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. To strike the proper balance, the Second Circuit has directed district courts to consider:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether

the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his or her age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (cleaned up). "Although the ten *Sealed Plaintiff* factors are highly instructive, courts are not required to consider any or all of them, nor must they use any particular approach, so long as they balance the relevant interests at stake when reaching a conclusion." *Nygard*, 2020 WL 4890427 at *2.

Upon review, plaintiff's motion to proceed under a pseudonym must be denied. As an initial matter, contrary to plaintiff's arguments this litigation does not directly involve matters related to his childhood—plaintiff's § 1983 claims concern alleged misconduct by various state officials related to litigation he initiated in Penfield Town Court.

However, even assuming that the underlying facts of this case satisfied the first *Sealed Plaintiff* factor; *i.e.*, that the matters are of a "highly sensitive and personal nature," the remaining factors almost uniformly weigh against the grant of anonymity in this litigation.

Plaintiff has not plausibly identified harm that would occur to any innocent third parties. And while he claims that he risks suffering mental harms himself, plaintiff has not plausibly explained how he is "particularly vulnerable" to such harm merely by virtue of disclosing that he has filed a federal lawsuit seeking relief for alleged constitutional violations.

That is especially so since plaintiff is no longer a minor or other person laboring under a special or compromised status. *See, e.g.*, *Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) (explaining that these factors require more than "mere embarrassment" or even "social stigmatization"). In short, after considering the *Sealed Plaintiff* factors the Court concludes that plaintiff's request to proceed pseudonymously must be denied.[12]

Plaintiff has also requested to file certain exhibits under seal. Pl.'s Mot. at 16–23. In particular, plaintiff seeks to seal a letter to the Clerk of the Court that contains plaintiff's full name and mailing address. *Id*. at 17. Plaintiff

---

[12] A plaintiff denied pseudonymity may still redact portions of documents filed in connection with an ongoing lawsuit. Indeed, the record reflects plaintiff has repeatedly done so throughout his filings. Plaintiff has not established why redactions alone are not enough to protect any allegedly sensitive information.

also seeks to seal an unredacted copy of Town Justice Lomenzo's February 13, 2018 order, which contains similar information. *Id*.

"Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution." *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020). As the Second Circuit has explained, "[t]he presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1048 (2d Cir. 1995).

Even so, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995). Instead, for a filing with the court to qualify as a "judicial document," it "must be relevant to the performance of the judicial function and useful in the judicial process." *Id*.

Thus, as the Second Circuit summarized in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), the Court must: (1) determine whether the documents are "judicial documents"; (2) if so, assess the weight of the common law presumption of access to the materials; and (3) balance competing considerations against the presumption of access. *Id*. at 119–20.

Upon review, plaintiff's request to file exhibits under seal will be granted at this preliminary stage of the proceedings.  None of the named defendants have contested plaintiff's request to seal these limited matters.  And without adversarial briefing, the Court cannot be certain whether these exhibits to the complaint should qualify as "judicial documents" that require a more searching analysis under the Second Circuit's decision in *Lugosch*.  *Compare Anderson v. N.Y. City Health & Hosps. Corp.*, 2020 WL 1047054, at *3 (S.D.N.Y. Mar. 4, 2020) (characterizing exhibits to a pleading as indisputably qualifying as "judicial documents"), *with Burgess v. Town of Wallingford*, 2012 WL 4344194, at *9 (D. Conn. Sept. 21, 2012) (suggesting that "baseline showing of good cause" may justify the imposition of a protective order covering this basic identifying information).

To be clear, the Court has taken this step in an effort to assist plaintiff in avoiding the further dissemination of his name and address.  Plaintiff is warned, however, that if he proceeds in this action he risks these matters being unsealed, either at the request of an adverse party or perhaps some interested third-party intervenor.

## V.  **CONCLUSION**

Plaintiff's complaint must be dismissed.  Even liberally construed, plaintiff has failed to plausibly allege that the denial of his state court motions to seal, or the unwanted disclosure of his name and mailing address in connection

with those state court proceedings, are sufficient to give rise to any actionable § 1983 claims.  Because the problems with plaintiff's claims are substantive, better pleading will not cure the defects.  Accordingly, leave to amend would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).[13]

As a final matter, it bears emphasizing that "anonymous litigation runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes."  *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016).  While the Court has tried to honor plaintiff's desire for privacy at this threshold stage of the litigation, plaintiff should take note that the Court has denied his request to proceed further in this action under a pseudonym.  Accordingly, further filings in this matter will require plaintiff to disclose his basic identifying information to the Court.  This might well lead to the precise result that plaintiff seeks to avoid—the publication of his name and mailing address in publicly accessible databases.

Therefore, it is

ORDERED that

---

[13]  "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up).  However, "it is well established that leave to amend a complaint need not be granted where amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

1.  Plaintiff's motion to seal exhibits and proceed pseudonymously (Dkt. No. 4) is GRANTED IN PART and DENIED IN PART;

2.  Defendants Leah Mervine and County of Monroe are DISMISSED with prejudice in accordance with the parties' stipulation (Dkt. No. 36);

3.  Defendants Leah Mervine and County of Monroe's motion to transfer venue (Dkt. No. 15) is DENIED as moot;

4.  Defendants Leah Mervine and County of Monroe's motion to dismiss (Dkt. No. 29) is DENIED as moot;

5.  Defendants John Lomenzo and Town of Penfield's motion to dismiss (Dkt. No. 28) is GRANTED;

6.  Defendants John Lomenzo and Town of Penfield's motion to change venue (Dkt. No. 21) is DENIED as moot;

7.  Defendants Joseph Valentino, Douglas Randall, Destini Bowman, Karen Bailey Turner, Craig Doran, William Hooks, Cara Brousseau, New York State Law Reporting Bureau, Shawn Kerby, and Nancy Berry's motion to dismiss (Dkt. No. 32) is GRANTED; and

8.  Plaintiff's complaint is DISMISSED WITHOUT LEAVE TO AMEND.

The Clerk of the Court is directed to terminate the pending motions, enter a judgment accordingly, and close the file.

The Clerk of the Court is further directed to mail a copy of this Order and Judgment to plaintiff's current mailing address using the information provided by him in sealed exhibit #1.  Dkt. No. 4-1.

IT IS SO ORDERED.


Dated:  April 5, 2022
       Utica, New York.

David N. Hurd
U.S. District Judge